# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **TONI MILLER, SUSAN ELLIOTT,** | § | |
| **ARIEL KLEINSMITH** | § | |
| **AND ANTWAN LEE** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:13-cv-1509** |
| | § | **JURY** |
| **TEAM GO FIGURE, L.L.P., TEAM GO** | § | |
| **FIGURE, and SCOTT ESKRIDGE** | § | |
| | § | |
| **Defendants** | § | |

## APPENDIX TO PLAINTIFFS' BRIEF IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**Table of Contents**:

Exhibit A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 001
Exhibit B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 019
Exhibit C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 056
Exhibit D . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 076
Exhibit E . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 080
Exhibit F . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 091
Exhibit G . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 148
Exhibit H . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 157
Exhibit I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 162
Exhibit J . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 171
Exhibit K . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 177
Exhibit L . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 197
Exhibit M . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 200
Exhibit N . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 205
Exhibit O . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 213
Exhibit P . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 227
Exhibit Q . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 231
Exhibit R . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 233
Exhibit S . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 241

Exhibit T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 245
Exhibit U . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 248
Exhibit V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 258
Exhibit W . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 441
Exhibit X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 473
Exhibit Y . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 514
Exhibit Z . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 519
Exhibit AA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 527
Exhibit AB . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 540

DATED this 14th day of March, 2014.

**JAMES MOULTON, ATTORNEY AT LAW**


**By:**_____/S/ James B. Moulton_____
          JAMES B. MOULTON
          Bar # 24007712
          3939 Hwy. 80 E., Suite 486
          Mesquite, Texas 75150
          Telephone: (972) 698-0999
          Facsimile: (903) 705-6860
          Email: jim.moulton@gmail.com

          *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify one true and correct copy of the foregoing instrument was served on Defendants' lead counsel of record by electronic mail through the Court's EFCEM system on this 14th day of March, 2014.


**By:**_____/S/_  James B. Moulton_____
JAMES B. MOULTON
Bar # 24007712
3939 Hwy. 80 E., Suite 486
Mesquite, Texas 75150
Telephone: (972) 698-0999
Facsimile: (903) 705-6860
Email: jim.moulton@gmail.com

*Attorney for Plaintiffs*

# Exhibit "A"



Page 1

1           IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
2                      DALLAS DIVISION

3

    TONI MILLER, SUSAN          §
4   ELLIOT, ARIEL KLEINSMITH    §
    AND ANTWAN LEE,             §
5                               §
         Plaintiffs             §
6                               §
    v.                          §   CIVIL ACTION NO.
7                               §   3:13-cv-1509
    TEAM GO FIGURE, L.L.P.,     §
8   TEAM GO FIGURE AND SCOTT    §
    ESKRIDGE,                   §
9                               §
         Defendants             §
10

11  -----------------------------------------------

12                  ORAL DEPOSITION OF
               SCOTT ANTHONY KENWORTHY
                    Volume 1 of 1
13                 January 15, 2014
    -----------------------------------------------

14

15      ORAL DEPOSITION OF SCOTT ANTHONY KENWORTHY,

16  produced as a witness at the instance of the Defendants,

17  and duly sworn, was taken in the above-styled and

18  -numbered cause on January 15, 2014, from 3:55 PM to

19  7:39 PM, before Gaylord A. Sturgess, CSR No. 744, in and

20  for the State of Texas, reported by Stenographic method,

21  at the offices of BRACKETT & ELLIS, PC, 100 Main Street,

22  Fort Worth, Texas  76102, pursuant to the Federal Rules

23  of Civil Procedure and the provisions stated on the

24  record.

25  Job No. 18228.as

Plaintiffs' Brief In Opposition Appendix 002

Page 2

1                 A P P E A R A N C E S

2     FOR THE PLAINTIFFS:

3           James Moulton
            Smith, Smith & Smith, LLP
4           3939 Highway 80 East,  Suite 486
            Mesquite, Texas  75150
5           972.698.0999
            smithlawfirm@aol.com
6

7     FOR THE DEFENDANTS:

8           Claudine G. Jackson
            BRACKETT & ELLIS, PC
9           100 Main Street
            Fort Worth, Texas  76102
10          817.338.1700
            cjackson@belaw.com
11

      ALSO PRESENT:
12
            Toni Miller
13          Susan Elliott
            Scott Eskridge

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiffs' Brief In Opposition Appendix 003

Page 3

```
 1                      INDEX

 2


 3     Appearances   .....................................  2

 4
       Stipulations   ....................................  4
 5

 6

 7  SCOTT ANTHONY KENWORTHY

 8       EXAMINATION BY MS. JACKSON...................... 4
         EXAMINATION BY MR. MOULTON.....................95
 9       EXAMINATION BY MS. JACKSON....................136
         EXAMINATION BY MR. MOULTON....................149
10       EXAMINATION BY MS. JACKSON....................151
         EXAMINATION BY MR. MOULTON....................152
11

12     Signature and Changes   ........................154

13
       Reporter's Certificate   .......................156
14

15                    EXHIBITS

16  NO.   DESCRIPTION                              PAGE

17  24    4.22.11 Letter to Team Go Figure from
           Kathleen Craig.................................104
18  25    6.13.11 Letter to Appeal Tribunal of the
           Texas Workforce Commission from Kathleen
19         Craig..........................................104
    26    Team Go Figure Reports of Hours Worked - All
20         Departments, All Employees....................106

21

22

23

24

25
```

Page 4

```
 1                P R O C E E D I N G S
 2                    THE REPORTER:  Mr. Kenworthy, would you
 3        raise your right hand, please, and be sworn.
 4                    Do you solemnly swear, or affirm, the
 5        testimony you shall give in this case will be the
 6        truth, the whole truth, and nothing but the truth, so
 7        help you God?
 8                    THE WITNESS:  I do.
 9                    THE REPORTER:  Thank you.
10                    SCOTT ANTHONY KENWORTHY,
11        having been first duly sworn, testified as follows:
12                         EXAMINATION
13        BY MS. JACKSON:
14             Q.   Mr. Kenworthy, would you state your full
15        legal name for the record, please.
16             A.   Scott Anthony Kenworthy.
17             Q.   Mr. Kenworthy, my name is Claudine Jackson.
18        And you and I have visited on the telephone to set up
19        your deposition here today, correct?
20             A.   Correct.
21             Q.   Other than that, we have not talked
22        substantively about this case or of the claims of
23        Ms. Elliott, Ms. Miller, or Ms. Kleinsmith, correct?
24             A.   No, we have not talked.
25             Q.   Okay.  Just so you understand, the purpose
```

Plaintiffs' Brief In Opposition Appendix 005

Page 30

1    Q.    Okay.  Fair enough.

2    A.    So if I -- if we were in a situation where

3    we had to work to get some orders out, then those

4    people would know.  But if they weren't part of those

5    people, then that wouldn't have been authorized

6    overtime.

7    Q.    Okay.

8    A.    So -- and I can't -- I wouldn't be able to

9    see hours until the final -- until the tally sheet

10   came up the following week.

11   Q.    There were occasions in the production

12   department, or at least in the department you oversaw,

13   in which folks were required to work overtime and you

14   permitted them to work overtime, right?

15   A.    Yes.

16   Q.    Okay.  Did you have any folks under you that

17   were exempt from overtime, that were salaried and had

18   a role that would make them exempt from overtime?

19   A.    Yes.

20   Q.    And who was that?

21   A.    Josie Tayhada.  Any of the designers.  And I

22   believe April McDougald, when she first started, when

23   she -- when she was purchasing.

24   Q.    And the folks that were salaried and not

25   hourly, were they required to track their time?

Plaintiffs' Brief In Opposition Appendix 006

Case 3:13-cv-01582-O   Document 43-1   Filed 03/14/14   Page 10 of 200   PageID 2195
Miller v. Team Go Figure
Scott Keaoughy
January 15, 2014

Page 31

```
 1        A.    No.

 2        Q.    Did you as a manager track their time?

 3        A.    No.

 4        Q.    Would you be able to go --

 5        A.    Going back, Kristi -- the graphic artist,

 6   too, Kristi Mraz.

 7        Q.    What about Barbara Dickens, did she report

 8   to you?

 9        A.    Yes, yes.  She was salaried, too.

10        Q.    Okay.  And you didn't track her hours, did

11   you?

12        A.    No.

13        Q.    And when did you typically arrive at the

14   Team Go Figure office or whatev- -- location or

15   whatever you want to call it?

16        A.    Monday through Friday somewhere between 6:00

17   and 6:30.

18        Q.    And when did you typically leave?

19        A.    Monday through Friday typically -- again,

20   it's seasonal.  If I left early, it would be 6:00

21   o'clock at night.

22        Q.    Okay.  When you say seasonal, what are you

23   talking about?

24        A.    During the summer, production was heavier.

25   And in that -- in those cases it was rare that I would
```

Plaintiffs' Brief In Opposition Appendix 007

Page 45

1    fittings y'all did?

2         A.   I don't recall.

3         Q.   What about in 2011?

4         A.   Don't recall.

5         Q.   What about in 2010?

6         A.   I don't recall.

7         Q.   Are you able even to give an estimate?

8         A.   Somewhere between 40 and 75.

9         Q.   And you think that this information of the

10   number of fittings would be reflected on the Team Go

11   Figure order forms?

12        A.   The number?  The number can be off the team

13   orders.  There were separate files for team orders.

14   And also from QuickBooks.

15        Q.   But it's not going to necessarily indicate

16   how long the fitting lasted or who was necessarily

17   there, is that true?

18             MR. MOULTON:  Objection, asked and

19   answered.

20        A.   That's true.

21        Q.   Okay.  You talk about the order forms.  Is

22   that something that's generated before the fitting?

23        A.   Yes.

24        Q.   Okay.  And how is it that a director knows

25   what to put on the order form?

Page 46

1    A.    They don't.  It's the individual team member

2    that's filling out the order form.  We would -- we

3    would set up -- we'd bring sizers with us.  We'd set

4    up sizers for each item on the order form.  They

5    would -- they would try the sizers on, mark down what

6    size they needed and the quantity needed, and they'd

7    go on to the next station.  And at the end of it, they

8    would turn in the order forms to whoever was at the

9    fitting.

10   Q.    Then that's the process of a fitting?

11   A.    Yes.

12   Q.    Okay.  What I'm talking about is:  My

13   understanding in talking with Ms. Miller is when --

14   before y'all even get to the fitting, somebody has

15   decided what these girls are going to try on and what

16   they're going to buy.  Is that true?

17   A.    Yes.

18   Q.    Okay.  How does Team Go Figure know what to

19   put on the order form, what to bring sizers of for

20   these girls to try on and buy?

21   A.    In conversation with a director, a director

22   will give Team Go Figure what -- the items that

23   they're looking to purchase from Team Go Figure.

24   Those would be placed on the team order -- and we're

25   just talking team orders, or fitting orders.

Plaintiffs' Brief In Opposition Appendix 009

Page 66

1    A.    They were classified -- you're correct.

2    Team Go Figure would just call them salaried and never

3    differentiate them.  But they're true -- I always

4    experienced differentiation.

5    Q.    Yeah.  But your experience was on if someone

6    is managing someone or not, correct?

7    A.    Correct.

8    Q.    And you don't know --

9    A.    In actual management.

10   Q.    Okay.  And you don't know whether Scott in

11   his mind had another reason for classifying someone as

12   salaried and exempt from overtime other than them

13   being a manager.  You don't know that, do you?

14   A.    Do I know what was in his mind?  Is that the

15   question?

16   Q.    Do you know whether he was classifying them

17   as exempt for some other reason?

18   A.    Yes.

19   Q.    Okay.

20   A.    History has shown -- 16 years of history

21   shows that it was to not pay them overtime.

22   Q.    Well, that's what the exemption is.  Just so

23   you understand the law, the exemption is you don't

24   have to pay them overtime.  Okay?  And my question to

25   you -- it sounds like to me that your knowledge and

Plaintiffs' Brief In Opposition Appendix 010

Page 74

```
 1        A.    Correct.

 2        Q.    Okay.  And did you understand -- with

 3   respect your salary at least, did you understand that

 4   you got that salary even if you did put in extra

 5   hours, that that was your salary?

 6        A.    As it turned out, yes.

 7        Q.    Well, and that's actually -- I mean, correct

 8   me if I'm wrong, but you said you had twelve

 9   conversations with Scott wherein you tried to

10   encourage him to put people as hourly so when they did

11   put in the extra hours, they'd get paid for it?

12        A.    Right.

13        Q.    Did I understand that right?

14        A.    Yes.

15        Q.    And so, you understood that anybody at Team

16   Go Figure who was salaried, that was the salary they

17   were getting even if they put in the extra hours,

18   right?

19        A.    Yes.

20        Q.    Okay.  And did you ever hear Scott represent

21   to anybody at Team Go Figure who was salaried that if

22   you put in the extra hours, I'm gonna pay you some

23   overtime for those hours?

24        A.    Yes.

25        Q.    Who?
```

Plaintiffs' Brief In Opposition Appendix 011

Page 75

1    A.    Not overtime.   It was always -- I'm sorry.

2    Overtime, no.   Extra pay, yes.

3    Q.    Who?

4    A.    The graphic artists, when they were working

5    on the catalog, the extra hours that they were

6    spending at home and at work, he indicated he would

7    give them some kind of stipend to account for their

8    hours.

9         He -- I am -- I was salaried exempt,

10   but he would represent that we would -- that I would

11   be at times eligible for bonus, for profits or work or

12   whatever.   He represented that with previous office

13   managers.

14        It was typically -- I mean, with the

15   others it was, I'll take care of you if you put in the

16   hours.   Again, with me, I was salaried exempt, so I

17   knew where I stood.

18   Q.    But in terms of each pay period, did Scott

19   say you'll get -- I mean, did everybody understand you

20   get the salary?

21   A.    For each pay period?

22   Q.    Yes.

23   A.    Yes.

24   Q.    Okay.   I understand that you looked at time

25   sheets and signed off on them, and then you turned

Plaintiffs' Brief In Opposition Appendix 012

Page 103

1  design, and I'm almost positive she had a degree.  But

2  she had a lot of graphic experience along with Kristi,

3  same thing.  I think they both had -- I think they had

4  their degrees in fashion design or fashion, something

5  like that; but they also had graphic education.

6       Q.   Okay.  And did you already tell me whether

7  or not Deirdre had worked in excess of 40 hours in a

8  given week?

9       A.   Yes, she would have, especially during

10 catalogs.

11      Q.   Okay.  Now, was it ever the policy of Team

12 Go Figure to pay overtime wages based on an 80-hour

13 pay period rather than a 40-hour pay period?

14      A.   Yes.

15      Q.   Do you know when Team Go Figure had that

16 policy?

17      A.   For 15 of the 16 years.

18      Q.   So when did they stop paying overtime based

19 on that 80-hour period?

20      A.   I think it was in the -- I think it was in

21 the -- shortly after Kathleen Craig and Tiersa and

22 Susan bookkeeping transfer duties.

23      Q.   Do you recall Kathleen Craig?

24      A.   Yes.

25      Q.   Do you remember receiving her resignation?

Plaintiffs' Brief In Opposition Appendix 013

Rob No. 52228
Miller v. Team Go Figure

Scott McGeehy
January 15, 2014

Page 129

```
 1              And then she was also doing the artwork
 2     for the vinyl cutting because we had -- when we set up
 3     vinyl cutting, because prior to that we had always
 4     farmed out and given to an outside contractor to do.
 5     When she came on, she had a vinyl plotter that she
 6     brought with her and the software to run it.  So then
 7     we -- she started running it, and then we trained
 8     Kristi on how to do it.
 9              So initially she was doing all the
10     vinyl cutting and the design.  The designs and then
11     the vinyl cutting for the heat transfers in addition
12     to calling on customers.
13        Q.   When Toni was hired, was there actually a
14     sales team to manage?
15        A.   I don't recall for certain.  I think that
16     Brooke was down in Houston.  I don't remember -- I
17     don't remember who else was around.
18        Q.   Was there ever any times when there were
19     less than two outside salespersons?
20        A.   Yes.
21        Q.   Do you know how often that occurred?
22        A.   Annually.
23        Q.   So basically every year there was a period
24     of time when there were less than two outside
25     salespersons, correct?
```

Merit Court Reporters LLC
depos@merittexas.com

Phone: 817-336-3042                                          Fax: 81?

Plaintiffs' Brief In Opposition Appendix 014

1       A.    In almost every year, yes.  And I'm going

2    back 16 years.  Not 2010 to 2013.  2010 to 2'13, I

3    don't -- I don't re- -- Antwan might have lasted

4    through the winter, but otherwise I don't remember

5    anyone else making it -- and I don't even think he

6    made it a whole seas- -- I don't think he made it a

7    whole year.

8       Q.    Did Toni have the authority to hire and fire

9    employees?

10      A.    Did who?

11      Q.    Toni.

12                   MS. JACKSON:   Calls for speculation.

13      A.    Not directly, no.

14      Q.    And what do you mean by that?

15      A.    It would be -- it would be the salespeople,

16   it would be an -- it would be an interview that she

17   did, an interview that Scott did.  And then Scott

18   would do the actual -- Scott would do the actual offer

19   of employment.

20                   When it came to termination, there was

21   some that Scott terminated.  There were some that

22   Scott told Toni to terminate.  So there were some that

23   she would terminate their employment.

24      Q.    And did you ever hear Scott Eskridge say

25   anything to the effect that Toni had no actual or true

Plaintiffs' Brief In Opposition Appendix 015

Page 133

```
 1    was done, so you will need -- you know, there's work
 2    that was done, so that will be a negotiation as far as
 3    any kind of return of money and that -- and that it
 4    was Scott that in fact cancelled, that it wasn't a
 5    case of that company -- the company really didn't have
 6    an opportunity to -- a second opportunity to come in
 7    and fix the problem.
 8              I don't know whether they would, but
 9    it's -- from then on, it was a -- it was brought up in
10    conversations that -- that Toni still owed him $6,000,
11    and that I should just take it out of her check.
12              And I had said at the time, those are
13    two separate entities. You can't -- you can't look at
14    that as the same thing.  They weren't one and the
15    same.  Because that was a separate company run by, I
16    think it was OCR, LLC, or ORC, LLC, something like
17    that.
18              And that's where my knowledge of the
19    whole thing and conversation with Scott ended.  I
20    didn't know after that if he had or hadn't taken it
21    out of her check.
22         Q.   Okay.  Now, you talked about -- strike that.
23              Who was Ariel Kleinsmith's immediate
24    supervisor?
25         A.   April McDougald.
```

Plaintiffs' Brief In Opposition Appendix 016



Page 156

1
2                      IN THE UNITED STATES DISTRICT COURT
                       FOR THE NORTHERN DISTRICT OF TEXAS
3                               DALLAS DIVISION

4       TONI MILLER, SUSAN          §
        ELLIOT, ARIEL KLEINSMITH    §
5       AND ANTWAN LEE,             §
                                    §
6              Plaintiffs           §
                                    §
7       v.                          §   CIVIL ACTION NO.
                                    §   3:13-cv-1509
8       TEAM GO FIGURE, L.L.P.,     §
        TEAM GO FIGURE AND SCOTT    §
9       ESKRIDGE,                   §
                                    §
10             Defendants           §
        --------------------------------------------------------

11
12                      REPORTER'S CERTIFICATION
                   DEPOSITION OF SCOTT ANTHONY KENWORTHY
13                          Volume 1 of 1
                            January 15, 2014

14
        --------------------------------------------------------
15
        STATE OF TEXAS )
16
17             I, Gaylord A. Sturgess, a Certified
18      Shorthand Reporter in and for the State of Texas, do
19      hereby certify that, pursuant to the agreement
20      hereinbefore set forth, there came before me SCOTT
21      ANTHONY KENWORTHY, who was by me duly sworn to testify
22      the truth, the whole truth, and nothing but the truth
23      of said witness's knowledge concerning the matters in
24      controversy in this cause; and the said witness was
25      thereupon carefully examined upon said oath, and said

Plaintiffs' Brief In Opposition Appendix 017

Page 157

1   examination reduced to writing under my supervision;

2   that the deposition is a true record of the testimony

3   given by said witness, same to be sworn to and

4   subscribed by said witness before any notary public,

5   pursuant to the agreement of the parties.

6           I further certify that I am neither

7   counsel for nor related to any party in this cause and

8   am not financially interested in its outcome.

9           I further certify that the taxable cost

10  for preparation of the Original deposition transcript

11  and Original exhibits, if any, is $_____ and

12  was/will be paid by the Defendants.

13          GIVEN UNDER MY HAND AND SEAL of office

14  on January 21, 2014.

15

16

17  GAYLORD A. STURGESS, Texas CSR #44
    Expiration Date:  12/31/14
18  Merit Court Reporters, LLC
    307 W. 7th Street
19  Suite 1350 Commerce Building
    Fort Worth, Texas   76102
20  817-336-3042
    Job No. 18228.as

21

22

23

24

25

Plaintiffs' Brief In Opposition Appendix 018

**Exhibit "B"**

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
 2                        DALLAS DIVISION

 3   TONI MILLER, SUSAN ELLIOT,    )
     ARIEL KLEINSMITH AND          )
 4   ANTWAN LEE,                   )
                                   )
 5             Plaintiffs,         ) CIVIL ACTION
                                   )
 6   VS.                           ) NO.: 3:13-cv-1509
                                   )
 7   TEAM GO FIGURE, L.L.P.,       )
     TEAM GO FIGURE AND SCOTT      )
 8   ESKRIDGE,                     )
                                   )
 9             Defendants.         )

10        ------------------------------------

11                ORAL DEPOSITION OF

12                 ARIEL KLEINSMITH

13                 JANUARY 7, 2014

14        ------------------------------------

15        ORAL DEPOSITION OF ARIEL KLEINSMITH, produced as a

16   witness at the instance of the Defendants, and duly

17   sworn, was taken in the above-styled and numbered cause

18   on January 7, 2014, from 3:06 p.m. to 6:36 p.m., before

19   Julie G. Davault, CSR in and for the State of Texas,

20   reported by machine shorthand, at the Law Offices of

21   Brackett & Ellis, P.C., 100 Main Street, Fort Worth,

22   Texas, pursuant to the Federal Rules of Civil Procedure

23   and the provisions stated on the record or attached

24   hereto.

25   Job No. 18227
```

Plaintiffs' Brief In Opposition Appendix 020

Page 2

1                    A P P E A R A N C E S

2

      FOR THE PLAINTIFFS:
3
             James Moulton, Esq.
4            939 Highway 80 East
             Suite 486
5            Mesquite, Texas 75150
             (903) 780-2540
6            jim.moulton@gmail.com

7     FOR THE DEFENDANTS:

8            Claudine Jackson, Esq.
             BRACKETT & ELLIS, P.C.
9            100 Main Street
             Fort Worth, Texas 76102
10           (817) 338-1700
             cjackson@belaw.com

11

12    ALSO PRESENT:   Susan Elliott and Scott Eskridge

13

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiffs' Brief In Opposition Appendix 021

Job No. 18227
Miller, et al v. Team Go Figure, et al
Ariel Kleinsmith
January 7, 2014

Page 3

1                    INDEX

2                                           PAGE

3   Appearances......................................... 2

4   Stipulations........................................ 5

5   ARIEL KLEINSMITH
         Examination by Ms. Jackson................. 5,144
6        Examination by Mr. Moulton................... 142

7   Signature and Changes.............................145

8   Reporter's Certificate............................147

9

10                   EXHIBITS

11  NO.  DESCRIPTION                           PAGE

12     1   Sales by Rep Detail                 22
       2   Payroll Transaction Detail          39
13     3   Miller's 2-20-12 email to Snyder    51
       4   Kleinsmith's resume                 62
14     5   New Hire Checklist                  63
       6   Acknowledgment                      63
15     7   resignation letter                  86
       8   Timecard Report                     96
16     9   Miller's 5-3-12 email to Eskridge  107
      10   Miller's 4-17-12 email to Barb     108
17    11   Miller's 5-7-12 email to Kleinsmith 110
      12   Verbal Warning Form                112
18    13   Miller's 5-17-12 email to Graperil 112
      14   list of appointments               115
19    15   Written Warning                    115
      16   Miller's 4-3-12 email to Kosack    118
20    17   Miller's 4-10-12 email to Tabby    118
      18   Miller's 1-30-12 email to Kosack   120
21    19   Kleinsmith's email to Coach Smith  122
      20   Kleinsmith's LinkedIn profile      135

22

23          REQUESTED DOCUMENTS/INFORMATION

    NO.  DESCRIPTION                           PAGE
24

     1   calendar from storage unit         49/11
25

Plaintiffs' Brief In Opposition Appendix 022

Job No. 18227
Miller, et al v. Team Go Figure, et al

Ariel Kleinsmith
January 7, 2014

Page 4

1                    INDEX CONTINUED:

2                  CERTIFIED QUESTIONS

   NO.                                        PAGE/LINE

3

                      None

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    Merit Court Reporters LLC
Phone: 817-336-3042      depos@merittexas.com      Fax: 817-335-1203

Page 5

1              THE REPORTER:  Agreements?

2              MS. JACKSON:  According to the Rules?

3              MR. MOULTON:  Yeah.

4                   ARIEL KLEINSMITH,

5    having been first duly sworn, testified as follows:

6                     EXAMINATION

7    BY MS. JACKSON:

8         Q.  Good afternoon, Ms. Kleinsmith.  My name is

9    Claudine Jackson.  I represent Mr. Eskridge and Team Go

10   Figure in this lawsuit.  Do you understand who I am and

11   who I represent?

12        A.  Yes.

13        Q.  And before you and I meeting just a couple of

14   minutes ago, have you and I ever had an opportunity to

15   talk before?

16        A.  No.

17        Q.  I understand -- or you understand that you have

18   sued Team Go Figure and Mr. Eskridge in Federal Court

19   for alleged violations of the FLSA; do you understand

20   that?

21        A.  Yes.

22        Q.  Okay.  Have you ever been involved in a lawsuit

23   before?

24        A.  No.

25        Q.  Have you ever given a deposition before?

Page 11

1    A.  She supervised anybody who did any sales in

2  Team Go Figure.

3    Q.  Okay.  And who were doing sales in Team Go

4  Figure that Toni Miller supervised, at least when you

5  were there?

6    A.  Majority, it was myself, Antwan, Candice, the

7  San Antonio reps, there was a Austin rep.  And then I

8  was -- myself and Candice were inside sales reps, so we

9  had to work inside the office and make sales calls

10  inside the office and then make appointments for outside

11  the office, which we would leave the office for an hour

12  or two hours, depending upon -- to show apparel and

13  items.

14    Q.  And was your primary job function to make

15  sales?

16    A.  Yes, but no.  I would say that our objective

17  was to make sales, but I also was to provide customer

18  service.  And I also was to provide marketing.  So

19  anytime that we did any events, like we did TMEA, I

20  would help with those events and coordinate what the

21  booth would look like with Toni.  And I also helped with

22  the catalog and helping Toni design some of the catalog

23  and pictures and things like that, making sure that

24  equipment was held properly for color guard and things

25  like that because that's where my expertise was held.

Plaintiffs' Brief In Opposition Appendix 025

Job No. 18227
Miller, et al v. Team Go Figure, et al

Ariel Kleinsmith
January 7, 2014

Page 14

1    became irrelevant because I was paid salary, is what I

2    was told.

3         Q.  When did you punch in and out sometimes?

4         A.  I mean, maybe the first week.

5         Q.  So it's your testimony that you punched in and

6    out on a time clock the first week and then after that

7    you were told --

8         A.  Sometimes --

9         Q.  One second, let me finish my question.  After

10   that you were told not to punch in and out and you never

11   punched in and out again; is that your testimony?

12        A.  It was mostly that I would just write on the

13   time card that I worked 40 hours in a week, even if I

14   worked over that.

15        Q.  Kirsten Kosack, is that another salesperson

16   that Toni Miller supervised?

17        A.  Yeah, but they were outside.

18        Q.  Outside sales?

19        A.  Yeah.

20        Q.  Kristie in graphics?

21        A.  Yes.

22        Q.  Did Toni Miller supervise her?

23        A.  Yes, but no.  I mean, she helped with catalog

24   input, but, if anything, she was supervised mostly by

25   Scott --

Plaintiffs' Brief In Opposition Appendix 026

Case 3:13-cv-01509-O   Document 43-1   Filed 03/14/14   Page 30 of 200   PageID 2,153

Job No. 18227
Miller, et al v. Team Go Figure, et al

Ariel Kleinsmith
January 7, 2014

Page 15

1      Q.   Okay.

2      A.   -- and April somewhat, but mostly Scott.

3      Q.   Okay.  And then what about Meredith, do you

4  remember Meredith?

5      A.   Uh-huh.

6      Q.   Who supervised Meredith?

7      A.   April.

8      Q.   Okay.

9      A.   Because April did all the in office.  So

10 anybody -- like she supervised over myself and Antwan

11 and everybody else, but she mostly took care of all the

12 office stuff when it came to paperwork and how we

13 formatted everything and customer service.

14     Q.   And who else besides -- who else was April

15 supervising for office aspects, besides Meredith and

16 you, yourself, and Antwan?

17     A.   Meredith, Heather, Candice and -- What is her

18 name?  Tabitha.  And then Tabitha had joint -- she was

19 partially Toni's sales assistant, but as well as being

20 an office, so she was supervised by April as well.

21     Q.   Are you able to tell the jury how frequently

22 you left the office for a sales call?

23     A.   I would leave a sales call depending upon

24 commuting time, so it could be anywhere between 15 to 45

25 minutes to get to that destination and then I would meet

Page 18

1   here under oath how many times per week while you were

2   at Team Go Figure you went to a school and had a fitting

3   after 4:00?

4        A.  Are we -- Okay.  Because before you said

5   showing apparel and now you're saying fittings, so those

6   are two very different items.

7        Q.  Okay.

8        A.  So for a fitting there was probably three, four

9   times a week and I would be well after 4:00.  Usually

10  fittings were always afterwards, they were not during

11  school hours.  They were always after because you have

12  to get all the whole team involved to show all these

13  members and to make sure it fits everybody properly.

14       Q.  Okay.  So just so I understand and it's clear

15  for the record, when you visit a school you might visit

16  them for a showing and the purpose of the showing is to

17  make a sale?

18       A.  Yeah.

19       Q.  You --

20       A.  And that would be about 30 minutes long.

21       Q.  Okay.

22       A.  Then I would head back to the office, write up

23  the whole -- what they wanted to order and make order

24  forms, that way when the fitting did happen they could

25  decide, the parents, if they want it to be -- you know,

Plaintiffs' Brief In Opposition Appendix 028

Page 57

1          Q.   Okay.   So your testimony is that your meetings

2     at Boswell and Southwest High School resulted in sales

3     for your territory and you made out order forms?

4          A.   Yes.

5          Q.   That day?

6          A.   Yes.

7          Q.   Okay.

8          A.   Usually it took me a little bit longer than --

9     to finish.   I probably finished one of the order forms,

10    but not the other one.

11         Q.   And when would you have finished?

12         A.   Probably the next day.

13         Q.   What time would you have stopped working on

14    Tuesday the 21st of February after those two meetings?

15         A.   I don't know.   6:00.

16         Q.   Okay.   And then you would have gone home and

17    done whatever?

18         A.   Yeah.

19         Q.   You had another job while you were working with

20    Team Go Figure?

21         A.   Not really, but, yes.   I would do promotional

22    -- I did promotional modeling.   And I would do like a

23    couple of hours on a Saturday or Sunday, but not enough

24    -- Like I showed my -- I gave you my 1099s for those tax

25    forms, but I didn't work that often.

Plaintiffs' Brief In Opposition Appendix 029

Page 71

1      A.   I don't recall because I don't know if we had a

2   fitting that night or not.

3      Q.   What about February the 22nd?   It says that

4   your first meeting was at 10:30 in Colleyville and your

5   second would have been at Sanger at 4:00.

6      A.   Right.

7      Q.   Do you recall specifically on February the 22nd

8   going back to Team Go Figure after your Sanger meeting

9   at 4:00?

10     A.   I did not go back to Team Go Figure after my

11   Sanger meeting.

12     Q.   You just drove home?

13     A.   Yeah.

14     Q.   Okay.

15     A.   Because Team Go Figure would have been closed

16   by the time I got back from my Sanger meeting.

17     Q.   So did you have a key to Team Go Figure?

18     A.   No.

19     Q.   What time did Team Go Figure close?

20     A.   6:00, but sometimes we'd stay late if we had --

21   we knew a customer was coming by.

22     Q.   So if you were out at a meeting and by the time

23   you made it back to Garland it was going to be 6:00,

24   you'd just go home for the night?

25     A.   Right.

Page 72

1      Q.   And did you -- and then you'd go in the next

2    morning to complete your order form --

3      A.   Right.

4      Q.   -- that sort of thing?

5      A.   Yes.

6      Q.   Okay.  And the order forms were something you

7    needed to complete in order to get the sale that you had

8    just made, right?

9      A.   Yes.

10     Q.   Because if you don't complete the order form,

11   you lose the sale, right?

12     A.   Yes.

13     Q.   Okay.  And so then on Friday the 23rd of

14   February, you had a meeting at 3:30 at Creekview High

15   School scheduled?

16     A.   Yes.

17     Q.   And that was a Friday afternoon, so do you

18   recall if you went back to Team Go Figure that day?

19     A.   I did go back, yeah.

20     Q.   And what time would you have made it back to

21   Team Go Figure?

22     A.   Probably 5:00 because it was only a 30 minute

23   drive from Carrollton back to Garland.

24     Q.   Well, probably or do you remember?

25     A.   Yes, I remember going back.

Job No. 18227
Miller, et al v. Team Go Figure, et al

Ariel Kleinsmith
January 7, 2014

Page 73

1    Q.   Okay.  And then you would have done what?

2    A.   At that point, because at Creekview -- it used

3    to be Toni's territory.  I remember talking to her about

4    Creekview and what all they ordered and talking to her

5    about the director and then he made up the order form

6    that day.

7    Q.   Okay.  And what time did you leave work on

8    Friday, February 23?

9    A.   6:00.

10   Q.   And what time did you go in to work on Friday,

11   February 23?

12   A.   8:30, 9:00.

13   Q.   Some mornings you go in at 8:30, some mornings

14   you go in at 9:00?

15   A.   Yes, depending upon what all I needed to get

16   done, if I needed to write up a whole big order form or

17   not or if there's things I need to prepare before

18   meeting with a director, making sure I had all that

19   ready for them.

20   Q.   And when you would get to work at 8:30 or 9:00

21   in the morning, was Toni there or was she not really a

22   morning person?

23   A.   She usually was there.

24   Q.   Already working?

25   A.   She was there at 9:00 for sure, always.

Plaintiffs' Brief In Opposition Appendix 032

Page 74

1    Q.   Okay.   And then when you would leave at 5:30 or

2    6:00 --

3    A.   It was usually 6:00.

4    Q.   Okay.

5    A.   And then if -- it was sometimes later if it was

6    a fitting.

7    Q.   Okay.   When would -- when you would leave at

8    6:00 would typically most of the office leave around

9    that time?

10   A.   Yes.

11   Q.   Okay.   Who would stay?

12   A.   Sometimes Toni would -- It just depends if --

13   If it was in February we were trying to finish up the

14   last touches of color guard catalog, so Kristie would

15   sometimes stay late doing graphic design.   Toni would

16   stay late helping with catalog design as well.   And Ken

17   was always there really late, too.

18   Q.   And what about Ms. Elliott?

19   A.   Ms. Elliott as well, if there's a -- she would

20   help out with the catalog, too, as well as any kind of

21   bookkeeping that was needed left.   And she was also

22   there for a lot of the fittings if they were late.

23   Q.   Can you -- Are you going to be able to come to

24   trial and tell the jury the hours that Ms. Elliott

25   worked?

Plaintiffs' Brief In Opposition Appendix 033

Page 75

1    A.   I don't know when trial is, but --

2    Q.   Well, whenever we go to trial in this case, my

3    question is, do you have knowledge, were you watching

4    when Ms. Elliott was coming and going every day that

5    you're going to be able to sit on the stand in the

6    courtroom and tell the jury what hours she worked?

7    A.   I mean, I was in and out as well as everybody

8    else, so keeping track of everybody in that office I

9    couldn't do myself.

10   Q.   Okay.  And you can't say when Toni was working

11   either, can you?

12   A.   I mean, I could, but Toni was out a lot, you

13   know, doing sales, doing her job.

14   Q.   And you were out a lot doing sales as well,

15   right?

16   A.   I was like 50-50.

17   Q.   Okay.  I'll represent to you that the work week

18   for February the 27th of 2012, it began on Monday,

19   February the 27th, and would have ended on Friday, March

20   the 2nd.  Okay?  That's the work week I'm talking about.

21   All right?  According to Exhibit 1, you made sales,

22   outside sales, at least from what you've bracketed on --

23   the only outside sale you made, at least that's on

24   Exhibit 1, that's reflected as a physical sale, is the

25   one that occurred on March the 1st at Azle High School

Page 76

1   and then you went -- it says, "Ordered with Toni on

2   March the 2nd."  Do you see that?

3        A.  Uh-huh.  Yeah, Toni went with me to Azle High

4   School and J.J. Pearce.

5        Q.  Okay.  So my question to you is, the week of

6   February the 27th, until March the 2nd, other than the

7   outside meeting at Azle and J.J. Pearce, what other

8   outside meetings, fittings, deliveries, did you have

9   that week?

10       A.  I don't know.  I mean, I went -- It was in

11  March.  We were doing a lot fittings.  I mean, there was

12  a fitting every day of March, from March till April.  We

13  had consistently fittings all the time.  And I would be

14  going to three or four of them a week and staying --

15       Q.  Okay.  Well, that wasn't my question to you.

16  My question was, from Monday, February the 27th, until

17  Friday, March the 2nd, can you tell the jury, other than

18  your outside visit to J.J. Pearce and your outside visit

19  to Azle High School, what other outside appointments,

20  meetings, deliveries, whatever, outside of the office,

21  you would have had?

22       A.  I mean, I had fittings that week, but I don't

23  recall where and what -- I don't -- I don't know.

24       Q.  What time were the fittings?

25       A.  Fittings were always late.  They were always

Page 77

1  after 5:00.  And they would last anywhere between two

2  and four hours, depending on how big the team was.

3     Q.  And what fittings did you go to that week?

4     A.  I don't know.

5     Q.  How many fittings did you go to that week?

6     A.  At least two or three.

7     Q.  How do you know that?

8     A.  I mean, I remember going to fittings that week,

9  but I don't know what days.  I don't -- I don't know.

10    Q.  What time did you come back from these two to

11  three fittings you may have had the week of

12  February 27th --

13    A.  After 8:00 or 9:00.

14    Q.  And you can't remember where you went?

15    A.  Some of them, like if I went -- like if it was

16  Azle High School, I know I went to their fitting.  And

17  that one is an hour away from Garland, so that one was

18  really far away.  And they have a team of 30, so I was

19  at least there for three hours.  I mean, I went to some

20  of the Plano schools with Toni.  Went to a lot of

21  different fittings.

22    Q.  Was Azle High School a school that was in your

23  territory?

24    A.  Yes.

25    Q.  And when you went to that fitting you had an

Page 78

1    opportunity to meet face-to-face with the director?

2        A.  Yes.

3        Q.  And is one of the purposes of a fitting so that

4    the girls and the parents are happy with the product, so

5    that they'll be a repeat customer the next year?

6        A.  I mean, that would be more of the delivery that

7    -- because they would actually see the product.  The

8    fitting was to make sure they fit into the uniforms that

9    they're about to receive.

10       Q.  And but you understood as a salesperson the

11   importance of putting on a good image and talking up the

12   product as you're fitting girls into these costumes,

13   right?

14       A.  Right.  But we would go with two other people.

15   I mean, we never went to a fitting alone.  It's very

16   rare.

17       Q.  And what about the week of Marth the 6th

18   through 10th, can you recall what specific fittings you

19   went to that week?

20       A.  No, I don't -- I don't know.

21       Q.  Okay.  What about the week of --

22       A.  I'm not going to remember where these fittings

23   are, each time you're going to ask me a week.  I just

24   don't remember.  It's almost two years ago.

25       Q.  Okay.  I understand that.  But you understand

Case 3:13-cv-03509-O   Document 43-1   Filed 03/14/14   Page 41 of 200   PageID 2,152
Job No. 18220
Miller, et al v. Team Go Figure, et al
Ariel Kleinsmith
January 7, 2014

Page 79

1    that you brought this lawsuit against Team Go Figure, do

2    you understand that?

3        A.   Yes.

4        Q.   Okay.   And what I'm trying to figure out is,

5    are you going to get in front of the jury and say, "I

6    went to these fittings at these schools, these weeks out

7    of the -- during my employment," and, if so, I want to

8    know that.   Okay?   So can you recall any fittings that

9    you went to after hours, after 6:00 in the evening, that

10   would have required you to work after 6:00 in the

11   evening during your employment with Team Go Figure?

12       A.   Yeah, there's been -- there was a lot of them.

13   I went to so many of them.   I mean --

14       Q.   Okay.   And what schools?   We talked about Azle.

15       A.   Yeah.

16       Q.   We talked about Plano.

17       A.   Plano; Plano, Senior; Plano East; Royse City.

18   I went to Garland, Garland South and -- There were so

19   many of them.   Went to all the Mansfield schools, South

20   (sic), Legacy, Colleyville, Grapevine, Trinity, those

21   were -- Decatur.   There's a lot of different fittings I

22   went to afterwards -- after hours.

23       Q.   Were any of the schools that you just named not

24   part of your sales territory?

25       A.   All the Plano schools.   Any of the -- I went to

Case 3:13-cv-08309-O   Document 43-1   Filed 03/14/14   Page 42 of 200   PageID 4,155
Miller, et al v. Team Go Figure, et al
Ariel Kleinsmith
January 7, 2014

Page 80

1    all of -- mostly Toni's, all of her fittings that she

2    had scheduled schools with.  Some of the Dallas schools

3    were Antwan's and mine and I went to those.

4         Q.  It's your testimony that you actually attended

5    a fitting in Grapevine?

6         A.  Yes.

7         Q.  Colleyville?

8         A.  Yes.

9         Q.  Garland?

10        A.  Yes.

11        Q.  And South Garland?

12        A.  Uh-huh.

13        Q.  You recall the director's names at those

14   schools?

15        A.  No.

16        Q.  Did -- When -- when you went to a fitting in

17   your sales territory, did other sales folks come and

18   help you with your fitting?

19        A.  Yes.

20        Q.  And then in turn when you went -- when they had

21   a fitting in their sales territory, you went and helped

22   them in their sales territory with their fitting, right?

23        A.  Yes.

24        Q.  And fittings are outside of the office?

25        A.  Yes.

Page 81

1      Q.   Physically going out of the office to --

2      A.   Yeah.

3      Q.   -- the school?

4      A.   But sometimes, like, you would have Meredith

5   come with us, Susan would come with us to fittings and

6   they weren't sales people.

7               MS. JACKSON:   Objection, nonresponsive.

8      Q.   (BY MS. JACKSON)  My question to you is,

9   fitting -- a fitting is physically outside the office at

10  the school, correct?

11     A.   Yes.

12     Q.   And that was part --

13     A.   Unless, sometimes, the team would come to the

14  office and we would fit them in the office.  There was a

15  couple times we did that.

16     Q.   During your entire employment with Team Go

17  Figure, you remember two occasions in which a team came,

18  actually, to Team Go Figure and fitted inside the

19  office?

20     A.   Yes.

21     Q.   Okay.  But that was unusual, correct?

22     A.   Yes.

23     Q.   Okay.  And you understood that part of your

24  job, your responsibility, was doing these outside

25  fittings?

Page 85

1    4th?

2         A.   I mean -- how much I worked then or --

3         Q.   Do you know -- You just said you do not know

4    many how -- if you worked over 40 hours the week of

5    April the 23rd through 27th because you took the day of

6    the 27th off of work --

7                   MR. MOULTON:   Objection, misstates her

8    testimony.

9                   THE WITNESS:   More than likely I worked --.

10        Q.   (BY MS. JACKSON)  My question to you was, do

11   you recall specifically how many hours you worked

12   beginning Monday, April the 30th, until Friday, May the

13   4th?

14        A.   I always worked over -- I mean, like, we would

15   stay so late for those fittings, like 8:00 to 10:00 on a

16   regular basis and it would be twice a week, if not

17   three, four times a week depending -- and that was our

18   busy season during March, so I well worked over 40 hours

19   that week.

20        Q.   Okay.  I wasn't talking about March.  Okay?

21   I'm talking about Monday, April the 30th until Friday,

22   May the 4th, that's a one-week period of time.

23        A.   I don't recall what I have.

24        Q.   Do you recall how many hours you worked that

25   week?

Page 86

1      A.   I feel like off -- May 1st -- what --

2           THE REPORTER:   I've got to hear and

3      understand you.

4           THE WITNESS:   Sorry.   I'm trying to see

5      when the letter that I resigned because --

6      Q.   (BY MS. JACKSON)   Okay.   Let me --

7      A.   I don't know -- I left like the first week of

8      May.

9      Q.   You can't -- sitting here right now you can't

10     recall how many hours you worked that week?

11     A.   No.   I mean, if it's the last week or the first

12     week of May, last week of April -- I don't know.

13          (Exhibit 7 marked.)

14     Q.   (BY MS. JACKSON)   Let me hand you what I'm

15     marking as Exhibit 7 and ask if you would tell the jury

16     what this document is?

17     A.   That was when I quit.

18     Q.   Pardon?

19     A.   That was when I quit Team Go Figure.   This is

20     my -- that was my resignation letter.

21     Q.   And just so the jury understands, you showed up

22     on Friday, May the 18th, in the morning, and turned in

23     this resignation letter, correct?

24     A.   Yep.

25     Q.   And you gave no advance notice, correct?

Page 87

1      A.   No.

2      Q.   And the day before, it's my understanding, you

3  drove up to Oklahoma --

4      A.   Yes.

5      Q.   -- apparently for a meeting, got lost and never

6  went to any of the meetings, correct?

7      A.   Correct.

8      Q.   And you represented to Team Go Figure, not that

9  you were just going to one meeting in Oklahoma, but that

10  you were going to multiple meetings --

11      A.   Right.

12      Q.   -- in Oklahoma -- just -- Is that correct?

13      A.   Correct.

14      Q.   And you never made it to any of those meetings,

15  did you?

16      A.   Correct, because I was lost.

17      Q.   And so just for purposes of putting this into a

18  calendar week, the week of May the -- has May the 18th,

19  began on May the 14th of 2012 --

20      A.   Uh-huh.

21      Q.   -- to May the 18th of 2012.  Okay?  And we know

22  you didn't work that Friday because you quit that

23  morning, right?

24      A.   Right.

25      Q.   So how many hours did you work from May the

Page 88

1    14th, Monday to Thursday, May the 17th?

2         A.  May the 14th, May the 17th?  I mean --

3         Q.  If you know?

4         A.  I don't know.

5         Q.  How many hours did you work the week before

6    from May the 7th, Monday, May the 7th, until Monday --

7    pardon me, Friday, May the 11th?

8         A.  I want to say close to 50 because that's when

9    we had -- we had like three fittings that week, if not

10   four fittings that I attended.

11        Q.  What three fittings or four fittings do you

12   remember attending the week of May the 14th through the

13   18th?

14        A.  Well, you mean the week prior.  You just mixed

15   up the dates.

16        Q.  I'm sorry.  What three to four fittings do you

17   recall attending the week of May the 7th through May the

18   11th?

19        A.  I don't recall, but I know I attended the

20   majority of those fittings.

21        Q.  And to attend three to four fittings, you're

22   saying you worked 50 hours that week?

23        A.  Yes.

24        Q.  So you worked ten hours over 40 hours?

25        A.  Yes.  At least.

Plaintiffs' Brief In Opposition Appendix 044

Page 89

1      Q.  And now let's go back because remember

2   initially what started me asking these questions was I

3   was asking about the week that began on April the 30th

4   through -- through Friday, May the 4th.  Okay?

5      A.  Right.

6      Q.  You had taken off the Friday before to move.

7   Okay?

8      A.  Uh-huh.

9      Q.  How many hours did you work the week of April

10  the 30th to -- to Friday, May the 4th?  Recall you

11  thought that was the week you quit, but we've now

12  clarified that.

13     A.  Yeah.  Right.

14     Q.  So are you able to tell this jury, under oath,

15  how many hours you worked the week of Monday, May (sic)

16  the 30th until Friday, May the 4th?

17     A.  Over 40 hours, easily.

18     Q.  Well, how many hours?  That's what I need to

19  know, if you know.

20     A.  I know I did like two or three fittings that

21  week, so --

22     Q.  Well, if three to four fittings meant you

23  worked 50 hours, then what is two to three fittings?

24     A.  Well, each fitting -- I mean, I would say it

25  was close to 50 hours, close to as well.

Page 90

1    Q.  And can you tell the jury what fittings you

2    went to that week?

3    A.  No.

4    Q.  What about the week before you took off the

5    Friday, that is, the week of Monday, April the 16th,

6    2012, through Friday, April the 20th of 2012, can you

7    tell the jury how many hours you worked that week?

8    A.  I'm sorry.  Could you restate that again?

9    Q.  Sure.  Can you tell the jury how many hours you

10   worked the week of Monday, April the 16th, through

11   Friday, April the 20th of 2012?

12   A.  I mean, over 50 hours because I went to

13   fittings.  It was big fitting season.  And do I remember

14   which fittings I attended?  No, I do not.

15   Q.  Do you remember how many fittings you attended?

16   A.  No.

17   Q.  How many hours over 50 hours do you think you

18   worked that week?

19   A.  I don't know.

20   Q.  Can you tell the jury how many hours you worked

21   from Monday, April the 9th, through Friday, April the

22   13th?

23   A.  April 9th to April the 13th?  I mean, every

24   week I attended at least three fittings, at least.  And

25   if I saw a fitting calendar I could show you which

Plaintiffs' Brief In Opposition Appendix 046

Page 91

1    fittings I attended.

2         Q.   What calendar?

3         A.   There was a fitting calendar that we had that

4    -- when fitting was scheduled.

5         Q.   Was it on the computer?

6         A.   No.  We had it on our big dry erase board and

7    it was scheduled who went to which fittings.

8         Q.   Okay.  Just so the jury understands, you're

9    talking about a calendar that's on a dry erase board --

10        A.   Right.

11        Q.   -- that existed back in 2012?

12        A.   Yes.

13        Q.   And was it erased every month?

14        A.   No, because we kept it for three consecutive

15   months, so we kept it for a while.

16        Q.   Okay.  Okay.  So when you left in May was there

17   a fitting calendar for March, April, May?

18        A.   Yeah.  Yes.

19        Q.   Okay.  And then what about when you were there

20   in February, was it February, March, April?

21        A.   Yeah.

22        Q.   And then they erased February and that would

23   become the May one?

24        A.   No.  Because the majority of our fittings took

25   place in March, April, May.

Page 92

1      Q.   And you have already told me all of the schools

2   that you can specifically remember attending fittings

3   at?

4      A.   Yes, if I saw a calendar, yes, I could

5   remember.

6      Q.   Well, you don't have any reason to believe that

7   a wipe board calendar from two years ago would still be

8   up --

9      A.   Right.

10      Q.   -- at Team Go Figure, right?

11      A.   Right.  It's not, no.  But we also put it into

12   our Google calendar as well with Team Go Figure.

13      Q.   How many fittings did Susan Elliot go to with

14   you?

15      A.   A lot.

16      Q.   How many?

17      A.   I would -- At least 15 different fittings that

18   Susan went with me to different fittings, at least.

19      Q.   On the 15, at least, fittings that Susan went

20   to with you, who else went to those fittings?

21      A.   Well, it changed because sometimes it would be

22   Heather would just go to a fitting with me or Toni would

23   go to a fitting with me or Meredith would go to a

24   fitting with me.  I mean, depend on how big the team

25   was.

Plaintiffs' Brief In Opposition Appendix 048

Case 3:13-CV-01509-O  Document 43-1  Filed 03/14/14  Page 52 of 200  PageID 1778

Job No. 18227
Miller, et al v. Team Go Figure, et al

Ariel Kleinsmith
January 7, 2014

Page 124

1    A.  Yes, that is my handwriting.  I was just told

2  that I should write 40 to 80 hours -- 40 hours a week,

3  no matter what.  I mean, I wasn't going to be paid any

4  more if I worked over that 40 hours.  It was pointless

5  for me to clock in because I was salary, so --

6    Q.  And who told you that?  Who specifically told

7  you that?

8    A.  Everybody.

9    Q.  Who?

10    A.  I mean, like Scott said I was salary --

11    Q.  That's not what I'm -- I'm not asking who told

12  you you were salary.  I'm asking who told you it was

13  pointless to write anymore than 80 hours on there?

14    A.  I mean everybody did.  I mean --

15    Q.  Who?

16    A.  -- it didn't matter.  It was -- Scott, Toni,

17  Susan, that I might as well just write 80 hours, doesn't

18  matter, even if I worked more than that because I worked

19  usually weekends as well.  Like I can tell you that -- I

20  think it was this weekend or the week -- last weekends

21  in March and February, I worked on the weekends to help

22  with catalog or I worked with fittings, as well.

23    Q.  What did you -- Who did you work with on the

24  weekend in February?

25    A.  In February I was working with Kristie and then

Plaintiffs' Brief In Opposition Appendix 049

Page 134

1    on --

2         Q.  (BY MS. JACKSON)   Okay.

3         A.  -- there were a lot of variables with their

4    pricing.

5         Q.  Okay.

6         A.  I mean, everybody had to know the pricing,

7    everybody in the office.

8         Q.  Going to hand you your interrogatory responses

9    that were filed in this lawsuit and ask you have you

10   ever seen this document before today?

11        A.  Yes.

12        Q.  Okay.  And if you will flip to page 11, that's

13   where your interrogatory responses start.  Do you see

14   that?

15        A.  Uh-huh.  Yes, I do.

16        Q.  And did you provide the responses and answer --

17   I mean, I know your attorney typed these up, but did you

18   answer these questions?

19        A.  With my attorney?

20        Q.  Yes.

21        A.  Yes, I did.

22        Q.  Okay.  And do you believe that the answers were

23   truthful and accurate?

24        A.  Yes, I do agree.

25        Q.  Do you recall what was in the Team Go Figure

Page 144

1    BY MS. JACKSON:

2         Q.   So the -- your testimony is that 50 percent of

3    your time was in customer service.  And was that in the

4    morning usually?

5         A.   Yes.

6         Q.   Like from 9:00 -- 8:30 or 9:00 until --

7         A.   Until 12:00, maybe even 1:00, 2:00, depending

8    upon the day.

9         Q.   Okay.  And then 25 of your percent was in

10   outside sales meetings?

11        A.   Uh-huh.

12        Q.   And 25 percent was fittings?

13        A.   Yes.

14        Q.   And that was your typical workday?

15        A.   Yes.

16             MS. JACKSON:   Okay.  That's all the

17   questions I have.  Pass the witness.

18             MR. MOULTON:   Have no further questions.

19             (Deposition concluded at 6:36 p.m.)

20

21

22

23

24

25

1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF TEXAS
                          DALLAS DIVISION

3    TONI MILLER, SUSAN ELLIOT,    )
     ARIEL KLEINSMITH AND          )
4    ANTWAN LEE,                   )
                                   )
5                 Plaintiffs,      )
                                   )  CIVIL ACTION
6    VS.                           )
                                   )  NO.: 3:13-cv-1509
7                                  )
     TEAM GO FIGURE, L.L.P.,       )
8    TEAM GO FIGURE AND SCOTT      )
     ESKRIDGE,                     )
9                 Defendants.      )

10

11              REPORTER'S CERTIFICATION

12           DEPOSITION OF ARIEL KLEINSMITH

13                  JANUARY 7, 2014

14

15         I, Julie G. Davault, Certified Shorthand Reporter

16    in and for the State of Texas, hereby certify to the

17    following:

18         That the witness, ARIEL KLEINSMITH, was duly sworn

19    by the officer and that the transcript of the oral

20    deposition is a true record of the testimony given by

21    the witness;

22         That the deposition transcript was submitted on

23    January 13, 2014, to the attorney for the witness for

24    examination, signature and return to me by February 12,

25    2014;

Job No. 18227
Ariel Kleinsmith
Case 3:13-cv-01009-M Document 43-1   Filed 03/14/14   Page 56 of 200   PageID 2179
Miller, et al v. Team Gorman, et al
January 7, 2014

Page 148

1          That the amount of time used by each party at the

2    deposition is as follows:

3    James Moulton, Esq......00 HOUR(S):02 MINUTE(S)
     Claudine Jackson, Esq......02 HOUR(S):54 MINUTE(S)

4          That pursuant to information given to the

5    deposition officer at the time said testimony was taken,

6    the following includes counsel for all parties of

7    record:

8    FOR THE PLAINTIFFS:

9          James Moulton, Esq.
           939 Highway 80 East

10         Suite 486
           Mesquite, Texas 75150

11         (903) 780-2540
           jim.moulton@gmail.com

12

     FOR THE DEFENDANTS:

13

           Claudine Jackson, Esq.

14         BRACKETT & ELLIS, P.C.
           100 Main Street

15         Fort Worth, Texas 76102
           (817) 338-1700

16         cjackson@belaw.com

17         That $ _887.55_ is the deposition officer's

18    charges to the Defendants for preparing the original

19    deposition transcript and any copies of exhibits;

20         I further certify that I am neither counsel for,

21    related to, nor employed by any of the parties or

22    attorneys in the action in which this proceeding was

23    taken, and further that I am not financially or

24    otherwise interested in the outcome of the action.

25

Plaintiffs' Brief In Opposition Appendix 053

Case 3:10‑cv‑00509‑O Document 43-1    Filed 03/14/14    Page 57 of 200    PageID 2180

Job No. 18227
Miller, Odis D. vs. Team Contractors, et al

Ariel Kleinsmith
January 7, 2014

Page 149

Certified to by me this 13th day of January, 2014.

1

2

3

4

Julie G. Davault, CSR, No. 2092
5        Expiration Date:  12/31/14
         Merit Court Reporters, LLC
6        Firm Registration No. 133
         307 W. 7th Street, Suite 1350
7        Fort Worth, Texas 76102
         (817) 336-3042
8

9        Job No. 18227

10

11                    FURTHER CERTIFICATION

12        The original deposition was/was not returned to the

13   deposition officer on _February 12, 2014_ ;

14        If returned, the attached Changes and Signature

15   page contains any changes and the reasons therefor;

16        If returned, the original deposition was delivered

17   to _Claudine Jackson_ , Custodial Attorney;

18        That $ _887.55_ is the deposition officer's

19   charges to the ^ for preparing the original deposition

20   transcript and any copies of exhibits.

21        That a copy of this certificate was served on all

22   parties shown herein.

23

24

25

Plaintiffs' Brief In Opposition Appendix 054

Job No. 18227
Miller, et al v. Team Go Figure, et al

Ariel Kleinsmith
January 9, 2014

Page 150

1    Certified to by me this 17th day of February,

2    2014.

3

4

5    By: _Diana Calvery_
     FOR:Julie G. Davault, CSR, No.2092
6    Expiration Date:  12/31/14
     Merit Court Reporters, LLC
7    Firm Registration No. 133
     307 W. 7th Street, Suite 1350
8    Fort Worth, Texas 76102
     (817) 336-3042
9

10   Job No. 18227

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiffs' Brief In Opposition Appendix 055

**Exhibit "C"**

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                              12/5/2013

1

```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
 2                    DALLAS DIVISION
 3  TONI MILLER, SUSAN       )
    ELLIOTT, ARIEL           )
 4  KLEINSMITH AND ANTWAN    )
    LEE                      )
 5                           )
                             )
 6  versus                   )   CIVIL ACTION NO. 3:13-CV-1509
                             )
 7                           )
    TEAM GO FIGURE, L.L.P.,)
 8  TEAM GO FIGURE AND       )
    SCOTT ESKRIDGE           )
 9
10       ********************************
11                  ORAL DEPOSITION
12                  SCOTT ESKRIDGE
13                  DECEMBER 5, 2013
14       ********************************
15
16
17      ANSWERS AND ORAL DEPOSITION OF SCOTT ESKRIDGE, a
18  witness produced at the instance of the Plaintiff, was
19  taken in the above-styled and numbered cause on the 5TH
20  day of DECEMBER 2013, from 2:12 p.m. to 4:24 p.m.,
21  before VANESSA S. ROBERTSON, CSR in and for the State
22  of Texas, reported by machine shorthand, at the offices
23  of Brackett & Ellis, 100 Main Street, Fort Worth,
24  Texas, pursuant to the Texas Federal Rules of Civil
25  Procedure.
```

U.S. LEGAL SUPPORT – DALLAS, TEXAS
214-741-6001

Plaintiffs' Brief In Opposition Appendix 057

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                    12/5/2013

2

```
1              A P P E A R A N C E S
2

   FOR THE PLAINTIFF:
3
       MR. JAMES MOULTON
4      JAMES MOULTON, ATTORNEY AT LAW
       3939 HIGHWAY 80
5      SUITE 486
       MESQUITE, TEXAS 75150
6      (972) 698-0999
       jim.moulton@gmail.com
7

   FOR THE DEFENDANT:
8
       MS. ANDREA WHALEN
9      MS. CLAUDINE JACKSON
       BRACKETT & ELLIS
10     100 MAIN STREET
       FORT WORTH, TEXAS 76102
11     (817) 338-1700
       awhalen@belaw.com
12     cjackson@belaw.com
13 ALSO PRESENT:
14     MS. TONI MILLER
       MS. SUSAN ELLIOTT

15
16
17
18
19
20
21
22
23
24
25
```

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                    12/5/2013

3

```
 1              T A B L E   O F   C O N T E N T S

 2                                                   PAGE

 3   APPEARANCES      . . . . . . . . . . . . . .      2

 4   SCOTT ESKRIDGE

 5        EXAMINATION BY MR. MOULTON  . . . . .        4

 6        EXAMINATION BY MS. JACKSON. . . . . .       64

 7        REEXAMINATION BY MR. MOULTON. . . . .       74

 8        REEXAMINATION BY MS. JACKSON. . . . .       77

 9        REEXAMINATION BY MR. MOULTON  . . . .       78

10        REEXAMINATION BY MS. JACKSON. . . . .       79

11   SIGNATURE AND CHANGES     . . . . . . . .        81

12   REPORTER'S CERTIFICATE    . . . . . . . .        83

13                              * * *

14                      E X H I B I T S

15   NO.          DESCRIPTION                  PAGE

16   14      Brackett & Ellis Letter           25

17   15      Kathleen Craig E-mail             27

18   16      Text Messages                     43

19

20

21

22

23

24

25
```

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                          12/5/2013

4

```
 1              P R O C E E D I N G S
 2              THE COURT REPORTER:  At this time
 3   the deposition of Scott Eskridge, a witness being
 4   deposed by the plaintiff is being taken in Cause
 5   No. 3:31-CV-1509 styled Miller, et al. versus Team Go
 6   Figure, et al., commencing at 2:12 p.m., December 5th,
 7   2013 at the offices of Brackett & Ellis located at 100
 8   Main Street, Fort Worth, Texas.  The court reporter
 9   taking the deposition is Vanessa Robertson with U.S.
10   Legal Support in Dallas, Texas.
11              Will counsel please state their
12   appearances for the record.
13              MR. MOULTON:  James Moulton for
14   plaintiffs.
15              MS. JACKSON:  Claudine Jackson for
16   the defendants.
17              SCOTT ESKRIDGE,
18   having being first duly sworn, testified as follows:
19          * * * E X A M I N A T I O N * * *
20   BY MR. MOULTON:
21      Q    All right.  Mr. Eskridge, your -- with the
22   notice for your deposition was sent some request for
23   production, we requested all documents showing outside
24   sales made by Ariel Kleinsmith.  Have you produced
25   those documents?
```

14:12 21

Plaintiffs' Brief In Opposition Appendix 060

```
 1    own?

 2         A    5.

 3         Q    5 each or cumulative?

 4         A    5 each.

 5         Q    Now, does Team Go Figure still operate as a

 6    limited liability partnership?

 7         A    Yes, sir.

 8         Q    I heard a rumor that it was now being

 9    operated as a general partnership; is that --

10         A    Rumor didn't happen.

11         Q    -- true?

12                   That never occurred?

13         A    Yes, sir.

14         Q    And actually in your answer to the lawsuit,

15    it was mentioned that it was being operated as a

16    general partnership.  That's untrue?

17         A    Yes, sir.  The CPA that I had was going to do

18    the paperwork for us --

19         Q    Okay.

20         A    -- to get it done.  And he was telling me

21    that I was supposed to be doing it.  I thought he was

22    doing it and neither one of us had ever gotten it

23    done.

24         Q    Okay.  Are you general partner for the LLP?

25         A    I go as owner or president.
```

Plaintiffs' Brief In Opposition Appendix 061

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                    12/5/2013
                                                        16

```
14:25   1       Q    Okay.  Do you know how --
        2       A    General partner, yes, sir, I would be the
        3  general partner.
14:25   4       Q    Okay.  Are you familiar with how LLPs are
        5  supposed to be operated?
        6       A    Not entirely.
14:25   7       Q    Okay.  Is there a separate corporation that
        8  actually is the general partner or is it just you
        9  individually?
       10       A    Just me individually.
14:25  11       Q    All right.  Have you ever been sued before?
       12  And I know about Penny Durette, we don't have to get
       13  into that.  Have you been sued in any other context?
       14       A    No, sir.
14:26  15       Q    No?
       16       A    No.
14:26  17       Q    Have you ever been sued in small claims
       18  court?
       19       A    I had a small claims on the printing of my
       20  catalog in 2000.
14:26  21       Q    Did Toni Miller sue you in small claims
       22  court?
       23       A    Oh, okay.  If that's -- I guess so, yes.
14:26  24       Q    And how did that lawsuit end?
       25       A    She was awarded $1200.
```

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

Plaintiffs' Brief In Opposition Appendix 062

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                    12/5/2013

23

```
              1              MS. JACKSON:  Okay.
      14:34   2        Q    (By Mr. Moulton)  Do you understand,
              3   Mr. Eskridge, that there are different exemptions under
              4   the FLSA?
              5        A    Uh-huh.
      14:35   6        Q    Do you understand that?
              7        A    Yes.
      14:35   8        Q    Can you name for me the different
              9   exemptions?
             10        A    If someone is a managerial or administrative
             11   person, if someone has a weekly salary of $455 or
             12   something of that nature.
      14:35  13        Q    And when did you learn this information?
             14        A    When I was sued.
      14:35  15        Q    Okay.  Did you have any idea that those
             16   requirements existed prior to this lawsuit?
             17        A    I did not.
      14:35  18        Q    Okay.  So in other words, you didn't actually
             19   consult an attorney or anything else when you decided
             20   these people were exempt?
             21        A    No.
      14:35  22        Q    Okay.  And that goes for any person that was
             23   salaried at Team Go Figure while my clients were there,
             24   correct?
             25        A    Yes.
```

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                          12/5/2013

29

```
        1        A    No, sir.
14:53   2        Q    Wasn't there an incident where cash got
        3   stolen from Team Go Figure?
        4        A    Yes.
14:53   5        Q    Where was that cash stolen from?
        6        A    It was where Susan Elliott said she put it,
        7   in the back of a cabinet.
14:54   8        Q    Is that where cash was kept?
        9        A    It was -- it was where she put it.  It is not
       10   where -- cash was supposed to have been deposited
       11   everyday and taken out of the building.  There was only
       12   $200 petty cash that we would keep.
14:54  13        Q    So when she says there's an owner's safe,
       14   she's just wrong about that?
       15        A    It's not the truth.
14:54  16        Q    Okay.  Now, when she talks about being made
       17   aware of overtime that was being paid to -- that was
       18   not being paid to employees, you don't recall any --
       19   any complaints about overtime not being paid to
       20   employees?
       21        A    No.
14:54  22        Q    All right.  Going to, if you look through, I
       23   don't have page numbers on these.  It's about the fifth
       24   or sixth page in.  It is her resignation letter dated
       25   April 22nd, 2011.  Do you recall getting this
```

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

Plaintiffs' Brief In Opposition Appendix 064

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                              12/5/2013

30

1      resignation letter?

2           A    I do now.

14:55  3           Q    Can you read it, please?

4           A    Dear Sirs, As of April 22nd, 2011, I

5      respectfully resign the full charge bookkeeper position

6      that was offered to me on April 8th, 2011, that I have

7      been in training for since April 12th, 2011.  I am

8      resigning for the following reason:  I cannot sign my

9      name to a payroll of any kind that might not comply

10     with the United States Department of Labor Wage & Hour

11     Division Laws and Regulations.  Please send me my the

12     final check for the pay period April 20th to May 3rd.

13     I worked from April 20th to April 22nd.

14:56  14          Q    After receiving this letter, did you do any

15     sort of investigation into your pay policies to

16     determine whether or not they were compliant with the

17     Department of Labor Wage & Hour Division Laws?

18          A    No.

14:56  19          Q    Do you remember the appeal, if you flip the

20     page, you have got the June 13th, 2011, she appealed

21     the denial of her unemployment benefits.  Do you recall

22     that appeal?

23          A    No.

14:56  24          Q    Do you recall receiving this document from

25     the Texas Workforce Commission?

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

Plaintiffs' Brief In Opposition Appendix 065

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                    12/5/2013

43

| | | |
|---|---|---|
| | 1 | A    Yes. |
| 15:12 | 2 | Q    Okay.  I mean, you'd agree with me that the |
| | 3 | law requires you to pay all of the hours that an |
| | 4 | employee works, correct? |
| | 5 | A    Correct. |
| 15:13 | 6 | Q    Do you recall the reason that -- well, never |
| | 7 | mind, strike that. |
| | 8 | (Exhibit No. 16 was marked.) |
| 15:13 | 9 | Q    (By Mr. Moulton)  Let's get that exhibit back |
| | 10 | in order, if we could.  Do you have the paper clip |
| | 11 | still? |
| | 12 | A    Yeah. |
| | 13 | MS. JACKSON:  We have a stapler. |
| | 14 | THE WITNESS:  I might not have put |
| | 15 | it back in the right order, so... |
| 15:14 | 16 | Q    (By Mr. Moulton)  Now, as you will recall |
| | 17 | this lawsuit was initially filed by four plaintiffs, |
| | 18 | which included Antwan Lee.  I'll hand you what is |
| | 19 | marked as Exhibit 16.  Can you tell me what those |
| | 20 | documents are? |
| | 21 | A    This is a text message. |
| 15:15 | 22 | Q    All right.  And can you give me some of the |
| | 23 | background behind those text messages, please? |
| | 24 | A    It started with Rick came into my -- I can't |
| | 25 | remember his last name, he works at Dallas Spandex.  He |

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

Plaintiffs' Brief In Opposition Appendix 066

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                    12/5/2013

44

```
 1   came into my office wanting to buy fabric.  And we just
 2   started chit-chatting and somehow we got around that,
 3   you know, of -- he said, oh, I got an employee that
 4   used to work here.  I said, really, who is that?  He
 5   said, Antwan Lee.  I said, well, did you know Antwan is
 6   in a lawsuit with me?  And he said, no, I didn't.  I
 7   said, what does he do for you?  He says, he's my
 8   manager.  And I said, oh, okay.  And I said, well, you
 9   know, it is just he's in a lawsuit with me.  And he
10   said, well, I didn't realize that.  I wish he had told
11   me something -- my employee had told me that, you know,
12   before I came over here.  And so when he left that day,
13   probably within 20 minutes or so, Antwan Lee sent me a
14   text message saying that he's made some -- a mistake
15   and, you know, et cetera, didn't realize what I was
16   into, something of that nature.  This text might be one
17   behind here, I'm not sure.  And so then, you know, with
18   that, I took and looked up Ariel's -- tried to find
19   whether I had Ariel's record of her text -- of her
20   phone and again, hoping I could get her out of this as
21   well.  So I sent her a message saying, you know,
22   something in this text message that you had here.
23        Q     Okay.  So the -- Rick was Antwan's boss?
24        A     Yes.
25        Q     And so you talked to Rick and you claimed
```

15:16 (line 23)
15:17 (line 25)

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

Plaintiffs' Brief In Opposition Appendix 067

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                    12/5/2013

52

15:26    1        Q    Do you know whether or not she ever worked

         2   any overtime hours?

         3        A    No.

15:26    4        Q    If she claimed to have worked 50 hours, 40

         5   hours, 60 hours, you wouldn't know one way or the

         6   other?

         7        A    No.

15:26    8        Q    All right.  Susan Elliott, did Sandra help in

         9   the hiring of Susan Elliott?

        10        A    I don't recall.  No, I don't believe she

        11   did.

15:27   12        Q    I'll show you what's been marked as Exhibit

        13   7.  Can you tell me what that document is?

        14        A    This was the ad we ran for a bookkeeper.

15:27   15        Q    And what -- where did you run it?

        16        A    Well, I guess it was in Facebook -- not in

        17   Facebook, but in Craigslist.

15:27   18        Q    Okay.  And on it it says, The primary

        19   responsibilities are and then it goes through a long

        20   list?

        21        A    Uh-huh.

15:27   22        Q    Can you see any responsibilities on that list

        23   that -- well, did she perform any -- in the actual

        24   performance of her duties, did she perform any duties

        25   that are not listed on Exhibit 7?

Plaintiffs' Brief In Opposition Appendix 068

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                      12/5/2013

53

```
          1       A    Yes.

15:28     2       Q    What?

          3       A    She did HR work.

15:28     4       Q    Okay.  What else?

          5       A    She made decisions on if invoices were to --

          6    if the orders were to be shipped or not shipped.  She

          7    made decisions on credit card statements being paid off

          8    early, deposits in the bank, transferring of money.

          9    She released orders without deposits.

15:28    10       Q    Anything else?

         11       A    She made decisions on if people were to

         12    receive sick pay, vacation pay.

15:29    13       Q    Anything else?

         14       A    I'm sure there's more, I just can't think of

         15    them all right now.

15:29    16       Q    All right.  Do you recall -- well, first of

         17    all --

         18       A    In her interview was she told about HR?

15:29    19       Q    Excuse me?

         20       A    When her interview, when she had the

         21    position, she was also told we are a small company and

         22    you wear many hats and you will also do HR work and

         23    there will be other things that you'll be doing.

         24            MS. JACKSON:  Wait for his

         25    question.
```

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

Plaintiffs' Brief In Opposition Appendix 069

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                    12/5/2013

54

```
                    1                          THE WITNESS:  Okay.
15:29               2          Q     (By Mr. Moulton)  If you look to the back of
                    3    that page --
                    4                          MS. JACKSON:  I'm going to staple
                    5    it.
                    6                          MR. MOULTON:  Thank you.
15:29               7          Q     (By Mr. Moulton)  If you look to the second
                    8    page on that, it tells you what pay was supposed to be
                    9    for that position?
                   10          A     Uh-huh.
15:30              11          Q     Do you see that?
                   12          A     Yes.
15:30              13          Q     And what does it say?
                   14          A     18 hours [sic].
15:30              15          Q     Hourly?
                   16          A     18 hour full-time.
15:30              17          Q     That's not salary, is it?
                   18          A     No.
15:30              19          Q     Okay.  Can you tell me what Exhibit 12 is.
                   20          A     It's Susan's resume.
15:30              21          Q     Do you recall looking at her resume?
                   22          A     Yes.
15:30              23          Q     Did you actually investigate any of her
                   24    previous employers?
                   25          A     Just one.
```

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                              12/5/2013
                                                                    55

```
15:30    1        Q    Which one?

         2        A    The last one she worked at, Kalogridis.

15:30    3        Q    Actually if you look at following page,

         4   there's another one.  Two more.  Oh, when you say last,

         5   you mean last in time.

         6        A    Yes, the last one she had worked for.

15:31    7        Q    Okay.  So if -- if she was to testify that --

         8   that the duties she performed at any one of those

         9   employers was the same as what she performed at Team Go

        10   Figure, you wouldn't have any means of disputing that,

        11   would you?

        12        A    No, sir, I don't know what she did there.

15:31   13        Q    Okay.  Do you know what hours Susan Elliott

        14   worked?

        15        A    No.

15:31   16        Q    So if she was to testify that she worked at

        17   least in excess of 90 hours in a week, you would have

        18   no basis for disputing such a claim?

        19        A    No.

15:32   20        Q    Do you know whether or not she worked from

        21   home?

        22        A    No.

15:32   23        Q    Do you know whether or not she worked in

        24   excess of 40 hours in any given week?

        25        A    Yes.
```

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

Plaintiffs' Brief In Opposition Appendix 071

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                    12/5/2013

81

```
 1                    CHANGES AND SIGNATURE

 2   WITNESS NAME:  SCOTT ESKRIDGE

 3   DATE OF DEPOSITION:  DECEMBER 5, 2013

 4   PAGE    LINE    CHANGE          REASON

 5   _____

 6   _____

 7   _____

 8   _____

 9   _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____
```

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

Plaintiffs' Brief In Opposition Appendix 072

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                    12/5/2013

82

```
 1  _____
 2  _____
 3  _____
 4  _____
 5  _____
 6       I, SCOTT ESKRIDGE, have read the foregoing
    deposition and hereby affix my signature that same is
 7  true and correct, except as noted above:
 8
 9                      _____
                        SCOTT ESKRIDGE
10
11  THE STATE OF _____ )
12  COUNTY OF _____ )
13
14       Before me, _____, on
    this day personally appeared SCOTT ESKRIDGE, known to
15  me (or proved to me under oath or through
    _____) (description of identity card or
16  other document) to be the person whose name is
    subscribed to the foregoing instrument and acknowledged
17  to me that they executed the same for the purposes and
    consideration therein expressed.
18
19       Given under my hand and seal of office this
20  _____ day of _____, 20__.
21
22
23                      _____
                        NOTARY PUBLIC IN AND FOR
24                      THE STATE OF _____
25
```

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

Plaintiffs' Brief In Opposition Appendix 073

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                           12/5/2013

83

```
 1   STATE OF TEXAS      X

 2   COUNTY OF DALLAS     X

 3

 4         I, Vanessa S. Robertson, a Certified

 5   Shorthand Reporter duly commissioned and qualified in

 6   and for the State of Texas, do hereby certify that

 7   there came before me on the DECEMBER 5, 2013 at

 8   Brackett & Ellis, 100 Main Street, Fort Worth, the

 9   following named person, to-wit: SCOTT ESKRIDGE, who was

10   duly sworn to testify to the truth, the whole truth,

11   and nothing but the truth of knowledge touching and

12   concerning the matters in controversy in this cause;

13   and that he was thereupon examined under oath and his

14   examination reduced to typewriting under my

15   supervision; that the deposition is a true record of

16   the testimony given by the witness.

17         I further certify that pursuant to FRCP Rule

18   30(e)(1) that the signature of the deponent:

19         __X__ was requested my the deponent or a

20   party before the completion of the deposition, and that

21   signature is to be before any notary public and

22   returned within 30 days from date of receipt of the

23   transcript;

24         ____ was not requested by the deponent or a

25   party before the completion of the deposition.
```

Plaintiffs' Brief In Opposition Appendix 074

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  SCOTT ESKRIDGE                    12/5/2013

84

1              I further certify that I am neither attorney

2     or counsel for, nor related to or employed by any of

3     the parties to the action in which this deposition is

4     taken, and further that I am not a relative or employee

5     of any attorney or counsel employed by the parties

6     hereto; or financially interested in the action.

7              Certified to by me this _____ day of

8     _____, 2013.

9

10

11

12

13              _____

              VANESSA S. ROBERTSON

14              TEXAS CSR 4930

              EXPIRATION DATE: 12/31/2013

15              FIRM REGISTRATION No. 343

16              U.S. LEGAL SUPPORT

              5910 NORTH CENTRAL EXPRESSWAY

17              SUITE 100

              DALLAS, TEXAS 75206

18              (214) 741-6001

19

20

21

22

23

24

25

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

**Exhibit "D"**

## FIRST REQUEST FOR ADMISSIONS

**REQUEST NO. 1.** Admit that the documents bates numbered Plaintiffs' 409-417 are a copy of a Team Go Figure report, entitled "Report of Hours Worked -- All Departments Report from 4/6/2011 to 4/19/2011 -- Worked Hours All Employees".

**RESPONSE:** Admitted.

**REQUEST NO. 2:** Admit that for the work week ending 4/12/11, employee Tuong Le Tran worked 54.94 hours.

**RESPONSE:** Defendant admits that for the work week ending 4/12/11, employee Tuong Le Tran clocked in and out to report hours worked in the amount of 54.94, but otherwise denies this Request.

**REQUEST NO. 3:** Admit that for the work week ending 4/12/11, Team Go Figure did not pay Tuong Le Tran any overtime wages.

**RESPONSE:** Admitted.

**REQUEST NO. 4:** Admit that Tuong Le Tran's actual time card records reflect that on 4/7/11, Tuong Le Tran clocked in at 5:32 AM, and clocked out at 4:32 PM.

**RESPONSE:** Admitted.

**REQUEST NO. 5:** Admit that Tuong Le Tran was only credited for working 10.50 hours on 4/7/11.

**RESPONSE:** Admitted.

**REQUEST NO. 6:** Admit that according to the actual punch in and out times of Tuong Le Tran for the work week ending 4/12/11, Tuong Le Tran was actually on the clock for 57.44 hours.

**RESPONSE:** Denied.

**REQUEST NO. 7:** Admit that for the entire pay period ending 4/19/11, Tuong Le Tran was credited for working 81.67 hours.

**RESPONSE:** Denied.

**REQUEST NO. 8:** Admit that for the entire pay period ending 4/19/11, Tuong Le Tran was on the clock for 85.67 hours.

**RESPONSE:** To the extent "on the clock" means working, Defendant denies this Request.

**REQUEST NO. 9:** Admit that Team Go Figure only paid Tuong Le Tran for 80 hours of work for the pay period ending on 4/19/11.

**RESPONSE:** Admitted.

Defendant Team Go Figure, LLP's Objections and Responses
To Plaintiffs' First Request for Admissions – C.A. No. 3:13-cv-1509

442123.1
Page 3

Plaintiffs' Brief In Opposition Appendix 077

**REQUEST NO. 10:**  Admit that Team Go Figure did not pay Tuong Le Tran minimum wage for any hours worked in excess of 80 hours for the pay period ending on 4/19/11.

**RESPONSE:** Admitted.

**REQUEST NO. 11:**  Admit that as of 4/19/11, it was the practice of Team Go Figure to calculate overtime wages by the amount hours worked over 80 in a two week period.

**RESPONSE:** Admitted.

**REQUEST NO. 12:**  Admit that Team Go Figure automatically deducts 30 minutes from every hourly employee's daily time records.

**RESPONSE:** To the extent "automatically deducts" refers to the required 30 minute lunch period and the amount of time in which employees are instructed to go on their lunch break, then Defendant admits this request. Defendant, however, denies as automatic deduction occurs if an employee reports he/she worked through lunch or if Defendant knows an employee works through lunch.

**REQUEST NO. 13:**  Admit that for the pay period ending 4/19/11, Team Go Figure did not pay any overtime pay to any employee of Team Go Figure.

**RESPONSE:** Admitted.

**REQUEST NO. 14:**  Admit that since April of 2010 Team Go Figure has on more than one occasion reduced the amount of hours worked by hourly employees in order to avoid paying overtime wages.

**RESPONSE:** Denied.

**REQUEST NO. 15:**  Admit that the Team Go Figure, Inc. Personnel Policy bates numbered TFG-000572 – 000580 and purportedly signed by Toni Miller on 3/16/11 was the Personnel Policy manual in effect for Team Go Figure on 3/16/11.

**RESPONSE:** Admitted.

**REQUEST NO. 16:**  Admit that Team Go Figure had sales in excess of $500,000 for the year of 2010.

**RESPONSE:** Admitted.

**REQUEST NO. 17:**  Admit that Team Go Figure had sales in excess of $500,000 for the year of 2011.

**RESPONSE:** Admitted.

**REQUEST NO. 18:**  Admit that Team Go Figure had sales in excess of $500,000 for the year of 2012.

Defendant Team Go Figure, LLP's Objections and Responses
To Plaintiffs' First Request for Admissions – C.A. No. 3:13-cv-1509

442123.1
Page 4

Plaintiffs' Brief In Opposition Appendix 078

**RESPONSE:** Admitted.

**REQUEST NO. 19:**  Admit that Team Go Figure had sales in excess of $500,000 for the year of 2013.

**RESPONSE:**  Admitted.

Defendant Team Go Figure, LLP's Objections and Responses
To Plaintiffs' First Request for Admissions – C.A. No. 3:13-cv-1509

442123.1
Page 5

Plaintiffs' Brief In Opposition Appendix 079

**Exhibit "E"**

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  TABITHA CORKER                     12/4/2013

1

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
 2                     DALLAS DIVISION
 3  TONI MILLER, SUSAN      )
    ELLIOTT, ARIEL          )
 4  KLEINSMITH AND ANTWAN   )
    LEE                     )
 5                          )
                            )
 6  versus                  )   CIVIL ACTION NO. 3:13-CV-1509
                            )
 7                          )
    TEAM GO FIGURE, L.L.P.,)
 8  TEAM GO FIGURE AND      )
    SCOTT ESKRIDGE          )
 9
10       ************************************
11                    ORAL DEPOSITION
12                    TABITHA CORKER
13                    DECEMBER 4, 2013
14       ************************************
15
16
17      ANSWERS AND ORAL DEPOSITION OF TABITHA CORKER, a
18  witness produced at the instance of the Plaintiff, was
19  taken in the above-styled and numbered cause on the 4TH
20  day of DECEMBER 2013, from 10:14 a.m. to 11:32 a.m.,
21  before VANESSA S. ROBERTSON, CSR in and for the State
22  of Texas, reported by machine shorthand, at the offices
23  of Brackett & Ellis, 100 Main Street, Fort Worth,
24  Texas, pursuant to the Texas Federal Rules of Civil
25  Procedure.
```

Plaintiffs' Brief In Opposition Appendix 081

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  TABITHA CORKER                    12/4/2013

2

```
 1                 A P P E A R A N C E S
 2
   FOR THE PLAINTIFF:
 3
        MR. JAMES MOULTON
 4      JAMES MOULTON, ATTORNEY AT LAW
        3939 HIGHWAY 80
 5      SUITE 486
        MESQUITE, TEXAS 75150
 6      (972) 698-0999
        jim.moulton@gmail.com
 7
   FOR THE DEFENDANT:
 8
        MS. ANDREA WHALEN
 9      BRACKETT & ELLIS
        100 MAIN STREET
10      FORT WORTH, TEXAS 76102
        (817) 338-1700
11      awhalen@belaw.com
12 ALSO PRESENT:
13      MS. TONI MILLER
        MS. SUSAN ELLIOTT
14      MR. SCOTT ESKRIDGE
15
16
17
18
19
20
21
22
23
24
25
```

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

Plaintiffs' Brief In Opposition Appendix 082

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:   TABITHA CORKER                         12/4/2013

3

1                    T A B L E   O F   C O N T E N T S

2                                                        PAGE

3   APPEARANCES        .   .   .   .   .   .   .   .   .   .   .      2

4   TABITHA CORKER

5         EXAMINATION BY MR. MOULTON   .   .   .   .   .        4

6         EXAMINATION BY MS. WHALEN .   .   .   .   .   .       49

7   SIGNATURE AND CHANGES      .   .   .   .   .   .   .   .    57

8   REPORTER'S CERTIFICATE     .   .   .   .   .   .   .   .    59

9                                   *   *   *

10                       E X H I B I T S

11  NO.            DESCRIPTION              PAGE

12  1         Verbal Warning                21

13  2         Time Records                  28

14  3         E-mail String                 29

15  4         Written Statements            31

16  5         Payroll Summary               34

17  6         Employee Profile              36

18  7         Ad for Bookkeeper             38

19  8         Resignation Letter            43

20

21

22

23

24

25

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

Plaintiffs' Brief In Opposition Appendix 083

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  TABITHA CORKER                      12/4/2013

4

                    P R O C E E D I N G S

1                        THE COURT REPORTER:  At this time

2   the deposition of Tabitha Corker, a witness being

3   deposed by the plaintiff is being taken in Cause

4   No. 3:31-CV-1509 styled Miller, et al. versus Team Go

5   Figure, et al., commencing at 10:14 a.m. on December

6   4th, 2013 at the offices of Brackett & Ellis, located

7   at 100 Main Street, Fort Worth, Texas.  The court

8   reporter taking the deposition is Vanessa Robertson

9   with U.S. Legal Support in Dallas, Texas.

10                       And will counsel please state their

11  appearances for the record.

12                       MR. MOULTON:  James Moulton for

13  plaintiffs.

14                       MS. WHALEN:  Andrea Whalen,

15  defendants.

16                       TABITHA CORKER,

17  having being first duly sworn, testified as follows:

18                  * * * E X A M I N A T I O N * * *

19  BY MR. MOULTON:

10:15 20     Q    All right.  Tabitha, my name is Jim Moulton,

21  James is my proper name, but I go by Jim.  Have you

22  ever given your deposition before?

23     A    No.

10:15 24     Q    It can be a little intimidating.  I hope you

Plaintiffs' Brief In Opposition Appendix 084

MILLER, ET AL v. TEAM GO FIGURE, ET AL

Deposition of:   TABITHA CORKER                    12/4/2013

23

 1      A    No.

10:39  2      Q    Now, for the fitting and deliveries, do you

 3  recall typically what time of day the fittings and

 4  deliveries were?

 5      A    Fittings are typically in the latter part of

 6  the afternoon.

10:39  7      Q    When you say latter part, what does that

 8  mean?

 9      A    4:30 would be a fair estimate of the time to

10  start them.

10:39 11      Q    Okay.

12      A    Deliveries are usually earlier in the day.

13  Usually during the school hours, which would be, you

14  know, 8:00 to 3:00 in the afternoon, sometime in that

15  time frame in a typical case.

10:39 16      Q    And a fitting, a typical fitting, how long

17  would it last?

18      A    It depends on the size of the team, anywhere

19  from an hour to three hours.

10:39 20      Q    What's the latest time that you ever left a

21  fitting that you can recall?

22      A    The latest time I ever left a fitting would

23  be 8:00 o'clock at night.

10:40 24      Q    So if you started at 4:30, that's three and a

25  half hours?

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:   TABITHA CORKER                    12/4/2013

24

          1      A    Sure, yes.
10:40     2      Q    Now, if you were working 40 hours a week and
          3   then went to a fitting that didn't get out until 8:00,
          4   then that would put you over 40 hours, wouldn't it?
          5                MS. WHALEN:   Objection; form.   This
          6   is vague and misleading.
          7      A    Yes.
10:40     8      Q    (By Mr. Moulton)   That's fine.   Correct?
          9      A    Yes.
10:40    10      Q    Okay.   Do you think that due to fittings and
         11   deliveries, you've ever worked more than 40 hours in a
         12   week?
         13      A    Yes.
10:40    14      Q    How --
         15                MS. WHALEN:   Same objection.
10:40    16      Q    (By Mr. Moulton)   How many hours a week,
         17   between -- how many hours a week do you think you --
         18   during the fitting and delivery periods, I believe you
         19   said it was in March and April, how many hours a week
         20   do you think you were working?
         21      A    An estimate of time frame for myself would be
         22   probably 45 hours.
10:41    23      Q    Is that just one fitting a week?
         24      A    Yes.
10:41    25      Q    Okay.   Did you ever attend more than one

Plaintiffs' Brief In Opposition Appendix 086

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  TABITHA CORKER                    12/4/2013

57

```
1                    CHANGES AND SIGNATURE

2  WITNESS NAME:   TABITHA CORKER

3  DATE OF DEPOSITION:    DECEMBER 4, 2013

4  PAGE    LINE        CHANGE              REASON

5  ------------------------------------------------------

6  ------------------------------------------------------

7  ------------------------------------------------------

8  ------------------------------------------------------

9  ------------------------------------------------------

10 ------------------------------------------------------

11 ------------------------------------------------------

12 ------------------------------------------------------

13 ------------------------------------------------------

14 ------------------------------------------------------

15 ------------------------------------------------------

16 ------------------------------------------------------

17 ------------------------------------------------------

18 ------------------------------------------------------

19 ------------------------------------------------------

20 ------------------------------------------------------

21 ------------------------------------------------------

22 ------------------------------------------------------

23 ------------------------------------------------------

24 ------------------------------------------------------

25 ------------------------------------------------------
```

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

MILLER, ET AL v. TEAM GO FIGURE, ET AL

Deposition of:  TABITHA CORKER                    12/4/2013

58

```
1  _____
2  _____
3  _____
4  _____
5  _____
6      I, TABITHA CORKER, have read the foregoing
   deposition and hereby affix my signature that same is
7  true and correct, except as noted above:
8
9                     _____
                      TABITHA CORKER
10
11 THE STATE OF _____ )
12 COUNTY OF _____ )
13
14     Before me, _____, on
   this day personally appeared TABITHA CORKER, known to
15 me (or proved to me under oath or through
   _____) (description of identity card or
16 other document) to be the person whose name is
   subscribed to the foregoing instrument and acknowledged
17 to me that they executed the same for the purposes and
   consideration therein expressed.
18
19     Given under my hand and seal of office this
20 _____ day of _____, 20__.
21
22
23                    _____
                      NOTARY PUBLIC IN AND FOR
24                    THE STATE OF _____
25
```

Plaintiffs' Brief In Opposition Appendix 088

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  TABITHA CORKER                              12/4/2013

59

1  STATE OF TEXAS        X

2  COUNTY OF DALLAS       X

3

4          I, Vanessa S. Robertson, a Certified

5  Shorthand Reporter duly commissioned and qualified in

6  and for the State of Texas, do hereby certify that

7  there came before me on the DECEMBER 4, 2013 at

8  Brackett & Ellis, 100 Main Street, Fort Worth, the

9  following named person, to-wit: TABITHA CORKER, who was

10  duly sworn to testify to the truth, the whole truth,

11  and nothing but the truth of knowledge touching and

12  concerning the matters in controversy in this cause;

13  and that she was thereupon examined upon oath and her

14  examination reduced to typewriting under my

15  supervision; that the deposition is a true record of

16  the testimony given by the witness.

17          I further certify that pursuant to FRCP Rule

18  30(e)(1) that the signature of the deponent:

19          __X__ was requested my the deponent or a

20  party before the completion of the deposition, and that

21  signature is to be before any notary public and

22  returned within 30 days from date of receipt of the

23  transcript;

24          ____ was not requested by the deponent or a

25  party before the completion of the deposition.

Plaintiffs' Brief In Opposition Appendix 089

MILLER, ET AL v. TEAM GO FIGURE, ET AL
Deposition of:  TABITHA CORKER                      12/4/2013

60

1          I further certify that I am neither attorney
2 or counsel for, nor related to or employed by any of
3 the parties to the action in which this deposition is
4 taken, and further that I am not a relative or employee
5 of any attorney or counsel employed by the parties
6 hereto; or financially interested in the action.
7          Certified to by me this _____ day of
8 _____, 2013.
9
10
11
12
13     _____
       VANESSA S. ROBERTSON
14     TEXAS CSR 4930
       EXPIRATION DATE: 12/31/2013
15     FIRM REGISTRATION No. 343
16     U.S. LEGAL SUPPORT
       5910 NORTH CENTRAL EXPRESSWAY
17     SUITE 100
       DALLAS, TEXAS 75206
18     (214) 741-6001
19
20
21
22
23
24
25

Plaintiffs' Brief In Opposition Appendix 090

# Exhibit "F"

### DECLARATION OF KATHLEEN CRAIG

1.    My name is Kathleen Craig,  I am over the age of 21, of sound mind, have never been convicted of a felony, and am competent to make this declaration.  Every statement herein is within my personal knowledge and is true and correct.

2.    I have more than 21 years of pay roll experience.

3.    In April of 2011, I worked as a book keeper for Team Go Figure for approximately two weeks.

4.    I was paid hourly while I worked for Team Go Figure.

5.    During the two week period that I worked at Team Go Figure, I personally observed Team Go Figure  manipulate employees' time cards in order to avoid paying overtime for hours worked.

6.    I also noted that many non-exempt employees were being paid a salary, and were not being compensated for overtime hours.

7.    I also found that IRS 940 and 941 forms were being falsified, I-9's were knowingly falsified, and that Team Go Figure was knowingly employing at least one undocumented worker.

8.    Upon learning of these unlawful activities occurring at Team Go Figure, I refused to participate in such illegal activities, and resigned my position.  Upon resigning, I gave Scott Eskridge and Scott Kenworthy copies of my resignation letter, a true and exact copy of which is attached hereto.

9.    After resigning, I filed for unemployment benefits, which were initially denied.  I then filed an appeal, and documented in detail many of the FLSA violations and other illegal activities occurring at Team Go Figure, with documentation to back up such allegations.  I have

attached true and correct copies of the appeal documents hereto.

10.    Pursuant to the appeals rules, prior to the hearing, I faxed supporting evidence directly to Team Go Figure.  A true and correct copy of the fax, fax confirmation, cover letter and supporting evidence is attached hereto.

I declare that under penalty of perjury that the foregoing is true and correct.

Executed on the _12th_ day of ___March___, 2014

Kathleen Craig

*Kathleen M. Craig*
*2505 Dillon Drive*
*Garland, TX 75040*

April 22, 2011

Team Go Figure
310 N. Country Club Road
Garland, Texas 75040

Attn:  Scott Eskridge & Ken Kenworthy

Dear Sirs,

As of April 22, 2011, I respectfully resign the full charge bookkeeper position that was offered to me on April 8, 2011, that I have been in training for since April 12, 2011.

I am resigning for the following reason:

- I cannot sign my name to a payroll report of any kind that might not comply with the United States Department of Labor, Wage & Hour Division Laws and Regulations.

Please send my final check for the pay period April 20 – May 3, 2011, that I worked from April 20 – April 22, 2011 to 2505 Dillon Drive, Garland, Texas 75040.

Thank you,

Kathleen Craig
2505 Dillon Drive
Garland, Texas 75040

Plaintiffs' Brief In Opposition Appendix 094

**FAX COVER LETTER**

Date: August 16, 2011

Attn:  Scott Eskridge or Ken Kenworthy

Fax No:  972-276-5001

Pages: 5 (Five) - Including this cover

Re: Documents to be presented at Telephone Hearing

From: Kathleen M. Craig

Comments:

Dear Sirs:

I am submitting the following documents required by TWC to be presented on my behalf for the telephone hearing that is scheduled to take place on August 18, 2011 at 9:00am.

1)  Check Stubs for Jose Elias Berumen & Hue L Uong for week ending 4-19-11.
2)  A Receipt from USPS for copies & mailing documents on 6/14/11, the deadline to submit my appeal.
3)  A print out from USPS.COM confirming the arrival at Austin on June 18, 2011, the first attempted notice left with no response, and finally the delivery to TWC Appeals Tribunal on June 20, 2011.
4)  My Certified Return Receipt to the Appeal Tribunal, stamped & delivered on June 20, 2011

Thank you,

Kathleen M. Craig

Plaintiffs' Brief In Opposition Appendix 095

14637

Jose Elias Berumen                week ending  04/19              4/22/2011         1,280.00

Compass Bank - Che                                                                 1,280.00

PRODUCT DLT103        USE WITH 91003 ENVELOPE

## TEAM GO FIGURE, INC.                                                           14635

| Employee | | | | SSN | Status (Fed/State) | | Allowances/Extra |
| Hue L Uong, 11738 Kleurk, Dallas, TX 75228 | | | | ***-**-1097 | Married/(none) | | Fed-3/0/TX-0/0 |
| | | | | Pay Period: 04/05/2011 - 04/19/2011 | | | Pay Date: 04/22/2011 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate 1 | 80.00 | 8.50 | 680.00 | 4,193.66 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Federal Withholding | 0.00 | |
| Social Security Employee | -28.56 | -175.71 |
| Medicare Employee | -9.86 | -60.66 |
| | -38.42 | -236.37 |

| Net Pay | 641.58 | 3,847.29 |

Team Go Figure, Inc., 301 N. Country Club Rd., Garland, TX  75040, 972-276-6700  Fax 972-276-5001
PRODUCT DLT103        USE WITH 91003 ENVELOPE

```
            The UPS Store - #5257
            5435 N Garland Ave
                Suite 140
            Garland, TX 75040
              (972) 675-0877

            06/14/11  12:55 PM

        We are the one stop for all your
      shipping, postal and business needs.

        We offer all the services you need
          to keep your business going.


 ||||||||||||||||||||||||||||||||||||||||||

 001 500661 (022)          TO $   9.70
     CERTIFIED RET REC
 002 500665 (022)          TO $   2.85
     1ST CL FLAT 04 0Z
 003 000001 (003)          T1 $   1.60
     Copies               QTY 20
     Reg Unit Price    $    0.08

              Subtotal  $  14.15
           Taxable (T1) $   0.14
              Total     $  14.29

           MasterCard $  14.29
 ACCOUNT NUMBER #    ************8154
 Appr Code:   (S)  Sale


 Receipt ID 6272743317533B8BH372 022 Items
 CSH: Mandy        Tran: 9110 Reg: 002

      Thank you for visiting our store.
        Please come back again soon.

      Whatever your business and personal
        needs, we are here to serve you.

 US Postal Rates Are Subject to Surcharge

        ENTER FOR A CHANCE TO
            WIN $1000

        We value your feedback
   To enter please complete the customer
       satisfaction survey located at:


        www.theupsstore.com/survey

      For official rules and terms and
   conditions go to www.theupsstore.com
    and click on the Customer Experience
              Survey link
```



8/3/2011

Plaintiffs' Brief In Opposition Appendix 098

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Appeal Tribunal
Texas Workforce Commission
101 East 15th Street
Austin, TX 78778-0002

A. Signature
X _____  □ Agent
                                □ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:  □ No

JUN 20 2011
TEXAS WORKFORCE COMMISSION

101 E. 15th Street
Austin, Texas 78778

3. Service Type
   □ Certified Mail   □ Express Mail
   □ Registered       □ Return Receipt for Merchandise
   □ Insured Mail     □ C.O.D.

4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number
   (Transfer from service label)      7002 2410 0000 6188 2199

PS Form 3811, August 2001       Domestic Return Receipt       102595-02-M-1035

TRANSMISSION VERIFICATION REPORT

```
                              TIME  : 08/16/2011 02:25
                              NAME  :
                              FAX   :
                              SER.# : BROG8F008472
```

```
DATE,TIME          08/16  02:25
FAX NO./NAME       9722765001
DURATION           00:00:56
PAGE(S)            05
RESULT             OK
MODE               STANDARD
                   ECM
```

 **Texas Workforce Commission**
**Appeal Tribunal** 

**TWC Building**
**Austin, Texas 78778**

**08-26-2011**
Date Mailed

CLAIMANT:

| | |
|---|---|
| KATHLEEN M. CRAIG | |
| 2505 DILLON DR | |
| GARLAND TX 75040-8843 | |

**Appeal No.**    1473879-1-1

**S.S. No.**    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

**I. C. Date**    EXB001 02/20/2011

**Appeal Filed By:**    Claimant

**Date Appeal Filed:**    06/16/2011

**Notice:** The attached decision of the Appeal Tribunal will become final unless, within **FOURTEEN (14) DAYS** after the date mailed, further action is taken in accordance with the instructions contained in this decision. The last day on which you may file an appeal is **09-09-2011**. This date takes into account any official Texas State or Federal holiday which would extend the appeal time limit.

**Appearances:**

| Date/Location | For Claimant | For Employer |
|---|---|---|
| 08/18/2011 Telephone | KATHLEEN CRAIG | NONE |

**EMPLOYER:**    **PI:** ___    **NPI:** X ___    **Account No.** 07-386349-0
**EMPLOYER HAS NO APPEAL RIGHTS**

| |
|---|
| TEAM GO FIGURE INC |
| 301 N COUNTRY CLUB RD |
| GARLAND TX 75040-6601 |

**A-1ATE (907) DATES ARE SHOWN AS MONTH, DAY, & YEAR.**

TEXAS WORKFORCE COMMISSION Appeal Tribunal Decision        Appeal No.:  1473879-1-1
                                                           Page No:    2

**CASE HISTORY:** A determination dated May 31, 2011 disqualified the claimant under Section 207.045 of the Texas Unemployment Compensation Act because the claimant voluntarily resigned without good cause connected with the work. The no payment period began April 17, 2011 and continues until the claimant returns to employment and either works for six weeks or earns wages at least equal to six times the claimant's weekly benefit amount. The claimant appealed.

A determination dated May 31, 2011 ruled that the claimant had been paid unemployment insurance benefits to which the claimant was not entitled, causing an overpayment which the claimant is liable to repay under Section 212.006 of the Texas Unemployment Compensation Act. The claimant appealed.

**ISSUES:** The issues in this case include:

Whether the appellant filed a timely appeal.

Whether the claimant is entitled to Extended Benefits.

Whether the claimant was separated from the last work as a result of a discharge based on work-connected misconduct or a voluntary quit without good work-connected cause.

Whether the claimant received benefits to which the claimant was not entitled.

**FINDINGS OF FACT:** The claimant was mailed two Notices of Claim Determination on May 31, 2011, which ruled on various aspects of the claimant's entitlement to unemployment insurance benefits. Both determinations were mailed to the claimant's correct address of record with the Texas Workforce Commission as follows: Kathleen M. Craig, 2505 Dillon Drive, Garland, TX 75040-8843. The claimant received the determinations and appealed them on June 14, 2011, the last day that she could file a timely appeal.

Prior to filing a continued claim for unemployment insurance benefits with an effective date of April 23, 2011, the claimant last worked from April 12, 2011 through April 22, 2011, as bookkeeper for the named employer. The claimant's ending rate of pay was approximately $19.00 per hour. She normally worked from 8:30 a.m. through 5:30 p.m., Monday through Friday of each week.

From the time that the claimant was employed, the claimant noticed that she was asked to prepare paychecks for employees which did not include the overtime that they were working. Payroll records would be given to the claimant showing that the employees worked 40 hours each week when the claimant was aware that they were working more hours each week. The claimant questioned her supervisor and other employees concerning the situation. The claimant was only told that that was the way the employer did business. The claimant also noticed that the employees were not paid for mileage as they should be. The claimant was not given a full period of time for her lunch break as she was told when she was hired. The claimant was told that she would be given a thirty-minute lunch break; however, the claimant would be asked to run errands for the employer on her lunch break on various occasions. When the claimant could not get a change in the employer's way of doing business, the claimant submitted her letter of resignation. She had discussed her differences with the employer's manner of doing business with the employer representatives on a number of occasions.

TEXAS WORKFORCE COMMISSION  Appeal Tribunal Decision          Appeal No.:  1473879-1-1
                                                              Page No:      3

The claimant was paid unemployment insurance benefits in the amount of $1,208.00 subsequent to the beginning date of the disqualification under Section 207.045 of the Act. Because of that disqualification, it was determined that the claimant was not entitled to the payment of these benefits.

**CONCLUSIONS:** Section 4001(d)(2) of the Supplemental Appropriations Act – 2008, Public Law 110-252, provides in relevant part that the terms and conditions of the State law which apply to claims for regular compensation and to the payment thereof shall apply to claims for emergency unemployment compensation and the payment thereof.

The Emergency Unemployment Compensation Act of 1991 (Public Law 102164), as amended, established a program of payment of emergency unemployment compensation during periods of high unemployment to eligible individuals as prescribed in the Act. Generally, this program is subject to provisions of the Federal State Unemployment Compensation Act of 1970 and Section 209 of the Texas Unemployment Compensation Act.

Section 212.053 of the Act provides that an examiner's determination is final for all purposes unless the claimant or the person, branch, or division for which the claimant last worked files an appeal from the determination not later than the 14th calendar day after the date such determination was mailed to the claimant's, person's, or branch's last known address as shown by Commission records.

As the Notices of Claim Determination mailed to the claimant on May 31, 2011 were received by the claimant and appealed within fourteen calendar days from the date the determinations were mailed to her, the claimant's appeal dated June 14, 2011 must be considered timely.

Section 207.045 of the Act provides that an individual who left the individual's last work voluntarily without good cause connected with the work is disqualified until the individual has returned to employment and worked for six weeks or earned wages equal to six times the individual's benefit amount, unless the individual left work to move with a spouse from the area where the individual worked. In that case, the claimant shall be disqualified for not less than six nor more than twenty-five benefit periods following the filing of a valid claim, as determined by the Commission according to the circumstances in each case. No individual who is available to work may be disqualified because the individual left work because of a medically verified illness of the claimant or claimant's minor child, injury, disability, pregnancy, an involuntary separation as described under Section 207.046 of the Act if the individual is available for work, or a move from the area of the individual's employment that was made with the individual's spouse who is a member of the armed forces of the United States; and resulted from the spouse's permanent change of station of longer than 120 days or a tour of duty of longer than one year. A medically verified illness of a minor child prevents disqualification under this section only if reasonable alternative care was not available to the child and the employer refused to allow the individual a reasonable amount of time off during the illness. Military personnel who do not reenlist may not be considered to have left work voluntarily without good cause connected with the work. An individual who is partially unemployed and who resigns that employment to accept other employment that the individual reasonably believes will increase the individual's weekly wage is not disqualified for benefits under this section.

Good cause connected with the work for leaving, as that term is used in the law of unemployment insurance, means such cause, related to the work, as would induce a person who is genuinely interested in retaining work to nevertheless leave the job.

Plaintiffs' Brief In Opposition Appendix 103

TEXAS WORKFORCE COMMISSION Appeal Tribunal Decision        Appeal No.:   1473879-1-1
                                                           Page No:        4

The Appeal Tribunal concludes that the claimant quit her employment because she realized that the employer was not paying employees for overtime that was required. The Appeal Tribunal concludes that the claimant made every effort to resolve the situation by bringing her differences with the employer to the employer's attention. The claimant did everything she could to protect her job. As a result, the Appeal Tribunal concludes that the claimant quit for good cause connected with her work. Since the claimant quit for good cause connected with the work, a disqualification is not in order under Section 207.045 of the Act. The determination dated May 31, 2011, disqualifying the claimant under Section 207.045 of the Act beginning April 17, 2011, continuing until the claimant returns to work for six weeks or returns to work and earns six times her weekly benefit amount, must be reversed.

Section 212.006 of the Act provides that benefits paid to a claimant that are not in accordance with the final determination of an examiner or decision of an Appeal Tribunal, the Commission, or a reviewing court shall be refunded by the claimant to the Commission, or in the discretion of the Commission, deducted from future benefits payable to the claimant under this Act.

As the prior disqualification under Section 207.045 of the Act beginning April 17, 2011 is being reversed, the claimant was entitled to the payment of benefits she received in the amount of $1,208.00 in benefits. Accordingly, the determination dated May 31, 2011, ruling that the claimant had been overpaid benefits in the amount of $1,208.00 to which she was not entitled under Section 212.006 of the Act, must be reversed.

**DECISION:** The claimant's appeal filed June 14, 2011, is timely to the two determinations dated May 31, 2011.

The determination dated May 31, 2011, disqualifying the claimant beginning April 17, 2011, under Section 207.045 of the Act is reversed.

The determination dated May 31, 2011, establishing an overpayment under Section 212.006 of the Act, is reversed.

D. DOWD
Hearing Officer

188

Plaintiffs' Brief In Opposition Appendix 104

1 – A

Texas Workforce Commission
## Notice of Telephone Hearing

Date Mailed: AUGUST 1, 2011

---

| Claimant:          SSN: 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 | Employer: NPI   Account: 07-386349-0 |
|---|---|
| KATHLEEN M CRAIG | TEAM GO FIGURE INC |
| 2505 DILLON DR | 301 N COUNTRY CLUB RD |
| GARLAND TX 75040-8843 | GARLAND TX 75040-6601 |

Hearing Date:
**THURSDAY, AUGUST 18, 2011**

Hearing Start Time:
**9:00 AM**
Central Daylight Time

☎ Call **1-800-252-3749**
between 8:30 AM and 9:00 AM for your hearing.

Hearing Officer:
**D. DOWD**

---

**WHAT YOU MUST DO:**
- Send documents before the hearing. You may have documents that are important to your case. Review the contents of this packet carefully. If any documents are missing, immediately fax or mail copies of those documents to the hearing officer and the other party.
- Call in for your hearing. This hearing will be held by telephone conference call. On the hearing date, call (800) 252-3749 within the 30 minutes before the hearing start time. Give the operator the phone number where you can be reached for the hearing. If you call from a pay phone, be sure it can receive incoming calls.

The hearing may be your only chance to tell what happened, present your documents, and ask questions of the witnesses. If you do not call (800) 252-3749 within the 30 minutes before the hearing start time, you may not be allowed to participate in the hearing. You will not have another opportunity to offer testimony unless you can establish good cause for why you did not call in as instructed. Employers who are not parties of interest (indicated above as NPI) do not have the right to request a new hearing, nor to appeal.

Are you ready for your hearing? Go to www.texasworkforce.org and select "Prepare for an appeal" to listen to a sample hearing and access other information and tools to help you prepare.

---

| | |
|---|---|
| Appeal No: 1473879-1  Hearing: 1 | D. DOWD, Hearing Officer |
| Appeal filed by:  Claimant | Texas Workforce Commission |
| Appeal Date: 06/16/2011 | PO BOX 6215 |
| Initial Claim Date: EXB001 | KATY TX 77491-6215 |
| Determination Date(s): 05/31/2011 , | Hearing Officer (281) 347-1050 |
| 05/31/2011 | Fax No. (281) 347-1051 |

Equal Opportunity Program

Plaintiffs' Brief In Opposition Appendix 105

**2 – A**

**Additional copies of this hearing notice packet were mailed to:**

Equal Opportunity Program

**2 – A**

**Additional copies of this hearing notice packet were mailed to:**

Equal Opportunity Program

3 – A

# Issues in Your Hearing
### (Additional issues, if any, are continued on Page 4.)

- NOTE: THE ISSUE OF TIMELINESS OF APPEAL/PETITION TO REOPEN, OR TIMELINESS OF PROTEST TO THE INITIAL CLAIM, WILL BE AN ISSUE ADDRESSED AT THIS HEARING. THE HEARING OFFICER HAS THE DISCRETIONARY AUTHORITY TO TERMINATE THE HEARING AFTER THE CONCLUSION OF TESTIMONY ON THE TIMELINESS ISSUE IF THE HEARING OFFICER CONCLUDES THAT THE APPEAL, PETITION OR PROTEST IS CLEARLY NOT TIMELY. IF THIS IS DONE, NO TESTIMONY ON THE UNDERLYING ISSUES WILL BE TAKEN. ON THE OTHER HAND, IF THE HEARING OFFICER WISHES TO CONSIDER THE TIMELINESS ISSUE FURTHER OR IF, IN THE HEARING OFFICER'S JUDGEMENT, THE TIMELINESS OF THE APPEAL/PROTEST/PETITION HAS BEEN ESTABLISHED, FURTHER TESTIMONY ON THE UNDERLYING ISSUES WILL BE TAKEN.
- Timeliness of appeal. If the appellant is intending to allege that its appeal was delayed due to either late receipt or non-receipt of its copy of the determination appealed from, the appellant must present credible and persuasive evidence to establish such fact. If the appellant is intending to allege that its appeal was filed or mailed timely although not received by the TWC, credible and persuasive evidence of such fact must be corroborated by testimony of a disinterested party and/or physical evidence specifically linked to the appeal in question. If the appellant has a fax confirmation printout verifying the faxing of the appeal to the TWC, the appellant is instructed to forward a copy to the TWC hearing officer and the opposing party prior to the hearing.
- Whether the claimant was separated from the last work as a result of a discharge based on work-connected misconduct or a voluntary quit without work-connected good cause. If claimant's discharge occurred while absent from work due to illness, or if claimant resigned from work upon the advice of a physician, claimant should immediately mail or fax to the hearing officer and opposing party a physician's statement to medically verify claimant's physical condition. Testimony alone as to a physical condition may be insufficient
- Whether claimant received benefits to which claimant was not entitled.

Equal Opportunity Program

Plaintiffs' Brief In Opposition Appendix 108

4 – A

Equal Opportunity Program

**4 – A**

Equal Opportunity Program

5 – A

# Your Appeal Tribunal Hearing - Information and Instructions

### Hearing packet contents
TWC mails a Notice of Hearing and copies of the information we have to all hearing participants. This packet should contain:

- The date that TWC notified the claimant's last employer that the claimant applied for unemployment benefits. (This information is included only if relevant to the claim.)
- Any protests to the claim.
- Any information that TWC received in response to the claimant's claim.
- Any fact-finding statements that TWC took while investigating issue(s) on appeal.
- The appeal itself (either a letter or appeal form).

### Purpose of the hearing
The hearing is a fact-finding process that uses a question-and-answer method. Each side may present testimony, witnesses, and documents relevant to its case. The hearing officer will conduct a fair hearing, determine what is relevant, and make sure the record is complete. After the hearing, the officer will prepare a written decision based on the evidence. That decision will be mailed to you.

### What happens at a hearing
Your Notice of Telephone Hearing lists what issues the hearing will cover. The hearing is recorded and all proceedings are taken under oath. After explaining the law and procedures, the hearing officer will ask questions of each side and its witnesses in turn.
After all testimony is taken from one side, the same procedure is repeated for the other side. Wait your turn, as you may not interrupt while another person is testifying. The hearing officer will tell you when it's your turn to ask questions. Ask relevant questions that have not already been asked and answered. If you don't have any questions, let the hearing officer know.

### Evidence
Written evidence or documents such as letters, timecards, or doctors' statements may help your case. Photos, maps, or charts may also help explain what happened. Be ready to tell who prepared the evidence and how it helps your case. Send legible

copies of the documents to the hearing officer and the other side *before* the hearing. Do this even if you believe the Texas Workforce Commission or the other side already has them. If you don't, the documents may not be considered as evidence. Include only documents that relate directly to issues listed on the hearing notice.

### Special equipment
If you need access to a telephone, fax machine, or speakerphone to present witness testimony or documents, TWC can set up the equipment at a Texas Workforce Center in your area. We will try to provide as much privacy for your hearing as possible. To request the equipment, please contact your local Texas Workforce Center as soon as you know the time and date of your hearing. For a directory of TWC Workforce Centers, please visit www.texasworkforce.org.

Relay Texas customers may communicate with TWC at 1-800-735-2989 (TDD) or 1-800-735-2988 (Voice).

### Witnesses
You may present witnesses to support your case. Choose witnesses who actually saw or heard what happened. Notify them of the date and time of the hearing and arrange for them to be available at that time. When the hearing begins, give the hearing officer the telephone number where each witness can be reached for the hearing.

### Sworn statements
A sworn written statement—called an affidavit—is sometimes used when a witness is unavailable to testify at the scheduled hearing time. An affidavit cannot be given as much weight as live witness testimony because the person who made the sworn statement is unavailable to answer questions. If an affidavit is used, it must be specific and must be sworn to before a notary public.

### Do I need a lawyer?
The unemployment appeal process is designed for claimants and employers who don't have attorneys. The hearing officer will help you develop the facts, present your documents, and question the other

Equal Opportunity Program

Plaintiffs' Brief In Opposition Appendix 111

**6 – A**

side. However, an attorney or another person may represent you at your own expense.

**Schedule conflicts**
Hearing postponements are not ordinarily granted. However, if you have a justifiable conflict, notify the hearing officer as soon as possible *before* your hearing. If you don't, a later request to reopen your hearing may be denied.

**Failure to appear and requests to reopen**
If one side fails to participate in the hearing, the hearing officer may take testimony from those present and issue a decision based on that testimony. The side that failed to participate may request a reopening of the case, but must first establish good cause for the original nonappearance. If you want a hearing reopened, request it in writing no later than 14 days of the decision date.

**Faxing your appeal or petition to reopen**
If you fax your appeal or petition to reopen, TWC must receive it no later than 14 days from the date the decision was mailed.   Keep your fax confirmation as proof of transmission.   TWC will use the date we receive the fax to determine whether your appeal is timely.

**Interpreters**
The Appeal Tribunal will provide qualified interpreters.  If you or any of your witnesses need an interpreter and you have not previously requested one, contact the hearing officer immediately.

**Withdrawing an appeal**
Only the person who filed the appeal may withdraw it.  If you wish to withdraw your appeal, please

notify your hearing officer in writing or by telephone.  The name, address, and phone number of the hearing officer are listed on the Notice of Telephone Hearing.

**Time zones**
If you call from a time zone other than Central Standard Time, be sure to properly calculate the time difference.

**Subpoenas**
A subpoena is a legal document issued by the hearing officer that orders an essential witness to testify or produce certain documents for the hearing.   Before requesting a subpoena, ask the witness to voluntarily participate or furnish documents.  If the witness refuses, call your hearing officer immediately.  The subpoena process takes several days, so please allow plenty of time.  The hearing officer determines if it is necessary to issue a subpoena.

**Overpayment of benefits**
An adverse decision may result in an overpayment of benefits.  In the event you are overpaid benefits, you will be required to repay those benefits to the Texas Workforce Commission.

**Decision**
The Appeal Tribunal's written decision will resolve each issue, but it won't review in detail all testimony or documents given at the hearing. If you disagree with the decision, you may file a further appeal.  The decision will explain how to file an appeal

Equal Opportunity Program

**6 – A**

side. However, an attorney or another person may represent you at your own expense.

**Schedule conflicts**
Hearing postponements are not ordinarily granted. However, if you have a justifiable conflict, notify the hearing officer as soon as possible *before* your hearing. If you don't, a later request to reopen your hearing may be denied.

**Failure to appear and requests to reopen**
If one side fails to participate in the hearing, the hearing officer may take testimony from those present and issue a decision based on that testimony. The side that failed to participate may request a reopening of the case, but must first establish good cause for the original nonappearance. If you want a hearing reopened, request it in writing no later than 14 days of the decision date.

**Faxing your appeal or petition to reopen**
If you fax your appeal or petition to reopen, TWC must receive it no later than 14 days from the date the decision was mailed. Keep your fax confirmation as proof of transmission. TWC will use the date we receive the fax to determine whether your appeal is timely.

**Interpreters**
The Appeal Tribunal will provide qualified interpreters. If you or any of your witnesses need an interpreter and you have not previously requested one, contact the hearing officer immediately.

**Withdrawing an appeal**
Only the person who filed the appeal may withdraw it. If you wish to withdraw your appeal, please

notify your hearing officer in writing or by telephone. The name, address, and phone number of the hearing officer are listed on the Notice of Telephone Hearing.

**Time zones**
If you call from a time zone other than Central Standard Time, be sure to properly calculate the time difference.

**Subpoenas**
A subpoena is a legal document issued by the hearing officer that orders an essential witness to testify or produce certain documents for the hearing. Before requesting a subpoena, ask the witness to voluntarily participate or furnish documents. If the witness refuses, call your hearing officer immediately. The subpoena process takes several days, so please allow plenty of time. The hearing officer determines if it is necessary to issue a subpoena.

**Overpayment of benefits**
An adverse decision may result in an overpayment of benefits. In the event you are overpaid benefits, you will be required to repay those benefits to the Texas Workforce Commission.

**Decision**
The Appeal Tribunal's written decision will resolve each issue, but it won't review in detail all testimony or documents given at the hearing. If you disagree with the decision, you may file a further appeal. The decision will explain how to file an appeal

**Equal Opportunity Program**

Plaintiffs' Brief In Opposition Appendix 113

7 – A

## Selected Sections of the Texas Unemployment Compensation Act

One or more of the following sections of the Texas Unemployment Compensation Act may be involved in your case, depending on the issues. Other sections of the Act not listed here may also be involved. If so, the hearing officer will explain them before your hearing.

**Discharge for Misconduct.** Section 207.044 of the Act states an individual is disqualified for benefits if the individual was discharged for misconduct connected with the individual's last work. Disqualification under this section continues until the claimant has returned to employment and worked for six weeks or earned wages equal to six times the individual's benefit amount.

**Definition of Misconduct.** Section 201.012 of the Act defines "misconduct" as the mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and safety of employees. The term "misconduct" does not include an act in response to an unconscionable act of an employer or superior.

**Voluntarily Leaving Work.** Section 207.045 of the Act states an individual who left the individual's last work voluntarily without good cause connected with the work is disqualified until the individual has returned to employment and worked for six weeks or earned wages equal to six times the individual's benefit amount, unless the individual left work to *move with a spouse* from the area where the individual worked. In that case, the claimant shall be disqualified for not less than six nor more than twenty-five benefit periods following the filing of a valid claim, as determined by the Commission according to the circumstances in each case.

No individual may be disqualified because the individual left work because of a *medically verified illness* of the claimant or claimant's minor child, injury, disability, or pregnancy if the individual is available for work. A medically verified illness of a minor child prevents disqualification under this section only if reasonable alternative care was not available to the child and the employer refused to allow the individual a reasonable amount of time off during the illness.

*Military personnel* who do not reenlist have not left work voluntarily without good cause connected with the work.

An individual who is *partially unemployed* and who resigns that employment to accept other employment that the individual believes will increase the individual's weekly wage is not disqualified for benefits under this section.

A *temporary employee* of a temporary help firm is considered to have left the employee's last work voluntarily without good cause connected with the work if the temporary employee does not contact the temporary help firm for reassignment on completion of an assignment. A temporary employee is not considered to have left work voluntarily without good cause connected with the work under this subsection unless the temporary employee has been advised: (1) that the temporary employee is obligated to contact the temporary help firm on completion of assignments; and (2) that unemployment benefits may be denied if the temporary employee fails to do so.

**Benefit Eligibility Conditions.** Section 207.021 of the Act states an unemployed individual is eligible to receive benefits for a benefit period if the individual:

(1) has registered for work at an employment office and has continued to report to the employment office as required by rules adopted by the Commission;

(2) has made claim for benefits;

(3) is able to work;

(4) is available for work;

(5) for the individual's base period, has benefit wage credits: (A) in at least two calendar quarters; and (B) in an amount not less than 37 times the individual's benefit amount;

(6) after the beginning date of the individual's most recent prior benefit year, if applicable, earned wages in an amount equal to not less than six times the individual's benefit amount;

Equal Opportunity Program

Plaintiffs' Brief In Opposition Appendix 114

8 – A

(7) has been totally or partially unemployed for a waiting period of at least seven consecutive days; and

(8) participates in reemployment services such as a job search assistance service, if the individual has been determined, according to a profiling system established by the Commission, to be likely to exhaust eligibility for regular benefits and to need those services to obtain new employment, unless: (A) the individual has completed participation in such service; or (B) there is reasonable cause, as determined by the Commission, for the individual's failure to participate in those services.

**Filing; Information Notices.** Section 208.001 of the Act states, in part, that claims for benefits shall be made in accordance with rules adopted by the Commission. Each employer shall post and maintain, in places accessible to employees, printed notices giving general information about filing a claim for unemployment benefits.

**Exclusions from Chargebacks.** Section 204.022 of the Act states in substance, that benefits paid to a claimant shall not be charged to an employer's account if the claimant's last separation from the employer's employment prior to the beginning date of the claimant's benefit year:

1) was required by a federal statute;
2) was required by a state statute or municipal ordinance;
3) would have disqualified the employee under Section 207.044, 207.045, or 207.053 if the employment had been the employee's last work;
4) imposes a disqualification under Section 207.044, 207.045, or 207.053;
5) was caused by a medically verifiable illness of the employee or the employee's minor child;
6) was based on a natural disaster that results in a disaster declaration by the President of the United States;
7) was caused by a natural disaster, fire, flood, or explosion that causes an employee to be separated from his or her employer and thereby incapable of performing work;
8) was based on a disaster that results in a disaster declaration by the Governor;
9) resulted in the employee's resigning from partial employment to accept other employment that the employee reasonably believed would increase the employee's weekly wage;

10) was caused by the employer being called to active military service on or after January 1, 2003;
11) resulted from the employee leaving the workplace to protect the employee from family violence or stalking as evidenced by: (A) a protective order; (B) police records; and (C) medical documents;
12) resulted from a move from the employment area that: (A) was made with the employee's spouse who is a member of the U.S. military; (B) resulted from the spouse's permanent change of station longer than 120 days or a tour of duty longer than one year; or
13) was caused by the employee being unable to perform work as a result of a disability for which the employee is receiving disability insurance benefits under 42 U.S.C. Section 423.

**Failure to Apply for, Accept, or Return to Work.** Section 207.047 of the Act states an individual is disqualified for benefits if during the individual's current benefit year the individual failed, without good cause, to apply for available, suitable work when directed to do so by the Commission, or to accept suitable work offered to the individual, or to return to the individual's customary self-employment (if any) when directed to do so by the Commission. Disqualification continues until the individual has returned to employment and worked for six weeks, or earned wages equal to six times the individual's benefit amount.

**Recovery of Benefits Paid.** Section 212.006 of the Act states that benefits paid to a claimant that are not in accordance with the final determination of an examiner or decision of an Appeal Tribunal, the Commission, or a reviewing court shall be refunded by the claimant to the Commission, or in the discretion of the Commission, deducted from future benefits payable to the claimant under this Act.

**Determination Final; Appeal.** Section 212.053 of the Act states, in part, an examiner's determination is final for all purposes unless the claimant or the person or branch for which the claimant last worked, and to whom a copy of the determination is mailed files an appeal from the determination not later than the 14th calendar day after that date on which the copy of the determination is mailed to the last known address of the claimant, person, or branch as shown by Commission records.

Equal Opportunity Program

**8 – A**

(7) has been totally or partially unemployed for a waiting period of at least seven consecutive days; and

(8) participates in reemployment services such as a job search assistance service, if the individual has been determined, according to a profiling system established by the Commission, to be likely to exhaust eligibility for regular benefits and to need those services to obtain new employment, unless: (A) the individual has completed participation in such service; or (B) there is reasonable cause, as determined by the Commission, for the individual's failure to participate in those services.

**Filing; Information Notices.**   Section 208.001 of the Act states, in part, that claims for benefits shall be made in accordance with rules adopted by the Commission.   Each employer shall post and maintain, in places accessible to employees, printed notices giving general information about filing a claim for unemployment benefits.

**Exclusions from Chargebacks.**   Section 204.022 of the Act states in substance, that benefits paid to a claimant shall not be charged to an employer's account if the claimant's last separation from the employer's employment prior to the beginning date of the claimant's benefit year:

1) was required by a federal statute;
2) was required by a state statute or municipal ordinance;
3) would have disqualified the employee under Section 207.044, 207.045, or 207.053 if the employment had been the employee's last work;
4) imposes a disqualification under Section 207.044, 207.045, or 207.053;
5) was caused by a medically verifiable illness of the employee or the employee's minor child;
6) was based on a natural disaster that results in a disaster declaration by the President of the United States;
7) was caused by a natural disaster, fire, flood, or explosion that causes an employee to be separated from his or her employer and thereby incapable of performing work;
8) was based on a disaster that results in a disaster declaration by the Governor;
9) resulted in the employee's resigning from partial employment to accept other employment that the employee reasonably believed would increase the employee's weekly wage;

10) was caused by the employer being called to active military service on or after January 1, 2003;
11) resulted from the employee leaving the workplace to protect the employee from family violence or stalking as evidenced by: (A) a protective order; (B) police records; and (C) medical documents;
12) resulted from a move from the employment area that: (A) was made with the employee's spouse who is a member of the U.S. military; (B) resulted from the spouse's permanent change of station longer than 120 days or a tour of duty longer than one year; or
13) was caused by the employee being unable to perform work as a result of a disability for which the employee is receiving disability insurance benefits under 42 U.S.C. Section 423.

**Failure to Apply for, Accept, or Return to Work.**   Section 207.047 of the Act states an individual is disqualified for benefits if during the individual's current benefit year the individual failed, without good cause, to apply for available, suitable work when directed to do so by the Commission, or to accept suitable work offered to the individual, or to return to the individual's customary self-employment (if any) when directed to do so by the Commission.   Disqualification continues until the individual has returned to employment and worked for six weeks, or earned wages equal to six times the individual's benefit amount.

**Recovery of Benefits Paid.**   Section 212.006 of the Act states that benefits paid to a claimant that are not in accordance with the final determination of an examiner or decision of an Appeal Tribunal, the Commission, or a reviewing court shall be refunded by the claimant to the Commission, or in the discretion of the Commission, deducted from future benefits payable to the claimant under this Act.

**Determination Final; Appeal.**   Section 212.053 of the Act states, in part, an examiner's determination is final for all purposes unless the claimant or the person or branch for which the claimant last worked, and to whom a copy of the determination is mailed files an appeal from the determination not later than the 14th calendar day after that date on which the copy of the determination is mailed to the last known address of the claimant, person, or branch as shown by Commission records.

Equal Opportunity Program

9 – A

## Benefits – Non-Monetary Determinations
### Fact Finding

SSN: 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     KATHLEEN M CRAIG          Case Nbr: 8
Issue Nbr: 1     Type: QUIT     Reason: QUIT-INTAKE STATEMENT
Stmt Nbr: 1     of: 3     Stmt of: Claimant          Taken: 05-03-2011 02:08:54 PM

Name: KATHLEEN M CRAIG    Title:
Phone Stmt: Y    Claim ID: EXB001         Claim Dt: 04-23-2011     Rebuttal: N     Footnote: N

Why did you quit?
I QUIT BECAUSE THEY WANTED ME ETO DO ILLEGAL THINGS, SUCH
  ASMARKING OFF THE HRS OF PEOPLE THAT WORKED OVERTIME, THEIR WAS AN
ILLEGAL
  IMMIGRANT AND WE HAD TO WRITE HIS CHECKS IN SOMEONE ELSES NAME.
Who did you tell you were quitting (Name & Title)?
CHERI WHITESIDE/BOOKKEEPER
How much notice did you give?
  NONE
Were there any options available to you to correct the situation before quitting?
N
Are you able to work and available for work at this time?
  Y

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ END ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*** No footnote entered ***

## Benefits – Non-Monetary Determinations
### Fact Finding

SSN: 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     KATHLEEN M CRAIG          Case Nbr: 8
Issue Nbr: 1     Type: QUIT     Reason: DISSATISFIED WITH WORKING CONDITIONS
Stmt Nbr: 2     of: 3     Stmt of: Employer          Taken: 05-11-2011 08:13:13 AM

Name: VM          Title: EMPLOYER
Phone Stmt: Y    Claim ID: EXB001         Claim Dt: 04-23-2011     Rebuttal: N     Footnote: Y

*** No Question Set Entered ***
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ END ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
DATE AND TIME: 051111 8:13AM                    LEFT MESSAGE FOR: EMPLOYER
LEFT MESSAGE ON OR WITH: VM                         ADVISED CALLING FOR
INFORMATION ON UNEMPLOYMENT CLAIM.        DEADLINE TO RESPOND: 051811
GAVE CONSEQUENCES FOR FAILURE TO RESPOND BY DEADLINE.          COMMENTS:
BTQ CALL

**10 – A**

Benefits – Non-Monetary Determinations
Fact Finding

SSN: 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      KATHLEEN M CRAIG         Case Nbr: 8
Issue Nbr: 1      Type: QUIT      Reason: DISSATISFIED WITH WORKING CONDITIONS
Stmt Nbr: 3      of: 3      Stmt of: Claimant              Taken: 05-24-2011 04:05:55 PM

Name: KATHLEEN M CRAIG   Title:
Phone Stmt: Y   Claim ID: EXB001        Claim Dt: 04-23-2011      Rebuttal: N      Footnote: Y

*** No Question Set Entered ***
~~~~~~~~~~~~~~~~~~~~~~~~~~~ END ~~~~~~~~~~~~~~~~~~~~~~~~~~~~
DATE AND TIME: 052411 4:06PM                LEFT MESSAGE FOR: KATHLEEN
CRAIG                      LEFT MESSAGE ON OR WITH: VM
ADVISED CALLING FOR INFORMATION ON UNEMPLOYMENT CLAIM.        DEADLINE
TO RESPOND: 052611 4:30PM              GAVE CONSEQUENCES FOR FAILURE TO
RESPOND BY DEADLINE.            COMMENTS:

**10 – A**

Benefits -- Non-Monetary Determinations
Fact Finding

SSN: 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      KATHLEEN M CRAIG       Case Nbr: 8
Issue Nbr: 1    Type: QUIT    Reason: DISSATISFIED WITH WORKING CONDITIONS
Stmt Nbr: 3,   of: 3   Stmt of: Claimant          Taken: 05-24-2011 04:05:55 PM

Name: KATHLEEN M CRAIG   Title:
Phone Stmt: Y   Claim ID: EXB001      Claim Dt: 04-23-2011   Rebuttal: N    Footnote: Y

*** No Question Set Entered ***
————————————————— END ——————————————
DATE AND TIME: 052411 4:06PM                    LEFT MESSAGE FOR: KATHLEEN
CRAIG                    LEFT MESSAGE ON OR WITH: VM
ADVISED CALLING FOR INFORMATION ON UNEMPLOYMENT CLAIM.        DEADLINE
TO RESPOND: 052611 4:30PM                GAVE CONSEQUENCES FOR FAILURE TO
RESPOND BY DEADLINE.            COMMENTS:

Plaintiffs' Brief In Opposition Appendix 119

**11 – A**

## Employer Response to Notice of Application for UI Benefits

SSN: 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      **KATHLEEN M CRAIG**
Claim Date: 02-20-2011    Claim Type: IC   PGM: TUC      Claim ID: EXB001

Employer:   **11-509967-1   CD HENDERSON CONSTRUCTION GROUP LLC**
Correct Last Employer:   **Y**
Monetarily Eligible:   **Y**
EDI:

Notice Sent:   **09-14-2009**
Due:   **09-28-2009**
Claimant Separation Reason:   **PERMANENT LAYOFF**

Responded:   **09-24-2009**
Response Type:                Confirmation #:
Employer Separation Reason:   **PERMANENT LAYOFF**
TWC Action:   **ROUTE ONLY**
Current Investigator:

### Employment Information

Date Range Worked:                          Thru
Gross Wages Earned:

---

Wages In Lieu Of Notice:                 Paid Thru:
On Temporary Layoff:                 Recall Date:
Paid Vacation Days:                 Paid Thru:

---

Responder's Name:                 TWC Account:
Responder's Title:                 Phone:
Contact Person:                 Phone:

----------------------- Additional Information Regarding Separation -----------------------------

Plaintiffs' Brief In Opposition Appendix 120

**12 – A**

## Employer Response to Notice of Application for UI Benefits

SSN: 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    **KATHLEEN M CRAIG**
Claim Date: 04-23-2011  Claim Type: **CC** PGM: TUC    Claim ID: **EXB001**

Employer: **07-386349-0  TEAM GO FIGURE INC**
Correct Last Employer: **Y**
Monetarily Eligible: **Y**
EDI:

Notice Sent: **05-04-2011**
Due: **05-18-2011**
Claimant Separation Reason: **QUIT**

Responded:
Response Type:              Confirmation #:
Employer Separation Reason: **No Desc Found**
TWC Action: **No Desc Found**
Current Investigator:

### Employment Information

Date Range Worked:                  Thru
Gross Wages Earned:

---

Wages In Lieu Of Notice:         Paid Thru:
On Temporary Layoff:          Recall Date:
Paid Vacation Days:           Paid Thru:

Responder's Name:          TWC Account:
Responder's Title:             Phone:
Contact Person:             Phone:

-------------------- Additional Information Regarding Separation --------------------

Plaintiffs' Brief In Opposition Appendix 121

12 – A

## Employer Response to Notice of Application for UI Benefits

SSN: 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        **KATHLEEN M CRAIG**
Claim Date: 04-23-2011   Claim Type: CC  PGM: TUC        Claim ID: EXB001

Employer:   07-386349-0   **TEAM GO FIGURE INC**
Correct Last Employer:   **Y**
Monetarily Eligible:   **Y**
EDI:

Notice Sent:   05-04-2011
Due:   05-18-2011
Claimant Separation Reason:   QUIT

Responded:
Response Type:                        Confirmation #:
Employer Separation Reason:   No Desc Found
TWC Action:   No Desc Found
Current Investigator:

### Employment Information

Date Range Worked:                        Thru
Gross Wages Earned:

------------------------------------------------------------------------

Wages  In Lieu Of  Notice:                        Paid Thru:
On Temporary Layoff:                        Recall Date:
Paid Vacation Days:                        Paid Thru:

Responder's Name:                        TWC Account:
Responder's Title:                        Phone:
Contact Person:                        Phone:

------------------ Additional Information Regarding Separation ------------------------

Plaintiffs' Brief In Opposition Appendix 122

13 – A

## Issue Decision Log

SSN: 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        KATHLEEN M CRAIG
Case Nbr: 8
Issue Nbr: 1      of: 1      Type: QUIT      Reason: DISSATISFIED WITH WORKING
CONDITIONS

Program: TUC    Claim ID: EXB001          Claim Type: CC  Claim Dt: 04-23-2011

LEU: 07-386349-0    TEAM GO FIGURE INC
Late LEU Response:      Interested Party: N              Charged: No

Other Employer:

| | | |
|---|---|---|
| Decision Date: | 05-27-2011 | Weeks Disqualified: |
| Mailed Date: | 05-31-2011 | Deductible Amount: |
| Begin Date: | 04-17-2011 | State: |
| End Date: | | Incident Date: |
| Claimant Failed to Respond: | N | |

Qualified:   N

Rationale: NPD-GOOD CAUSE WAS UNABLE TO BE ESTABLISHED W/INFO   PROVIDED

Conclusion: QUIT-JOB ABANDONMENT-DISQUALIFIED

**14 – A**

## Issue Decision Log

SSN: 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      **KATHLEEN M CRAIG**
Case Nbr: 9
Issue Nbr: 1      of: 1      Type: OVERPAYMENT Reason: **OVERPAYMENT**

Program: TUC   Claim ID: **EXB001**      Claim Type: **IC**   Claim Dt: **02-20-2011**

LEU: 11-509967-1   **CD HENDERSON CONSTRUCTION GROUP LLC**
Late LEU Response:      Interested Party: N      Charged: No

Other Employer:

| | | |
|---|---|---|
| Decision Date: | **05-30-2011** | Weeks Disqualified: |
| Mailed Date: | **05-31-2011** | Deductible Amount: |
| Begin Date: | **02-20-2011** | State: |
| End Date: | | Incident Date: |
| Claimant Failed to Respond: | **N** | |

Eligible:   **Y**

Rationale: **NO SOURCE CODE**

Conclusion: **OVERPAYMENT**

Plaintiffs' Brief In Opposition Appendix 124

**14 – A**

Issue Decision Log

SSN: 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        KATHLEEN M CRAIG
Case Nbr: 9
Issue Nbr: 1      of: 1      Type: OVERPAYMENT Reason: OVERPAYMENT

Program: TUC    Claim ID: EXB001        Claim Type: IC   Claim Dt: 02-20-2011

LEU: 11-509967-1   CD HENDERSON CONSTRUCTION GROUP LLC
Late LEU Response:        Interested Party: N              Charged: No

Other Employer:

|                          |            |                      |
|--------------------------|------------|----------------------|
| Decision Date:           | 05-30-2011 | Weeks Disqualified:  |
| Mailed Date:             | 05-31-2011 | Deductible Amount:   |
| Begin Date:              | 02-20-2011 | State:               |
| End Date:                |            | Incident Date:       |
| Claimant Failed to Respond: | N       |                      |

Eligible:  Y

Rationale: NO SOURCE CODE

Conclusion: OVERPAYMENT

Plaintiffs' Brief In Opposition Appendix 125

15 – A                    | Total Pages (incl. cover)   Request Date: 07/14/2011

SSN:  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

Case Number: 1473879

To:  TWC Appeals
Fax:  5124751135
From:  NORTH TEXAS TELE-CENTER 6475
Claimant:  CRAIG, KATHLEEN M.
Claim ID:  EXB001  (I C 9-6-9)
Case-Issue:
8/1, QT



☑ No Records Found  NPD

☐ Unable to Locate Paper Records

16 – A

June 13, 2011

147387 9    Ex13

Appeal Tribunal
Texas Workforce Commission
101 East 15th Street
Austin, Texas 78778-0002

Re:   Claim ID EXB001
      Claim Date: 4-23-11
      Claimant: Kathleen M. Craig
      Claimants SS#: 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
      Date TWC Mailed Decision: May 31, 2011

Dear Sir/Madam

I am writing to APPEAL the decision on payment of unemployment benefits mailed to me on May 31, 2011. I disagree with the decision that was made against me for not qualifying for unemployment. I believe that the information that I am submitting will substantiate my reason and will become a qualifying reason of work separation.

Team Go Figure has stated that I abandoned my last work by walking off the job and/or failing to report for work while work was still available for me. I will just start with the sentence above. First of all, I contacted Cheri Whiteside, the current full charge bookkeeper at Team Go Figure, at approximately 5:45pm on Friday, April 22, 2011 after I left work at approximately 5:35pm. I left her a message for her to call me; she returned my call approximately 6pm that same evening. I informed her that I was resigning and that I left my resignation letter on her desk (a copy is attached to this appeal) and could not work with Team Go Figure anymore due to illegal activity and being instructed to break the US Department of Labor, Wage & Hour Division Laws & Regulations. I wish that I was able to speak with an Owner or a Manager, but everyone had left early for the Easter Holiday, even my direct supervisor and the person who was training me, Cheri Whiteside, had left early for the day. An additional copy of my resignation letter was also mailed by Certified Mail Article #7002 2410 0000 6188 2090 that was delivered and signed for on April 25, 2011. That is not abandonment or failing to report to work, that is notifying the employer that I do not wish to continue to break the payroll laws and do not wish to continue my employment with a company who does not treat their employees in regard to the US DOL Wage & Hour Division Laws & Regulations.

During my employment at Team Go Figure, I was instructed to take deposits to the bank. I went to the bank sometimes when I left to lunch and sometimes when I left to go home for the day. When I was approached and asked why I was gone for more than my designated 30 minute lunch. My answer was, I clocked out at a certain time, drove to the bank and my "lunch" did not OFFICIALLY start until I completed my task at the bank. I told her to please see the bank deposit time for my actual time that my lunch started and that I would like my time clock stamp out for lunch be edited or changed to the time it stated on the bank deposit receipt so that it would show that I was only taking a 30 minute lunch as instructed. I was told by Cheri Whiteside that that time did not count as on the clock for work and from the time I leave the building for lunch, I needed to return 30 minutes later. I then asked if I could be reimbursed for the mileage that I used to drive to the bank or reimbursed for my time when making

16 – A

1473879   EXB

June 13, 2011

Appeal Tribunal
Texas Workforce Commission
101 East 15th Street
Austin, Texas 78778-0002

Re:    Claim ID EXB001
       Claim Date: 4-23-11
       Claimant: Kathleen M. Craig
       Claimants SS#: 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
       Date TWC Mailed Decision: May 31, 2011

Dear Sir/Madam

I am writing to APPEAL the decision on payment of unemployment benefits mailed to me on May 31, 2011. I disagree with the decision that was made against me for not qualifying for unemployment. I believe that the information that I am submitting will substantiate my reason and will become a qualifying reason of work separation.

Team Go Figure has stated that I abandoned my last work by walking off the job and/or failing to report for work while work was still available for me. I will just start with the sentence above. First of all, I contacted Cheri Whiteside, the current full charge bookkeeper at Team Go Figure, at approximately 5:45pm on Friday, April 22, 2011 after I left work at approximately 5:35pm. I left her a message for her to call me; she returned my call approximately 6pm that same evening. I informed her that I was resigning and that I left my resignation letter on her desk (a copy is attached to this appeal) and could not work with Team Go Figure anymore due to illegal activity and being instructed to break the US Department of Labor, Wage & Hour Division Laws & Regulations. I wish that I was able to speak with an Owner or a Manager, but everyone had left early for the Easter Holiday, even my direct supervisor and the person who was training me, Cheri Whiteside, had left early for the day. An additional copy of my resignation letter was also mailed by Certified Mail Article #7002 2410 0000 6188 2090 that was delivered and signed for on April 25, 2011. That is not abandonment or failing to report to work, that is notifying the employer that I do not wish to continue to break the payroll laws and do not wish to continue my employment with a company who does not treat their employees in regard to the US DOL Wage & Hour Division Laws & Regulations.

During my employment at Team Go Figure, I was instructed to take deposits to the bank. I went to the bank sometimes when I left to lunch and sometimes when I left to go home for the day. When I was approached and asked why I was gone for more than my designated 30 minute lunch. My answer was, I clocked out at a certain time, drove to the bank and my "lunch" did not OFFICIALLY start until I completed my task at the bank. I told her to please see the bank deposit time for my actual time that my lunch started and that I would like my time clock stamp out for lunch to be edited or changed to the time it stated on the bank deposit receipt so that it would show that I was only taking a 30 minute lunch as instructed. I was told by Cheri Whiteside that that time did not count as on the clock for work and from the time I leave the building for lunch, I needed to return 30 minutes later. I then asked if I could be reimbursed for the mileage that I used to drive to the bank or reimbursed for my time when making

**17 – A**

bank deposits. She told me that the owner, Scott Eskridge, did not pay for time at the bank nor did he pay for mileage at the IRS rate of $0.51 cents per mile driven for business errands. I was cheated out of my time while doing company business errands and I was cheated out of my mileage payment due to me for doing company errands at the IRS 2011 Mileage rate of $0.51 per mile driven.

During my employment at Team Go Figure as a part of my training from Cheri Whiteside, I was told that the United States Immigration Custom & Enforcement Department (ICE) had already visited Team Go Figure 2 times in the past to check for illegal aliens and that I must always have my I-9's up to date and that they were to be filed alphabetically.

Now, you will find attached to this Appeal many copies of items that substantiate my decision to resign from my position as to not incriminate myself by breaking federal & state laws. Please see the following items:

1. United States Postal Service Domestic Return Receipt of Certified Mail (Front & Back) Article #7002 2410 0000 6188 2090. This item has been signed and received on 4/25/11 by Cheri Whiteside, who was the Full Charge Bookkeeper at the time of my resignation. She was also the person who was training me to take her position.
2. A copy of my Resignation Letter describing the reason in which I left Team Go Figure's employment
3. A copy of two check stubs #14637 for Jose Elias Berumen for $1,280.00 & #14635 for Hue L. Uong for $641.58
4. A copy of a 9 page Report of Hours Worked for All Departments from 4/6/11 – 4/19/11
5. A copy of an email from Nicole Allen to Cheri Whiteside, both employees of Team Go Figure, showing an additional hours that were put in at home that were not listed on the print out from the Time Clock Report from 4/6/11 – 4/19/11 that needed to be added to her time.

Now I would like to describe these items in detail so that you can see a pattern that Team Go Figure continually breaks federal and state payroll laws and so that you can see that these items substantiate my decision to resign based on the fact that I am an HONEST person and that I have INTEGRITY.

Please see Item #4 on page 3 for employee ID Card #48 Anita Dominquez, she had 80.13 hours for her two week period and I was told to mark off any hours over 80 because TGF only pays employees 80 hours per pay period.

Please see item #4 on page 4 for employee ID Card #50 Israr Fatima, she had 80.25 hours for her time period and again I was instructed to mark out any hours over 80 and only pay employees for 80 hours.

Please see Item #4 on page 4-5 for employee ID Card #72 Keleigh B. Kelley, she had a total of 80.50 hours after corrections had been made to her time, she was also only paid for 80 hours and was very upset when she received her check on Friday, April 22, 2011. Not only does she have to leave work for fittings for merchandise that Team Go Figure sells and go to high schools all over the DFW Metroplex on her own gas and never received any mileage pay as stated in the IRS 2011 Standard Mileage Rates for all employees driving while on employer time at a rate of $0.51 per mile driven, does not get her overtime pay rate or even paid straight time for any hours over 80. She was very upset and came to me & Cheri Whiteside and told us so. She was told that Scott Eskridge & Ken Kenworthy, the owner & production manager, instructed Cheri Whiteside and myself that NO OVERTIME will be paid and NO MILEAGE will be paid.

18 – A

Please see item #4 on page 5 for ID Card #34 Jose Lanzo, he had a total of 80.19 hours but was only paid for 80 hours. This is the same person as the check stub in item #3 for Jose Elias Berumen Ck#14637. I was instructed by Cheri Whiteside, that his name wasn't the same as entered on the time clock station. I was also told that they believe he is an illegal alien and that is why the check was written and a different name was used. This is where I was concerned about the 2 prior trips that US Immigration Custom & Enforcement (ICE) had already been to Team Go Figure to make sure my I-9's were up to date and in order. I was worried that if they knew that Jose Lanzo/Jose Elias Berumen was an illegal alien, that I did not want to be involved in employing or involved in an I-9 that I knew was not legally obtained by the identification of the correct person.

Please see item #4 on page 5 for ID Card #35 Toung Le Tran, she had 81.68 hours but was only paid for 80 hours. I was instructed by Cheri Whiteside to check with Ken Kenworthy to ask him if she can be paid her overtime rate for her additional hours over 80. I went to him and asked him and he instructed me to mark them off and only pay her for 80 hours.

Please see item #4 on page 5 for ID Card #70 Antwan Lee, his time was completely marked off because of the following: As of Monday 4/18/11 after working almost a full day at the office, Antwan had to go to a fitting and his hours would definitely put him over the 80 hour mark with still 1 more day remaining in the pay period. He was still on his probation period of a new hire and Scott Eskridge called him and Antwan was enticed to go on Salary to prevent Team Go Figure from paying overtime pay and to be able to get more hours out of their employees without paying future overtime that would accrue. As per the US DOL Wage & Hour Division Laws and Regulations, an employer can only require 40 hours per wk out of their employees whether they are Salaried or Hourly employees without paying the time and a half rate. Also per the US DOL, salaried employees are in a managerial position and manage other employees. Antwan was not a manager nor did he manage other employees or salesmen, he was their equal, therefore should have remained an hourly employee.

Please see item #4 on page 7 for ID Card #26 Anh Tran, she had 80.03 hours for her time period and again I was instructed to mark out any hours over 80 and only pay employees for 80 hours.

Please see item #4 on page 8 for ID Card #28 Noi Tran, she had 80.52 hours for her pay period but was only paid for 80 hours, again, I was instructed to mark off any excess hours over 80 in that pay period. Once again, not only were the employees not paid for all of their hours, even straight time or at their overtime rate, they were only paid the maximum hours for the pay period without reaching the overtime rate.

Please see item #4 on page 8 for ID Card #66 Hue L. Uong, she had 80.17 hours for her pay period but was only paid 80 hours, again marking off anything above 80 hours. Please refer to item #3, check #14635, showing and proving my case of that person only being paid for 80 hours of work, when she clearly worked more than 80 hours during the pay period 4/6/11 – 4/19/11.

Please see item #4 on page 8 & continued on page 9 for ID Card #31 Ana Varela, she had 80.03 hours, but was only paid for 80 hours. This is a small amount of hours over the 80 hours in a pay period, but it is still something.

There were several reports that had an opportunity to look at from previous pay periods that with all those amounts of all those pay periods total a lot of overtime hours that they were not paid not only just

18 – A

Please see item #4 on page 5 for ID Card #34 Jose Lanzo, he had a total of 80.19 hours but was only paid for 80 hours. This is the same person as the check stub in item #3 for Jose Elias Berumen Ck#14637. I was instructed by Cheri Whiteside, that his name wasn't the same as entered on the time clock station. I was also told that they believe he is an illegal alien and that is why the check was written and a different name was used. This is where I was concerned about the 2 prior trips that US Immigration Custom & Enforcement (ICE) had already been to Team Go Figure to make sure my I-9's were up to date and in order. I was worried that if they knew that Jose Lanzo/Jose Elias Berumen was an illegal alien, that I did not want to be involved in employing or involved in an I-9 that I knew was not legally obtained by the identification of the correct person.

Please see item #4 on page 5 for ID Card #35 Toung Le Tran, she had 81.68 hours but was only paid for 80 hours. I was instructed by Cheri Whiteside to check with Ken Kenworthy to ask him if she can be paid her overtime rate for her additional hours over 80. I went to him and asked him and he instructed me to mark them off and only pay her for 80 hours.

Please see item #4 on page 5 for ID Card #70 Antwan Lee, his time was completely marked off because of the following:  As of Monday 4/18/11 after working almost a full day at the office, Antwan had to go to a fitting and his hours would definitely put him over the 80 hour mark with still 1 more day remaining in the pay period. He was still on his probation period of a new hire and Scott Eskridge called him and Antwan was enticed to go on Salary to prevent Team Go Figure from paying overtime pay and to be able to get more hours out of their employees without paying future overtime that would accrue. As per the US DOL Wage & Hour Division Laws and Regulations, an employer can only require 40 hours per wk out of their employees whether they are Salaried or Hourly employees without paying the time and a half rate. Also per the US DOL, salaried employees are in a managerial position and manage other employees. Antwan was not a manager nor did he manage other employees or salesmen, he was their equal, therefore should have remained an hourly employee.

Please see item #4 on page 7 for ID Card #26 Anh Tran, she had 80.03 hours for her time period and again I was instructed to mark out any hours over 80 and only pay employees for 80 hours.

Please see item #4 on page 8 for ID Card #28 Noi Tran, she had 80.52 hours for her pay period but was only paid for 80 hours, again, I was instructed to mark off any excess hours over 80 in that pay period. Once again, not only were the employees not paid for all of their hours, even straight time or at their overtime rate, they were only paid the maximum hours for the pay period without reaching the overtime rate.

Please see item #4 on page 8 for ID Card #66 Hue L. Uong, she had 80.17 hours for her pay period but was only paid 80 hours, again marking off anything above 80 hours. Please refer to item #3, check #14635, showing and proving my case of that person only being paid for 80 hours of work, when she clearly worked more than 80 hours during the pay period 4/6/11 – 4/19/11.

Please see item #4 on page 8 & continued on page 9 for ID Card #31 Ana Varela, she had 80.03 hours, but was only paid for 80 hours. This is a small amount of hours over the 80 hours in a pay period, but it is still something.

There were several reports that had an opportunity to look at from previous pay periods that with all those amounts of all those pay periods total a lot of overtime hours that they were not paid not only just

19 – A

straight time but not even at their overtime rate which is against the US DOL Wage & Hour Division Laws & Regulations. But I did not make copies of those reports because I did not complete those payrolls and had nothing to do with those time periods. Cheri Whiteside completed those payrolls and she would be the one who would be responsible for following directions from the owner, Scott Eskridge to mark off any hours or minutes above 80 hours.

Now after you take a closer look at all the items that I have enclosed with this appeal, item #3 & item #4 substantiate my "Letter of Resignation" (item #2) stating that "I cannot sign my name to a payroll report of any kind that might not comply with the United States Department of Labor, Wage & Hour Division Laws & Regulations".

I was being trained by Cheri Whiteside which was the current Full Charge Bookkeeper to take over her position and become the Full Charge Bookkeeper as of June 1, 2011. However, since part of her job would to be to submit the Texas State Unemployment Quarterly Report for Team Go Figure, the Federal Unemployment Quarterly Report (941 & End of year 940), print employee W-2's, print the company W-3 Transmittal Report for Team Go Figure, I would have to sign my name to those reports. After working for more than 20 years in the Payroll field and being very familiar with US DOL Laws & Regulations and other Texas State Laws regarding payroll, I would have had to sign reports that did not comply with US DOL Wage & Hour Division Laws & Regulations and other Texas State Payroll Laws and I was not comfortable signing my name to illegal reports. As a Bookkeeper, knowing those laws, I would be breaking the law myself if I attached my name to those reports, I was not willing to break the law for employment. My conscious would not allow me to cheat people out of money and still hand out their paychecks looking them in the eyes knowing that I was instructed to cheat them out of money that they were owed by the owner, Scott Eskridge and my direct supervisor, Cheri Whiteside & the Production Manager, Ken Kenworthy.

Please submit my letter and evidence as my objection and appeal to the decision of not being approved for unemployment benefits.

If you have any further questions or need further explanation of the items that I have submitted for substantial proof that I was being instructed by Team Go Figure to break the Laws and Regulations of the United States Department of Labor, Wage & Hour Division.

Thank you,

Kathleen M. Craig
2505 Dillon Drive
Garland, Texas 75040
972-675-6896 hm
214-552-6626 mb

20 – A

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Kathleen M Craig
1305 Dillon Drive
Garland, TX 75040

---

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Team Go Figure
301 N. Country Club Rd.
Garland, TX 75040

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _____  ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
                                   4/25

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)    7002 2410 0000 6188 2090

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1035

Plaintiffs' Brief In Opposition Appendix 133

20 – A

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

* Sender: Please print your name, address, and ZIP+4 in this box *

Kathleen M Craig
2505 Dillon Drive
Garland, TX 75040

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Team Go Figure
301 N. Country Club Rd.
Garland, TX 75040

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by ( Printed Name )

C. Date of Delivery
4 - 25

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)              ☐ Yes

2. Article Number
(Transfer from service label)          7002 2410 0000 6188 2090

PS Form 3811, August 2001      Domestic Return Receipt          102595-02-M-1035

21 – A

*Kathleen M. Craig*
*2505 Dillon Drive*
*Garland, TX 75040*

April 22, 2011

Team Go Figure
310 N. Country Club Road
Garland, Texas 75040

Attn: Scott Eskridge & Ken Kenworthy

Dear Sirs,

As of April 22, 2011, I respectfully resign the full charge bookkeeper position that was offered to me on April 8, 2011, that I have been in training for since April 12, 2011.

I am resigning for the following reason:

- I cannot sign my name to a payroll report of any kind that might not comply with the United States Department of Labor, Wage & Hour Division Laws and Regulations.

Please send my final check for the pay period April 20 – May 3, 2011, that I worked from April 20 – April 22, 2011 to 2505 Dillon Drive, Garland, Texas 75040.

Thank you,

Kathleen Craig
2505 Dillon Drive
Garland, Texas 75040

**22 – A**
**Team Go Figure**
Report Of Hours Worked - All Departments
Report from 4/6/2011 to 4/19/2011 - Worked Hours
All Employees

*Contract Labor Hrs-* (handwritten)

| Date: | 4/20/2011 |
|---|---|
| Time | 9:19:30 AM |

* Added from Employee Attendance
▲ Added Punch
• Edited Punch
■ Late Arrival

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|

Employee: Agustin De Velasquez Laura

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| WED | 4/6/2011 | 6:05 AM | 11:17 AM | 5.20 | 0.00 | 0.00 | |
| WED | 4/6/2011 | 11:57 AM | 3:07 PM | 3.17 | 0.00 | 0.00 | 8.37 |
| THU | 4/7/2011 | 5:56 AM | 11:19 AM | 5.38 | 0.00 | 0.00 | |
| THU | 4/7/2011 | 12:01 PM | 2:41 PM | 2.62 | 0.00 | 0.00 | 8.00 |
| FRI | 4/8/2011 | 5:58 AM | 11:07 AM | 5.15 | 0.00 | 0.00 | |
| FRI | 4/8/2011 | 11:48 AM | 2:42 PM | 2.90 | 0.00 | 0.00 | 8.05 |
| MON | 4/11/2011 | 6:10 AM | 11:19 AM | 5.15 | 0.00 | 0.00 | |
| MON | 4/11/2011 | 12:03 PM | 2:50 PM | 2.78 | 0.00 | 0.00 | 7.93 |
| TUE | 4/12/2011 | 6:03 AM | 11:11 AM | 5.13 | 0.00 | 0.00 | |
| TUE | 4/12/2011 | 11:49 AM | 2:37 PM | 2.80 | 0.00 | 0.00 | 7.93 |
| WED | 4/13/2011 | 5:58 AM | 11:08 AM | 5.17 | 0.00 | 0.00 | |
| WED | 4/13/2011 | 11:45 AM | 2:42 PM | 2.95 | 0.00 | 0.00 | 8.12 |
| THU | 4/14/2011 | 6:11 AM | 11:15 AM | 5.07 | 0.00 | 0.00 | |
| THU | 4/14/2011 | 11:56 AM | 2:38 PM | 2.72 | 0.00 | 0.00 | 7.78 |
| FRI | 4/15/2011 | 6:16 AM | 11:15 AM | 4.98 | 0.00 | 0.00 | |
| FRI | 4/15/2011 | 11:53 AM | 2:40 PM | 2.78 | 0.00 | 0.00 | 7.77 |
| MON | 4/18/2011 | 6:07 AM | 11:11 AM | 5.07 | 0.00 | 0.00 | |
| MON | 4/18/2011 | 11:52 AM | 2:38 PM | 2.77 | 0.00 | 0.00 | 7.83 |
| TUE | 4/19/2011 | 6:08 AM | 11:19 AM | 5.18 | 0.00 | 0.00 | |
| TUE | 4/19/2011 | 12:03 PM | 2:32 PM | 2.48 | 0.00 | 0.00 | 7.67 |
| IDCard: 58 | | | Employee Totals: | 79.45 | 0.00 | 0.00 | 79.45 |

Employee: Alexander C Crystal

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| WED | 4/6/2011 | 7:58 AM | 4:46 PM | 8.30 | 0.00 | 0.00 | |
| THU | 4/7/2011 | 9:10 AM | 12:57 PM | 3.78 | 0.00 | 0.00 | |
| THU | 4/7/2011 | 1:47 PM | 5:26 PM | 3.65 | 0.00 | 0.00 | 7.43 |
| FRI | 4/8/2011 | 9:07 AM | 5:34 PM | 7.95 | 0.00 | 0.00 | |
| MON | 4/11/2011 | 8:15 AM | ▲ 5:28 PM | 8.72 | 0.00 | 0.00 | |
| TUE | 4/12/2011 | 7:54 AM | 5:20 PM | 8.93 | 0.00 | 0.00 | |
| WED | 4/13/2011 | 8:13 AM | 5:25 PM | ▲ 8.70 | 0.00 | 0.00 | |
| THU | 4/14/2011 | 8:00 AM | 5:29 PM | 8.98 | 0.00 | 0.00 | |
| FRI | 4/15/2011 | 9:08 AM | 5:30 PM | 7.87 | 0.00 | 0.00 | |
| MON | 4/18/2011 | 8:07 AM | 5:27 PM | 8.83 | 0.00 | 0.00 | |
| TUE | 4/19/2011 | 12:04 PM | ▲1:00 pm | | | | |
| IDCard: 0058 | | | Employee Totals: | 75.72 | 0.00 | 0.00 | 75.72 |

Employee: Allen Y Nicole

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| WED | 4/6/2011 | 8:30 AM | ▲ 1:58 PM | ▲ 5.47 | 0.00 | 0.00 | |
| THU | 4/7/2011 | 8:26 AM | ▲ 2:00 PM | ▲ 5.57 | 0.00 | 0.00 | |
| THU | 4/7/2011 | 4:30 PM | ▲ 7:45 PM | ▲ 3.25 | 0.00 | 0.00 | 8.82 |
| FRI | 4/8/2011 | 7:36 AM | ▲ 3:30 PM | ▲ 7.90 | 0.00 | 0.00 | |
| MON | 4/11/2011 | 8:06 AM | ▲ 10:55 AM | ▲ 2.82 | 0.00 | 0.00 | |
| MON | 4/11/2011 | 2:00 PM | ▲ 8:30 PM | ▲ 6.50 | 0.00 | 0.00 | 9.32 |
| TUE | 4/12/2011 | 8:26 AM | 1:59 PM | 5.52 | 0.00 | 0.00 | |
| WED | 4/13/2011 | 8:59 AM | 2:00 PM | 5.02 | 0.00 | 0.00 | |
| THU | 4/14/2011 | 8:28 AM | 1:05 PM | 4.62 | 0.00 | 0.00 | |
| THU | 4/14/2011 | 1:13 PM | 2:01 PM | 0.80 | 0.00 | 0.00 | 5.42 |
| FRI | 4/15/2011 | 8:21 AM | 1:15 PM | ▲ 4.90 | 0.00 | 0.00 | |

Printed In: BOOK

Plaintiffs' Brief In Opposition Appendix 136

23 – A
Team Go Figure
Report Of Hours Worked - All Departments
Report from 4/6/2011 to 4/19/2011 - Worked Hours
All Employees

Date: 4/20/2011
Time: 9:19:53 AM
• Added from Employee Attendance
• Added Punch
• Edited Punch
• Late Arrival



| Day | Date | In | Out | Reg | OT | DT |
|-----|------|-----|-----|-----|-----|-----|
| SUN | 4/17/2011 | 2:30 PM | 6:30 PM | 4.00 | 0.00 | 0.00 |
| MON | 4/18/2011 | 8:45 AM | 2:04 PM | 5.32 | 0.00 | 0.00 |
| MON | 4/18/2011 | 9:30 PM | 10:30 PM | 1.00 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 8:26 AM | 1:58 PM | 5.53 | 0.00 | 0.00 |
| IDCard: 69 | | | Employee Totals: | 68.20 | 0.00 | 0.00 |

Employee: Araiza Ahida

| WED | 4/6/2011 | 8:33 AM | 1:56 PM | 4.88 | 0.00 | 0.00 |
| THU | 4/7/2011 | 8:31 AM | 4:28 PM | 7.45 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 8:38 AM | 4:30 PM | 7.37 | 0.00 | 0.00 |
| MON | 4/11/2011 | 8:40 AM | 4:31 PM | 7.35 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 9:07 AM | 4:29 PM | 6.87 | 0.00 | 0.00 |
| WED | 4/13/2011 | 8:32 AM | 4:31 PM | 7.48 | 0.00 | 0.00 |
| THU | 4/14/2011 | 8:40 AM | 4:28 PM | 7.30 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 8:38 AM | 4:29 PM | 7.35 | 0.00 | 0.00 |
| MON | 4/18/2011 | 8:27 AM | 4:30 PM | 7.55 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 8:30 AM | 4:30 PM | 7.50 | 0.00 | 0.00 |
| IDCard: 74 | | | Employee Totals: | 71.10 | 0.00 | 0.00 |

Employee: Buchanan G Derdre

| WED | 4/6/2011 | 8:58 AM | 5:32 PM | 8.07 | 0.00 | 0.00 |
| THU | 4/7/2011 | 9:02 AM | 5:38 PM | 8.10 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 9:03 AM | 12:24 PM | 3.35 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 12:56 PM | 5:31 PM | 4.58 | 0.00 | 0.00 |
| MON | 4/11/2011 | 9:05 AM | 5:52 PM | 8.28 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 9:01 AM | 5:48 PM | 8.28 | 0.00 | 0.00 |
| WED | 4/13/2011 | 9:06 AM | 5:05 PM | 7.48 | 0.00 | 0.00 |
| THU | 4/14/2011 | 9:04 AM | 5:26 PM | 7.87 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 8:58 AM | 12:40 PM | 3.70 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 1:29 PM | 5:37 PM | 4.13 | 0.00 | 0.00 |
| MON | 4/18/2011 | 9:02 AM | 5:32 PM | 8.00 | 0.00 | 0.00 |
| IDCard: 67 | | | Employee Totals: | 71.85 | 0.00 | 0.00 |

Employee: Cash Nina

| WED | 4/6/11 | | | | | |
| THU | 4/7/2011 | 9:47 AM | 5:08 PM | 6.85 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 9:32 AM | 4:06 PM | 6.07 | 0.00 | 0.00 |
| MON | 4/11/2011 | 9:11 AM | 1:38 PM | 4.45 | 0.00 | 0.00 |
| MON | 4/11/2011 | 2:20 PM | 5:23 PM | 3.05 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 9:19 AM | 2:11 PM | 4.87 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 3:04 PM | 5:24 PM | 2.33 | 0.00 | 0.00 |
| WED | 4/13/2011 | 9:26 AM | 5:31 PM | 7.58 | 0.00 | 0.00 |
| THU | 4/14/2011 | 9:16 AM | 5:26 PM | 7.67 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 9:16 AM | 4:59 PM | 7.20 | 0.00 | 0.00 |
| MON | 4/18/2011 | 9:15 AM | 5:43 PM | 7.97 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 9:18 AM | 3:14 PM | 5.43 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 4:01 PM | 5:42 PM | 1.68 | 0.00 | 0.00 |
| IDCard: 51 | | | Employee Totals: | 65.15 | 0.00 | 0.00 |

Employee: Craig Kathleen

| TUE | 4/12/2011 | 9:00 AM | 5:00 PM | 7.50 | 0.00 | 0.00 |

Printed In: BOOK

Page 2

**24. – A**
**Team Go Figure**
Report Of Hours Worked - All Departments
Report from 4/6/2011 to 4/19/2011 - Worked Hours
All Employees

| | Date | 4/20/2011 |
|---|---|---|
| | Time | 9:20:30 AM |

* Added from Employee Attendance
* Added Punch
* Edited Punch
* Late Arrival

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| WED | 4/13/2011 | 9:00 AM | * 5:30 PM | * 8.00 | 0.00 | 0.00 | |
| THU | 4/14/2011 | 9:00 AM | * 12:00 PM | * 3.00 | 0.00 | 0.00 | 7.2 |
| THU | 4/14/2011 | 12:45 PM | * 5:30 PM | * 4.75 | 0.00 | 0.00 | |
| FRI | 4/15/2011 | 9:04 AM | 5:40 PM | * 8.10 | 0.00 | 0.00 | 7.75 |
| MON | 4/18/2011 | 8:54 AM | 5:31 PM | 8.12 | 0.00 | 0.00 | |
| TUE | 4/19/2011 | 8:58 AM | 5:03 PM | 7.58 | 0.00 | 0.00 | |
| IDCard: 75 | | | Employee Totals: | 47.05 | 0.00 | 0.00 | 47.05 |

Employee: Do Yen K

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| WED | 4/6/2011 | 7:57 AM | 4:30 PM | 8.05 | 0.00 | 0.00 | |
| THU | 4/7/2011 | 8:04 AM | 4:30 PM | 7.93 | 0.00 | 0.00 | |
| FRI | 4/8/2011 | 7:54 AM | 4:30 PM | 8.10 | 0.00 | 0.00 | |
| MON | 4/11/2011 | 7:55 AM | 4:30 PM | 8.08 | 0.00 | 0.00 | |
| TUE | 4/12/2011 | 7:54 AM | 4:31 PM | 8.12 | 0.00 | 0.00 | |
| WED | 4/13/2011 | 7:56 AM | 4:29 PM | 8.05 | 0.00 | 0.00 | |
| THU | 4/14/2011 | 7:59 AM | 4:29 PM | 8.00 | 0.00 | 0.00 | |
| FRI | 4/15/2011 | 8:01 AM | 4:29 PM | 7.97 | 0.00 | 0.00 | |
| MON | 4/18/2011 | 7:58 AM | 4:27 PM | 7.98 | 0.00 | 0.00 | |
| TUE | 4/19/2011 | 8:24 AM | 4:30 PM | 7.60 | 0.00 | 0.00 | |
| IDCard: 65 | | | Employee Totals: | 79.88 | 0.00 | 0.00 | 79.88 |

Employee: Dominguez Anita

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| WED | 4/6/2011 | 8:00 AM | 4:27 PM | 7.95 | 0.00 | 0.00 | |
| THU | 4/7/2011 | 7:58 AM | 4:29 PM | 8.02 | 0.00 | 0.00 | |
| FRI | 4/8/2011 | 7:53 AM | 4:30 PM | 8.12 | 0.00 | 0.00 | |
| MON | 4/11/2011 | 8:08 AM | 4:32 PM | 7.90 | 0.00 | 0.00 | |
| TUE | 4/12/2011 | 7:52 AM | 4:28 PM | 8.10 | 0.00 | 0.00 | |
| WED | 4/13/2011 | 8:05 AM | 4:31 PM | 7.93 | 0.00 | 0.00 | |
| THU | 4/14/2011 | 8:11 AM | 4:29 PM | 7.80 | 0.00 | 0.00 | |
| FRI | 4/15/2011 | 7:45 AM | 4:30 PM | 8.25 | 0.00 | 0.00 | |
| MON | 4/18/2011 | 7:47 AM | 4:32 PM | 8.25 | 0.00 | 0.00 | |
| TUE | 4/19/2011 | 7:46 AM | 4:05 PM | 7.82 | 0.00 | 0.00 | |
| IDCard: 48 | | | Employee Totals: | 80.13 | 0.00 | 0.00 | 80.13 |

Employee: Dubon, Mario

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| WED | 4/6/2011 | 9:03 AM | * 4:28 PM | 6.92 | 0.00 | 0.00 | |
| THU | 4/7/2011 | 8:59 AM | 3:00 PM | 5.52 | 0.00 | 0.00 | |
| FRI | 4/8/2011 | 8:12 AM | 1:15 PM | 4.55 | 0.00 | 0.00 | |
| MON | 4/11/2011 | 8:14 AM | 4:17 PM | 7.55 | 0.00 | 0.00 | |
| TUE | 4/12/2011 | 7:53 AM | 2:59 PM | 6.60 | 0.00 | 0.00 | |
| WED | 4/13/2011 | 7:55 AM | 2:59 PM | 6.57 | 0.00 | 0.00 | |
| THU | 4/14/2011 | 7:56 AM | 4:29 PM | 8.05 | 0.00 | 0.00 | |
| FRI | 4/15/2011 | 10:10 AM | 1:06 PM | 2.93 | 0.00 | 0.00 | |
| IDCard: 7 | | | Employee Totals: | 48.68 | 0.00 | 0.00 | 48.68 |

Employee: Escobar, Milton

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| MON | 4/11/2011 | 6:16 AM | * 2:34 PM | * 8.30 | 0.00 | 0.00 | |
| TUE | 4/12/2011 | 6:14 AM | * 2:37 PM | 8.38 | 0.00 | 0.00 | |

Plaintiffs' Brief In Opposition Appendix 138

25. – A
**Team Go Figure**
Report Of Hours Worked - All Departments
Report from 4/6/2011 to 4/19/2011 - Worked Hours
All Employees

| Date | 4/20/2011 |
|---|---|
| Time | 9:21:07 AM |

* = Added from Employee Attendance
* = Added Punch
* = Edited Punch
* = Late Arrival



| Day | Date | In | Out | Reg. | OT | DT |
|---|---|---|---|---|---|---|
| WED | 4/13/2011 | 6:12 AM | * 2:36 PM | 8.40 | 0.00 | 0.00 |
| THU | 4/14/2011 | 6:05 AM | * 2:32 PM | 8.45 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 6:28 AM | * 2:00 PM | 7.53 | 0.00 | 0.00 |
| MON | 4/18/2011 | 6:00 AM | * 2:28 PM | 8.47 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 5:56 AM | * 2:30 PM | 8.57 | 0.00 | 0.00 |
| IDCard: 8 | | | Employee Totals: | 58.10 | 0.00 | 0.00 |

*F8hrs Vacation /66.10* 58.10

Employee: Fatima Israr

| WED | 4/6/2011 | 8:03 AM | * 4:28 PM | 7.92 | 0.00 | 0.00 |
|---|---|---|---|---|---|---|
| THU | 4/7/2011 | 7:57 AM | 4:28 PM | 8.02 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 7:34 AM | 4:28 PM | 8.40 | 0.00 | 0.00 |
| MON | 4/11/2011 | 7:52 AM | * 4:28 PM | 8.10 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 7:46 AM | 4:27 PM | 8.18 | 0.00 | 0.00 |
| WED | 4/13/2011 | 7:36 AM | 4:29 PM | 8.38 | 0.00 | 0.00 |
| THU | 4/14/2011 | 7:59 AM | 4:28 PM | 7.98 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 7:48 AM | 4:27 PM | 8.15 | 0.00 | 0.00 |
| MON | 4/18/2011 | 7:49 AM | 4:29 PM | 8.17 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 8:01 AM | 3:28 PM | 6.95 | 0.00 | 0.00 |
| IDCard: 50 | | | Employee Totals: | 80.25 | 0.00 | 0.00 |

*√ 80* 80.25

Employee: Guerra, Jesus

| WED | 4/6/2011 | 6:20 AM | * 2:54 PM | 8.57 | 0.00 | 0.00 |
|---|---|---|---|---|---|---|
| THU | 4/7/2011 | 6:24 AM | * 2:42 PM | 8.30 | 0.00 | 0.00 |
| MON | 4/11/2011 | 6:04 AM | * 2:35 PM | 8.52 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 6:02 AM | * 2:38 PM | 8.60 | 0.00 | 0.00 |
| WED | 4/13/2011 | 6:12 AM | * 2:38 PM | 8.43 | 0.00 | 0.00 |
| THU | 4/14/2011 | 6:04 AM | * 2:33 PM | 8.48 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 6:08 AM | * 2:35 PM | 8.45 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 6:22 AM | * 2:49 PM | 8.45 | 0.00 | 0.00 |
| IDCard: 13 | | | Employee Totals: | 67.80 | 0.00 | 0.00 |

*F4hrs Vacation* 67.80

Employee: Harge Richard

| WED | 4/6/2011 | 6:17 AM | * 2:52 PM | 8.08 | 0.00 | 0.00 |
|---|---|---|---|---|---|---|
| THU | 4/7/2011 | 6:11 AM | * 2:40 PM | 7.98 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 6:18 AM | * 2:42 PM | 7.90 | 0.00 | 0.00 |
| MON | 4/11/2011 | 6:04 AM | * 2:35 PM | 8.02 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 6:13 AM | * 2:39 PM | 7.93 | 0.00 | 0.00 |
| WED | 4/13/2011 | 6:11 AM | * 2:42 PM | 8.02 | 0.00 | 0.00 |
| THU | 4/14/2011 | 6:09 AM | * 2:32 PM | 7.88 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 6:13 AM | * 3:06 PM | 8.38 | 0.00 | 0.00 |
| MON | 4/18/2011 | 6:10 AM | * 2:28 PM | 7.80 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 6:08 AM | * 2:09 PM | 7.52 | 0.00 | 0.00 |
| IDCard: 60 | | | Employee Totals: | 79.52 | 0.00 | 0.00 |

79.52

Employee: Kelley B Keleigh

| WED | 4/6/2011 | 9:06 AM | 5:31 PM | 7.92 | 0.00 | 0.00 |
|---|---|---|---|---|---|---|
| THU | 4/7/2011 | 8:56 AM | 5:30 PM | 8.07 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 9:00 AM | 5:31 PM | 8.02 | 0.00 | 0.00 |
| MON | 4/11/2011 | 8:52 AM | 8:30 PM | * 11.13 | 0.00 | 0.00 |

Page 4

Plaintiffs' Brief In Opposition Appendix 139

**26 – A**
**Team Go Figure**
Report Of Hours Worked - All Departments
Report from 4/6/2011 to 4/19/2011 - Worked Hours
All Employees

| Date | 4/20/2011 |
| --- | --- |
| Time | 9:21:50 AM |

* = Added Item Employee Attendance
* = Added Punch
* = Added Punch
= = Edited Punch
* = Late Arrival



| Day | Date | In | Out | Reg | OT | DT |
| --- | --- | --- | --- | --- | --- | --- |
| TUE | 4/12/2011 | 11:59 AM | 6:30 PM | 6.02 | 0.00 | 0.00 |
| WED | 4/13/2011 | 9:00 AM | 6:00 PM | 8.50 | 0.00 | 0.00 |
| THU | 4/14/2011 | 10:58 AM | 5:30 PM | 6.03 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 9:04 AM | 5:42 PM | 8.13 | 0.00 | 0.00 |
| MON | 4/18/2011 | 9:10 AM | 5:30 PM | 7.83 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 10:49 AM | 7:30 PM | 8:10 | 0.00 | 0.00 |
| IDCard: 0072 | | | Employee Totals: | 71.65 | 0.00 | 0.00 | 71.65 |

Employee: Lanzo, Jose

| WED | 4/6/2011 | 6:58 AM | 2:55 PM | 7.95 | 0.00 | 0.00 |
| --- | --- | --- | --- | --- | --- | --- |
| THU | 4/7/2011 | 8:21 AM | 3:04 PM | 6.72 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 5:57 AM | 2:41 PM | 8.73 | 0.00 | 0.00 |
| MON | 4/11/2011 | 6:31 AM | 2:42 PM | 8.18 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 8:13 AM | 3:13 PM | 7.00 | 0.00 | 0.00 |
| WED | 4/13/2011 | 6:24 AM | 3:03 PM | 8.65 | 0.00 | 0.00 |
| THU | 4/14/2011 | 6:20 AM | 3:01 PM | 8.68 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 6:20 AM | 2:30 PM | 8.17 | 0.00 | 0.00 |
| MON | 4/18/2011 | 7:59 AM | 3:02 PM | 7.05 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 5:32 AM | 2:30 PM | 8.97 | 0.00 | 0.00 |
| IDCard: 34 | | | Employee Totals: | 80.10 | 0.00 | 0.00 | 80.10 |

Employee: Le Tran, Tuong

| WED | 4/6/2011 | 5:05 AM | 4:46 PM | 11.18 | 0.00 | 0.00 |
| --- | --- | --- | --- | --- | --- | --- |
| THU | 4/7/2011 | 5:32 AM | 4:32 PM | 10.50 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 4:57 AM | 4:32 PM | 11.08 | 0.00 | 0.00 |
| MON | 4/11/2011 | 5:06 AM | 4:30 PM | 11.00 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 4:58 AM | 4:39 PM | 11.18 | 0.00 | 0.00 |
| WED | 4/13/2011 | 5:00 AM | 4:36 PM | 11.10 | 0.00 | 0.00 |
| THU | 4/14/2011 | 5:30 AM | 4:32 PM | 10.53 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 5:06 AM | 10:42 AM | 5.10 | 0.00 | 0.00 |
| IDCard: 35 | | | Employee Totals: | 81.68 | 0.00 | 0.00 | 81.68 |

Employee: Lee, Antwan

| WED | 4/6/2011 | 9:06 AM | 5:30 PM | 7.90 | 0.00 | 0.00 |
| --- | --- | --- | --- | --- | --- | --- |
| THU | 4/7/2011 | 8:59 AM | 7:46 PM | 10.27 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 8:51 AM | 5:30 PM | 8.15 | 0.00 | 0.00 |
| MON | 4/11/2011 | 8:59 AM | 5:30 PM | 8.02 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 7:30 AM | 6:00 PM | 10.00 | 0.00 | 0.00 |
| WED | 4/13/2011 | 9:06 AM | 9:00 PM | 11.40 | 0.00 | 0.00 |
| THU | 4/14/2011 | 9:02 AM | 5:15 PM | 7.72 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 9:05 AM | 5:00 PM | 7.42 | 0.00 | 0.00 |
| IDCard: 70 | | | Employee Totals: | 70.87 | 0.00 | 0.00 | 70.87 |

Employee: Nelson, Meredith

| THU | 4/7/2011 | 9:10 AM | 8:26 PM | 10.77 | 0.00 | 0.00 |
| --- | --- | --- | --- | --- | --- | --- |
| FRI | 4/8/2011 | 12:37 PM | 5:31 PM | 4.90 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 9:06 AM | 6:14 PM | 8.63 | 0.00 | 0.00 |
| THU | 4/14/2011 | 9:02 AM | 5:35 PM | 8.05 | 0.00 | 0.00 |

Printed In: BOOK

Plaintiffs' Brief In Opposition Appendix 140

**27. – A**
**Team Go Figure**
Report Of Hours Worked - All Departments
Report from 4/6/2011 to 4/19/2011 - Worked Hours
All Employees

| Date | 4/20/2011 |
|---|---|
| Time | 9:22:29 AM |

* Added from Employee Attendance
* Added Punch
* Edited Punch
* Late Arrival



| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| FRI | 4/15/2011 | 12:20 PM | 5:44 PM | 4.90 | 0.00 | 0.00 | |
| TUE | 4/19/2011 | 9:03 AM | 5:37 PM | 8.07 | 0.00 | 0.00 | |
| IDCard: 33 | | | Employee Totals: | 45.32 | 0.00 | 0.00 | 45.32 |

Employee: Newhard Carol

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| WED | 4/6/2011 | 6:03 AM | * 2:31 PM | 7.97 | 0.00 | 0.00 | |
| THU | 4/7/2011 | 6:01 AM | * 2:32 PM | 8.02 | 0.00 | 0.00 | |
| FRI | 4/8/2011 | 5:57 AM | * 2:32 PM | 8.08 | 0.00 | 0.00 | |
| MON | 4/11/2011 | 6:04 AM | * 2:33 PM | 7.98 | 0.00 | 0.00 | |
| TUE | 4/12/2011 | 6:03 AM | * 2:34 PM | 8.02 | 0.00 | 0.00 | |
| WED | 4/13/2011 | 6:07 AM | * 12:34 PM | 5.95 +30 | 0.00 | 0.00 | |
| WED | 4/13/2011 | 12:57 PM | 2:47 PM | 1.83 | 0.00 | 0.00 | 7.78 |
| THU | 4/14/2011 | 6:02 AM | * 2:21 PM | 7.82 | 0.00 | 0.00 | |
| FRI | 4/15/2011 | 6:05 AM | * 12:21 PM | 5.77 +30 | 0.00 | 0.00 | |
| FRI | 4/15/2011 | 12:55 PM | 2:31 PM | 1.60 | 0.00 | 0.00 | 7 37 |
| MON | 4/18/2011 | 6:04 AM | * 2:37 PM | 8.05 | 0.00 | 0.00 | |
| TUE | 4/19/2011 | 6:02 AM | * 2:31 PM | 7.98 | 0.00 | 0.00 | |
| IDCard: 54 | | | Employee Totals: | 79.07 | 0.00 | 0.00 | 79.07 |

Employee: Nguyen, Xuan Hoa-Lam

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| WED | 4/6/2011 | 7:35 AM | 4:44 PM | 8.65 | 0.00 | 0.00 | |
| THU | 4/7/2011 | 7:26 AM | 4:27 PM | 8.52 | 0.00 | 0.00 | |
| FRI | 4/8/2011 | 7:18 AM | 4:31 PM | 8.72 | 0.00 | 0.00 | |
| MON | 4/11/2011 | 7:08 AM | 4:31 PM | 8.88 | 0.00 | 0.00 | |
| TUE | 4/12/2011 | 7:02 AM | 4:30 PM | 8.97 | 0.00 | 0.00 | |
| WED | 4/13/2011 | 7:40 AM | 4:29 PM | 8.32 | 0.00 | 0.00 | |
| FRI | 4/15/2011 | 7:34 AM | 4:28 PM | 8.40 | 0.00 | 0.00 | |
| MON | 4/18/2011 | 7:10 AM | 4:32 PM | 8.87 | 0.00 | 0.00 | |
| TUE | 4/19/2011 | 6:55 AM | * 4:30 PM | 9.07 | 0.00 | 0.00 | |
| IDCard: 16 | | | Employee Totals: | 78.38 | 0.00 | 0.00 | 78.38 |

Employee: Piedra Taide

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| WED | 4/6/2011 | 6:39 AM | * 3:10 PM | 8.02 | 0.00 | 0.00 | |
| THU | 4/7/2011 | 6:41 AM | * 3:36 PM | 8.42 | 0.00 | 0.00 | |
| FRI | 4/8/2011 | 6:58 AM | * 3:36 PM | 8.13 | 0.00 | 0.00 | |
| MON | 4/11/2011 | 6:39 AM | * 3:32 PM | 8.38 | 0.00 | 0.00 | |
| TUE | 4/12/2011 | 7:01 AM | 4:28 PM | 8.95 | 0.00 | 0.00 | |
| WED | 4/13/2011 | 7:24 AM | 4:31 PM | 8.62 | 0.00 | 0.00 | |
| THU | 4/14/2011 | 7:18 AM | 3:35 PM | 7.78 | 0.00 | 0.00 | |
| FRI | 4/15/2011 | 7:05 AM | 2:30 PM | 6.92 | 0.00 | 0.00 | |
| MON | 4/18/2011 | 7:01 AM | 4:31 PM | 9.00 | 0.00 | 0.00 | |
| TUE | 4/19/2011 | 7:24 AM | 12:20 PM | 4.93 | 0.00 | 0.00 | |
| IDCard: 0045 | | | Employee Totals: | 79.15 | 0.00 | 0.00 | 79.15 |

Employee: Ramirez, Margarita

| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| WED | 4/6/2011 | 7:41 AM | * 3:00 PM vk | 6.82 | 0.00 | 0.00 | |
| THU | 4/7/2011 | 7:40 AM | 4:30 PM | 8.33 | 0.00 | 0.00 | |
| FRI | 4/8/2011 | 7:39 AM | 3:00 PM vk | 6.85 | 0.00 | 0.00 | |
| MON | 4/11/2011 | 9:21 AM | 4:31 PM | 6.67 | 0.00 | 0.00 | |

Printed In: BOOK

Page 6

**28 – A**
**Team Go Figure**
Report Of Hours Worked - All Departments
Report from 4/6/2011 to 4/19/2011 - Worked Hours
All Employees

| | | | | | Date: | 4/20/2011 |
|---|---|---|---|---|---|---|
| | | | | | Time: | 9:23:13 AM |

* = Added from Employee Attendance
• = Added Punch
* = Edited Punch
* = Late Arrival



| Day | Date | In | Out | Reg | OT | DT | |
|---|---|---|---|---|---|---|---|
| TUE | 4/12/2011 | 5:20 AM | 7:21 AM | 2.02 | 0.00 | 0.00 | |
| TUE | 4/12/2011 | 7:44 AM | 4:28 PM | 8.23 | 0.00 | 0.00 | 10.25 |
| WED | 4/13/2011 | 5:46 AM | 4:31 PM | 10.25 | 0.00 | 0.00 | |
| THU | 4/14/2011 | 7:39 AM | 3:00 PM ML | 6.85 | 0.00 | 0.00 | |
| FRI | 4/15/2011 | 7:38 AM | 4:31 PM | 8.38 | 0.00 | 0.00 | |
| MON | 4/18/2011 | 5:01 AM | 7:17 AM | 2.27 | 0.00 | 0.00 | |
| MON | 4/18/2011 | 7:39 AM | 3:01 PM ? | 6.87 | 0.00 | 0.00 | 9.13 |
| TUE | 4/19/2011 | 7:39 AM | 1:10 PM ? | 5.02 | 0.00 | 0.00 | |
| IDCard: 23 | | | Employee Totals: | 78.55 | 0.00 | 0.00 | 78.55 |

Employee: Saracho P Rona

| WED | 4/6/2011 | 7:48 AM | 1:06 PM ML | 4.80 | 0.00 | 0.00 |
|---|---|---|---|---|---|---|
| THU | 4/7/2011 | 7:07 AM | 3:31 PM | 7.90 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 7:06 AM | 3:35 PM | 7.98 | 0.00 | 0.00 |
| MON | 4/11/2011 | 7:57 AM | 3:32 PM | 7.08 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 7:27 AM | 3:30 PM | 7.55 | 0.00 | 0.00 |
| THU | 4/14/2011 | 7:08 AM | 3:36 PM | 7.97 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 7:04 AM | 2:32 PM | 6.97 | 0.00 | 0.00 |
| MON | 4/18/2011 | 7:02 AM | 4:31 PM | 8.98 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 7:06 AM | 12:20 PM | 4.73 | 0.00 | 0.00 |
| IDCard: 73 | | | Employee Totals: | 63.97 | 0.00 | 0.00 |

Employee: Silva, Dora M

| WED | 4/6/2011 | 7:01 AM | | | | |
|---|---|---|---|---|---|---|

Employee: Tran, Anh

| WED | 4/6/2011 | 7:55 AM | 4:29 PM | 8.07 | 0.00 | 0.00 |
|---|---|---|---|---|---|---|
| THU | 4/7/2011 | 8:01 AM | 4:29 PM | 7.92 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 7:47 AM | 4:31 PM | 8.23 | 0.00 | 0.00 |
| MON | 4/11/2011 | 8:07 AM | 4:30 PM | 7.88 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 8:12 AM | 4:29 PM | 7.78 | 0.00 | 0.00 |
| WED | 4/13/2011 | 8:01 AM | 4:13 PM | 7.70 | 0.00 | 0.00 |
| THU | 4/14/2011 | 7:48 AM | 4:30 PM | 8.20 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 7:50 AM | 4:30 PM | 8.17 | 0.00 | 0.00 |
| MON | 4/18/2011 | 8:06 AM | 4:30 PM | 7.90 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 7:52 AM | 4:30 PM | 8.13 | 0.00 | 0.00 |
| IDCard: 26 | | | Employee Totals: | 80.03 | 0.00 | 0.00 |

Employee: Tran, Hoa

| WED | 4/6/2011 | 7:39 AM | 4:31 PM | 8.37 | 0.00 | 0.00 |
|---|---|---|---|---|---|---|
| THU | 4/7/2011 | 7:38 AM | 4:28 PM | 8.33 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 7:44 AM | 4:31 PM | 8.28 | 0.00 | 0.00 |
| MON | 4/11/2011 | 7:37 AM | 4:30 PM | 8.38 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 7:36 AM | 4:29 PM | 8.38 | 0.00 | 0.00 |
| WED | 4/13/2011 | 7:37 AM | 4:29 PM | 8.37 | 0.00 | 0.00 |
| THU | 4/14/2011 | 7:42 AM | 4:30 PM | 8.30 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 7:36 AM | 4:28 PM | 8.37 | 0.00 | 0.00 |
| MON | 4/18/2011 | 7:42 AM | 4:32 PM | 8.33 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 7:38 AM | 12:45 PM | 4.62 | 0.00 | 0.00 |
| IDCard: 27 | | | Employee Totals: | 79.73 | 0.00 | 0.00 |

Plaintiffs' Brief In Opposition Appendix 142

29 - A
**Team Go Figure**
Report Of Hours Worked - All Departments
Report from 4/6/2011 to 4/19/2011 - Worked Hours
All Employees

| Date | 4/20/2011 |
|---|---|
| Time | 9:23:52 AM |

- Added from Employee Attendance
- Added Punch
- Edited Punch
- Late Arrive

| Day | Date | In | Out | Regular | OT | DT |
|---|---|---|---|---|---|---|
| **Employee: Tran, Noi** | | | | | | |
| WED | 4/6/2011 | 8:05 AM | 4:30 PM | 7.92 | 0.00 | 0.00 |
| THU | 4/7/2011 | 8:10 AM | 4:28 PM | 7.80 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 7:52 AM | 4:31 PM | 8.15 | 0.00 | 0.00 |
| MON | 4/11/2011 | 7:46 AM | 4:30 PM | 8.23 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 7:47 AM | 4:30 PM | 8.22 | 0.00 | 0.00 |
| WED | 4/13/2011 | 7:48 AM | 4:30 PM | 8.20 | 0.00 | 0.00 |
| THU | 4/14/2011 | 7:45 AM | 4:28 PM | 8.22 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 8:03 AM | 4:29 PM | 7.93 | 0.00 | 0.00 |
| MON | 4/18/2011 | 8:14 AM | 4:31 PM | 7.78 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 7:57 AM | 4:31 PM | 8.07 | 0.00 | 0.00 |
| IDCard: 28 | | | Employee Totals: | 80.52 | 0.00 | 0.00 |
| **Employee: Tran, Yen** | | | | | | |
| WED | 4/6/2011 | 8:27 AM | 4:36 PM | 7.65 | 0.00 | 0.00 |
| THU | 4/7/2011 | 8:17 AM | 10:30 AM | 2.22 | 0.00 | 0.00 |
| THU | 4/7/2011 | 11:31 AM | 4:30 PM | 4.98 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 8:20 AM | 4:32 PM | 7.70 | 0.00 | 0.00 |
| MON | 4/11/2011 | 8:52 AM | 4:31 PM | 7.15 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 8:29 AM | 4:32 PM | 7.55 | 0.00 | 0.00 |
| WED | 4/13/2011 | 8:15 AM | 4:31 PM | 7.77 | 0.00 | 0.00 |
| THU | 4/14/2011 | 9:00 AM | 4:30 PM | 7.00 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 8:37 AM | 4:30 PM | 7.38 | 0.00 | 0.00 |
| MON | 4/18/2011 | 8:20 AM | 1:02 PM | 4.70 | 0.00 | 0.00 |
| MON | 4/18/2011 | 1:32 PM | 4:32 PM | 3.00 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 8:16 AM | 4:30 PM | 7.73 | 0.00 | 0.00 |
| IDCard: 29 | | | Employee Totals: | 74.83 | 0.00 | 0.00 |
| **Employee: Uong, Hue L** | | | | | | |
| WED | 4/6/2011 | 7:30 AM | 4:32 PM | 8.53 | 0.00 | 0.00 |
| THU | 4/7/2011 | 7:14 AM | 1:09 PM | 5.42 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 7:41 AM | 3:21 PM | 7.17 | 0.00 | 0.00 |
| MON | 4/11/2011 | 7:35 AM | 4:31 PM | 8.43 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 7:39 AM | 4:31 PM | 8.37 | 0.00 | 0.00 |
| WED | 4/13/2011 | 7:29 AM | 4:29 PM | 8.50 | 0.00 | 0.00 |
| THU | 4/14/2011 | 7:43 AM | 4:30 PM | 8.28 | 0.00 | 0.00 |
| FRI | 4/15/2011 | 7:27 AM | 4:29 PM | 8.53 | 0.00 | 0.00 |
| MON | 4/18/2011 | 7:18 AM | 4:31 PM | 8.72 | 0.00 | 0.00 |
| TUE | 4/19/2011 | 7:07 AM | 3:50 PM | 8.22 | 0.00 | 0.00 |
| IDCard: 66 | | | Employee Totals: | 80.17 | 0.00 | 0.00 |
| **Employee: Varela, Ana** | | | | | | |
| WED | 4/6/2011 | 7:55 AM | 4:31 PM | 8.10 | 0.00 | 0.00 |
| THU | 4/7/2011 | 7:55 AM | 4:30 PM | 8.08 | 0.00 | 0.00 |
| FRI | 4/8/2011 | 7:52 AM | 4:30 PM | 8.13 | 0.00 | 0.00 |
| MON | 4/11/2011 | 7:59 AM | 4:31 PM | 8.03 | 0.00 | 0.00 |
| TUE | 4/12/2011 | 7:57 AM | 4:30 PM | 8.05 | 0.00 | 0.00 |
| WED | 4/13/2011 | 7:55 AM | 4:31 PM | 8.10 | 0.00 | 0.00 |
| THU | 4/14/2011 | 7:53 AM | 4:30 PM | 8.12 | 0.00 | 0.00 |

Plaintiffs' Brief In Opposition Appendix 143

**30 – A**
**Team Go Figure**
Report Of Hours Worked - All Departments
Report from 4/6/2011 to 4/19/2011 - Worked Hours
All Employees

| | | | | | | Date: | 4/20/2011 |
| | | | | | | Time: | 9:24:30 AM |

* = Added from Employee Attendance
& = Added Punch
* = Edited Punch
# = Late Arrival

| Day | Date | In | Out | Reg | OT | DT | |
|-----|------|-----|------|------|------|------|---|
| FRI | 4/15/2011 | 8:00 AM | 4:30 PM | 8.00 | 0.00 | 0.00 | |
| MON | 4/18/2011 | 7:58 AM | 4:30 PM | 8.03 | 0.00 | 0.00 | |
| TUE | 4/19/2011 | 7:50 AM | 3:43 PM | 7.38 | 0.00 | 0.00 | |
| IDCard: 31 | | Employee Totals: | | 80.03 | 0.00 | 0.00 | 80.03 |
| | | Totals: | 2176.93 | 0.00 | 0.00 | |

Plaintiffs' Brief In Opposition Appendix 144

6380
72-A     7994-3 C94O6
UI Support & Customer Service
TEXAS WORKFORCE COMMISSION
BOX 901010
FORT WORTH TX 76101-2010



## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
### Date Mailed:   May 31, 2011

KATHLEEN M CRAIG
2505 DILLON DR
GARLAND TX 75040-8843

Social Security Number: XXX-XX-1058
Employer:  TEAM GO FIGURE INC
As:
Employer Account No.:  07-386349-0
All dates are shown in
month-day-year order.

| Decision |
| --- |

**Issue:** Quit-Job Abandonment-Disqualified
**Decision:** We cannot pay you benefits during this period of unemployment.
**Reason for Decision:** Our investigation found you abandoned your last work by walking off the job and/or failing to report for work while work was still available for you. Your reason for quitting was not good cause connected with the work.
**Beginning Date of No Payment Period:** 04-17-11
If you return to employment after the beginning date of the "No Payment Period" decision, you may be able to receive unemployment benefits if you provide evidence to TWC that:
(a) you worked at least 30 hours a week for 6 weeks OR earned wages equal to 6 times your weekly benefit amount AND
(b) the reason you are unemployed from your last work is considered to be for qualifying reasons.
**Law Reference:** Section 207.045 of the Texas Unemployment Compensation Act.

| Determination of Potential Chargeback for the Employer |
| --- |

| If You Disagree with this Decision |
| --- |

If you disagree with this decision, you may appeal. Fax or have any appeal you may file postmarked on or before
06-14-11            . TWC will use the date we receive the fax to determine whether your appeal is timely. If you file your appeal by fax, you should retain your fax confirmation as proof of transmission.   Please include a copy of this notice with Appeals correspondence. The Appeal must be in writing to this address:

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
FAX (512) 475-1135

| Case No.:  8 |
| --- |
| Claim ID:   EX8001 |
| Claim Date:   04-17-11 |
| FOR HEARING IMPAIRED CLIENTS |
| Relay Texas TDD No.:     1-800-735-2989 |
| Voice No.:     1-800-735-2988 |

Please see reverse for how to file an appeal.
8D500E 02/27/2007

Plaintiffs' Brief In Opposition Appendix 145

**33 – A**

## What You Should Know about Filing an Appeal

You may appeal this decision by mailing or faxing a signed letter to the TWC Appeals Department at the address or fax number on the front of this form. File your appeal within 14 calendar days of the date that we mailed you this decision. You must file your appeal by the deadline date on the front of this form.*

▶ If you mail your appeal, the letter must have a postmark that is on or before the deadline date.

▶ If you fax your appeal, we must receive the fax on or before the deadline date. If you want to fax your appeal but do not have access to a fax machine, you may use the fax machines at a Workforce Center in Texas or other states. Print and keep the confirmation page that shows we received the fax.

Make sure your appeal includes:

▶ your name and Social Security number (SSN)

▶ your current address

▶ the date TWC mailed you the decision

> Use this link to help prepare for your hearing:
> **www.twc.state.tx.us/ui/appl/claimants_intro.html**
> If you don't have Internet access, use the computers at your library or Workforce Center.

Your appeal leads to a telephone hearing with the Appeal Tribunal. Your employer may be able to file an appeal on your claim. Both of you may participate in the hearing. We will mail you a hearing notice packet with the date and time of your appeal hearing and instructions on submitting any additional documents you may wish to present at the hearing. You should mail or fax copies of the additional documents to your employer and TWC as soon as possible after receiving the hearing notice.

▶ It is important that you participate in the hearing because the hearing officer makes the decision on your appeal based entirely on evidence given at the hearing. If you cannot participate in the hearing at the scheduled time, call the hearing officer promptly at the number listed on the hearing notice.

▶ The Appeal Tribunal hearing consists of oral statements given under oath. Most parties participate without representation. However, you may have someone with you in the hearing to represent you. TWC does not provide the parties with representation.

▶ You may call witnesses. If you or your witnesses do not speak English, write on the appeal that you need an interpreter and for which language. If you or your witnesses need other special services, such as services for hearing-impaired participants, or access to a telephone, tell us that, too.

▶ We mail you the Appeal Tribunal's decision. If you disagree with the decision, you may appeal to the next level of review, the three-member Commission. The Commission decides your case after reviewing the Appeal Tribunal decision and listening to the recorded hearing.

▶ If you disagree with the Commission decision, you may file a Motion for Rehearing within 14 calendar days of the decision. The Commission will grant the motion if you can show:

   a. important new information;

   b. Why you think the information could change the decision; and

   c. A compelling reason why you didn't present the information earlier.

> You must continue to request payments every two weeks while you appeal, unless you return to full-time work. TWC can pay you only for weeks in which you request payment and meet all other requirements.

▶ You may appeal to a civil court between 15 and 28 days after the date TWC mailed you the decision. Before appealing to a civil court, you must complete all the appeals through TWC, except the Motion for Rehearing.

* IMPORTANT: If you miss the deadline date on this form, explain in detail on the appeal why you filed your appeal late. If TWC decides not to hear the case because your appeal was late, we will mail you a decision. You can appeal that decision.

BD300F 02/27/2007

34 – A



# Exhibit "G"

Page 1

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
2                     DALLAS DIVISION

3     TONI MILLER, SUSAN          §
      ELLIOT, ARIEL KLEINSMITH    §
4     AND ANTWAN LEE,             §
                                  §
5          Plaintiffs             §
                                  §
6     VS.                         §   CIVIL ACTION NO.
                                  §   3:13-cv-1509
7     TEAM GO FIGURE, L.L.P.,     §
      AND TEAM GO FIGURE AND      §
8     SCOTT ESKRIDGE,             §
                                  §
9          Defendants             §
      --------------------------------------------------
10                 ORAL DEPOSITION OF
                   TONI RAE MILLER
11                  Volume 1 of 2
                   January 15, 2014
12    --------------------------------------------------

13          ORAL DEPOSITION OF TONI RAE MILLER, produced

14    as a witness at the instance of the Defendants, and duly

15    sworn, was taken in the above-styled and -numbered cause

16    on January 15, 2014, from 9:45 AM to 3:52 PM, before

17    Gaylord A. Sturgess, CSR No. 744, in and for the State

18    of Texas, reported by Stenographic method, at the

19    offices of BRACKETT & ELLIS, PC, 100 Main Street, Fort

20    Worth, Texas  76102, pursuant to the Federal Rules of

21    Civil Procedure and the provisions stated on the record.

22

23

24    Job No. 18228.as

25

Merit Court Reporters LLC
depos@merittexas.com
Phone: 817-336-3042                              Fax: 817-335-1203

Page 2

```
  1                  A P P E A R A N C E S

  2      FOR THE PLAINTIFFS:

  3          James Moulton
             SMITH, SMITH & SMITH, LLP
  4          939 Highway 80 East, Suite 486
             Mesquite, Texas   75150
  5          972.698.0999

  6
         FOR THE DEFENDANTS:
  7
             Claudine G. Jackson
  8          BRACKETT & ELLIS, PC
             100 Main Street
  9          Fort Worth, Texas,   76102
             817.338.1700
 10          cjackson@belaw.com

 11

 12      ALSO PRESENT:

 13
             Susan Elliott
 14          Scott Eskridge

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24

 25
```

Plaintiffs' Brief In Opposition Appendix 150

Page 3

1                        INDEX

2

3     Appearances  ................................. 2

4

      Agreements  .................................. 4

5

6

7  TONI RAE MILLER

8        EXAMINATION BY MS. JACKSON.................... 4

9

      Signature and Changes  .........................227

10

11    Reporter's Certificate  .......................229

12                        EXHIBITS

13
   NO.   DESCRIPTION                              PAGE

14
   21    Plaintiff Toni Miller's Objections, Answers
15         and Responses to Defendant's First Set of
          Interrogatories and Requests For Production.... 41
16   22    Team Go Figure, Inc., Personnel Policy........ 56
     23    Handwritten List of Salespeople Hired in
17         November 2010................................103

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2                    THE REPORTER:  Ms. Miller, would you

3    raise your right hand, please, and be sworn.

4                    Do you solemnly swear, or affirm, the

5    testimony you shall give in this case will be the

6    truth, the whole truth, and nothing but the truth, so

7    help you God?

8                    THE WITNESS:  I do.

9                    THE REPORTER:  Thank you.

10                   TONI RAE MILLER,

11   having been first duly sworn, testified as follows:

12                   EXAMINATION

13   BY MS. JACKSON:

14        Q.    Good morning, Ms. Miller.  My name is

15   Claudine Jackson, and you and I have met before; is

16   that correct?

17        A.    That is correct.

18        Q.    And would you please state your full legal

19   name for the record.

20        A.    Toni Rae Miller.

21        Q.    Have you gone by other -- any other names?

22        A.    My maiden name, Toni Turner.

23        Q.    Okay.  Any others?

24        A.    And then I was married before; Toni

25   Bartlett.

Job No. 18228
Toni Miller Vol. 1
January 15, 2014
Case 3:Miller-01609-OFigDecument 43-1   Filed 03/14/14   Page 156 of 200   PageID 2279

Page 55

1           MR. MOULTON:   In the Penny Durrett

2    case.

3    BY MS. JACKSON:

4           Q.   Okay.  And I take it your -- your contact

5    information was provided, and then Mr. Moulton touched

6    base with you about the Penny Durrett case?

7           A.   Yes, that is -- that's -- that's right.

8    Okay.  I do -- I do remember now.  Because I received

9    a phone call and -- asking if I still worked at Team

10   Go Figure, and I said I did not.  And that was how we

11   got in contact.

12          Q.   Okay.  Let me -- let me -- I'm kind of

13   jumping around a little bit.

14               Let's -- let's go back to the beginning

15   of your employment with Team Go Figure, okay?

16          A.   Okay.

17          Q.   And you have indicated that you believe you

18   started somewhere around the 26th, 25th, or 27th of

19   April; is that correct?

20          A.   Yes.  I believe it's when I received my

21   first paycheck.

22          Q.   And at the time that you started your

23   employment with Team Go Figure, did you receive a

24   handbook and sign off on it?

25          A.   I -- I don't know.  I don't remember.

Page 77

1    Figure --

2         A.   Yes.

3         Q.   -- and the customer service department was

4    generally responsible for one of the five or six

5    bathrooms, is that correct?

6         A.   The one in the front, yes, ma'am.

7         Q.   Okay.  And --

8         A.   He specifically assigned that to Susan and I

9    to make sure that it was clean and kept up with.

10        Q.   Okay.  And you were the sales manager in the

11   front office, correct?

12        A.   Yes.

13        Q.   And Susan was the -- at least according to

14   her emails, the accountant, slash, HR person for Team

15   Go Figure in -- also located in the front office?

16        A.   She was the bookkeeper; yes.

17        Q.   Okay.  And y'all were -- were asked to just

18   make sure that the bathroom was kept clean, right?

19        A.   We were asked to clean the bathroom and make

20   sure that it was clean, yes.

21        Q.   Okay.  And did y'all ever assign that task

22   to anyone?

23        A.   No, we did not, because it was assigned to

24   us by Scott.

25        Q.   Okay.  And so, it is your testimony that

Case 3:13-cv-01509-O   Document 43-1   Filed 03/14/14   Page 158 of 200   PageID 2291

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF TEXAS

 3                        DALLAS DIVISION

    TONI MILLER, SUSAN         §
 4  ELLIOT, ARIEL KLEINSMITH   §
    AND ANTWAN LEE,            §
 5                             §
              Plaintiffs       §
 6                             §
    VS.                        §   CIVIL ACTION NO.
 7                             §   3:13-cv-1509
    TEAM GO FIGURE, L.L.P.,    §
 8  AND TEAM GO FIGURE AND     §
    SCOTT ESKRIDGE,            §
 9                             §
              Defendants       §
10

11  ----------------------------------------------------

12                   REPORTER'S CERTIFICATION

        DEPOSITION OF TONI RAE MILLER

13                      Volume 1 of 2

                    January 15, 2014

14

15  ----------------------------------------------------

16  STATE OF TEXAS )

17          I, Gaylord A. Sturgess, a Certified

18  Shorthand Reporter in and for the State of Texas, do

19  hereby certify that, pursuant to the agreement

20  hereinbefore set forth, there came before me TONI RAE

21  MILLER, who was by me duly sworn to testify the truth,

22  the whole truth, and nothing but the truth of said

23  witness's knowledge concerning the matters in

24  controversy in this cause; and the said witness was

25  thereupon carefully examined upon said oath, and said
```

Job No. 18228

Toni Miller Vol. 1
January 15, 2014

Miller v. Team Go Figure

Case 3:13-cv-01509-O   Document 43-1   Filed 03/14/14   Page 159 of 200   PageID 2282

Page 230

1   examination reduced to writing under my supervision;

2   that the deposition is a true record of the testimony

3   given by said witness, same to be sworn to and

4   subscribed by said witness before any notary public,

5   pursuant to the agreement of the parties.

6        I further certify that $ 1390.75 is the

7   deposition officer's charges to Defendants for

8   preparing the original deposition transcript and any

9   copies of exhibits.

10        I further certify that I am neither

11   counsel for nor related to any party in this cause and

12   am not financially interested in its outcome.

13        GIVEN UNDER MY HAND AND SEAL of office

14   on January 21, 2014.

15

16

17   Gaylord A. Sturgess, Texas CSR 744

18   Expiration Date:  12/31/14
Merit Court Reporters, LLC

19   307 W. 7th Street
Suite 1350 Commerce Building

20   Fort Worth, Texas  76102
817-336-3042

21   Job No. 18228.as

22

23

24

25

Plaintiffs' Brief In Opposition Appendix 156

# Exhibit "H"

Outside Sales Representatives Supervised by Month by Toni Miller

| EMPLOYEE | POSITION | 2010 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | 49 | 50 | 51 | 52 |
| **OUTSIDE SALES REPRESENTATIVES/SSA LES ASSISTANTS** | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Marie Coker | Outside Sales | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | | | | | | | | | | | | | | | | | | | |
| Penny Durrett | Outside Sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Antwan Lee | Outside Sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | x | x | x |
| April Elders | Outside Sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | x | x | x | x | x | x | x | x |
| April Luts | Outside Sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Arleti Kleinsmith | Outside Sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Jennifer Conner | Outside Sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | x | x | x | x | x | x | x | x |
| Kristen Kossack | Outside Sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | x | x | x | x | x |
| Kristina Steinhauser | Outside Sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | x | x | x | x | x |
| LaNeigh Hudson | Outside Sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Melissa Birdwell | Outside Sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | x | x | x | x | x | x | x | x |
| Michelle Holland | Outside Sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Tabotha Corker | Sales Assistant | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Christy Garcia | Outside sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Hollie Hogan (Hess) | Outside sales | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Laren Lazenby | Sales Assistant | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Total Outside Reps. | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |



EXHIBIT
K-11

C:\Users\Betsy\AppData\Roaming\OpenText\DM\Temp\DOCS-#443362-v1-2010_Employees_Supervised_by_Toni_Miller_-_by_Work_Week.XLSX

APP-0469

Plaintiffs' Brief In Opposition Appendix 158

Outside Sales Representatives Supervised by Month by Toni Miller

C:\Users\Becky\AppData\Roaming\OpenText\DM\Temp\DOCS-#443585-v1-2011_Outside_Sales_Representatives_Supervised_by_Month_by_Toni_Miller.XLSX

APP-0470

Plaintiffs' Brief In Opposition Appendix 159

Outside Sales Representatives Supervised by Month by Toni Miller

APP-0471

Plaintiffs' Brief In Opposition Appendix 160

## Outside Sales Representatives Supervised by Month by Toni Miller

| EMPLOYEE | POSITION | 2013 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| **OUTSIDE SALES REPRESENTATIVES/SALES ASSISTANTS** | | | | | | | | | | |
| Marie Coker | Outside Sales | | | | | | | | | |
| Penny Durrett | Ouside Sales | | | | | | | | | |
| Antwan Lee | Outside Sales | | | | | | | | | |
| April Elders | Outside Sales | | | | | | | | | |
| April Lutts | Outside Sales | | | | | | | x | x | x |
| Ariel Kleinsmith | Outside Sales | | | | | | | | | |
| Jennifer Conner | Outside Sales | x | x | x | x | x | x | x | x | x |
| Kirsten Kosack | Outside Sales | x | x | x | x | x | x | x | x | x |
| Kristina Steinhauser | Outside Sales | | x | x | x | x | x | x | x | x |
| LaNeigh Hudson | Outside Sales | | | | | | | | | |
| Melissa Birdwell | Outside Sales | | | | | | | | | |
| Michelle Holland | Outside Sales | | | | | | | | | |
| Tabitha Corker | Sales Assistant | | | | | | | | | |
| Christy Garcia | Outside sales | | | | | | | | | |
| Hollie Hogan (Hess) | Outside sales | | | | | | | | | |
| Laren Lazenby | Sales Assistant | | | | | | | | | |
| Total Outside Reps | | | | | | | | | | |

C:\Users\Betsy\AppData\Roaming\OpenText\DM\Temp\DOCS #443365-v1-2013_Employees_Supervised_by_Toni_Miller_-_by_Work_Week.XLSX

APP-0472

Plaintiffs' Brief In Opposition Appendix 161

Exhibit "I"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TONI MILLER, SUSAN ELLIOTT, | § | |
| ARIEL KLEINSMITH | § | |
| AND ANTWAN LEE | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-cv-1509 |
| | § | JURY |
| TEAM GO FIGURE, L.L.P., TEAM GO | § | |
| FIGURE, and SCOTT ESKRIDGE | § | |
| | § | |
| Defendants | § | |

## DECLARATION OF TONI MILLER

1.     My name is Toni Miller.  I am over the age of 21, of sound mind, have never been convicted of a felony, and am competent to make this declaration.  Every statement herein is within my personal knowledge and is true and correct.

2.     I began working for Team Go Figure on or about April 28, 2010, and was thus employed until February of 2013.

3.     Team Go Figure manufactures and sells team uniforms for scholastic dance, cheer, and drill teams.  Since the uniforms are tight, form fitting outfits, an integral and necessary part of the manufacturing process is the measuring and fitting of the students that will actually be wearing the uniforms.  The measuring and fitting of the students usually occurred at the various schools that the students were located, and after school had ended for the day.  The fittings could last anywhere from 2-4 hours and necessarily included drive time to and from the fittings and time to set up and pack up the items used to conduct the fittings.  While employed at Team Go Figure, I attended in excess of 138 fittings.

4.    Although I was employed as the sales manager, very little of my time was actually spent supervising anyone.  Kirsten Kosack and Jennifer Connor were both located in Houston, and my "supervision" of them amounted to an occasional email or phone call several times a week during the busy season.  The outside sales persons generally managed themselves as I was located in Dallas and they were located hundreds of miles away.  I only made one trip to Houston during each of the years of 2011 and 2012, and those trips were actually related to matters other than the direct supervision of Kirsten Kosack or Jennifer Connor.  During the summer months, I had no contact with the outside sales employees as schools were closed and no sales activities took place.  Even during the "busy" season, less than 5% of my time was spent "supervising" Team Go Figure's sales team.

5.    While there were occasionally inside sales persons employed by Team Go Figure, such as Ariel Kleinsmith and Antwan Lee, such persons worked from the main office and performed customer service work as well as occasional sales.  April McDougald supervised the customer service work performed by such persons, and I supervised their limited sales activities.  Such management required very little of my time, particularly during the summers, when there were no sales activities occurring, since the schools were closed.  At best, it could be said that I shared the management of the inside sales persons with April McDougald, however, the customer service aspect of such persons' jobs took the majority of their time.  Many months there were no inside sales persons employed by Team Go Figure, and when there was an inside sales person employed, there was always only one such employee.  Accordingly, for many months of my employment with Team Go Figure, I did not "supervise" two or more full time employees.

6.    Although I was given the title of Creative Director, I did not manage any other employees with regards to such position.

7.      From September 1, 2011 through October 15, 2011, and the pay periods ending on November 15, 2011, and April 16, 2012, Team Go Figure took deductions from my paycheck. Team Go Figure labeled the deductions as a "payroll advance" when in fact, no such payroll advance was ever made. Team Go Figure deducted the amounts from my paycheck for an alleged debt that Defendant Scott Eskridge claimed my husband's company owed Team Go Figure. When I complained about the deductions, I was told that if I didn't like it, I could find a job somewhere else. At no time did I ever sign any agreement authorizing the deductions or assuming any debt owed to Team Go Figure.

8.      I worked overtime hours each and every workweek that I worked at Team Go Figure. I would arrive at work at 8:00 each morning, and would leave work at 7:30 or 8:30 PM each day. I would work from home approximately 2 hours each weekday, and 10-12 hours each Saturday and Sunday. I estimate that I worked a total of 49-50 overtime hours each and every week that I worked at Team Go Figure.

9.      During the fitting season, I also attended many fittings. In 2010, to the best of my recollection at this time, I attended more than 23 fittings, working in excess of 80 total overtime hours attending said fittings. In 2011, to the best of my recollection at this time, I attended 68 fittings, working approximately 193 total overtime hours attending said 68 fittings. In 2012, to the best of my recollection at this time, I attended 47 fittings, working approximately 152.5 total overtime hours attending said 47 fittings. See the Fitting Chart attached hereto, which shows a list of the fittings for each year and the fittings that I attended. The Fitting Chart was generated by reviewing the Team Order Forms and other documents produced by Team Go Figure and calendars produced by the Plaintiffs in this suit. Had Team Go Figure not destroyed my notes and records maintained in my office at Team Go Figure, I could produce a more accurate record

of the fittings I attended and hours worked.

10.    A major part of my daily activities, if not the majority, was spent performing manual work, including fittings, deliveries, cleaning the bathroom, cleaning the kitchen, picking up Scott Eskridge's dry cleaning, and driving to and from schools to meet with existing clients.

11.    When I was hired, it was my understanding that I was expected to work at least 40 hours per week, as stated in the handbook. I was also led to believe that I would be paid a commission and/or bonus based on the work I performed.

12.    All but three or four of the employees at Team Go Figure were women and/or immigrants.

I declare that under penalty of perjury that the foregoing is true and correct.

_Toni Miller_

Toni Miller

_March 13, 2014_

Date

**FITTING CHART FOR TONI MILLER SHOWING OVERTIME HOURS WORKED**

| School | Fitting Date | OT Hours |
|---|---|---|
| Coppell ISD | 4/30/2010 Toni | 3.5 |
| Rockwall Heath High -- VAR/JV | 5/10/2010 Toni | 4 |
| Sachse High | 5/13/2010 Toni | 3 |
| Marcus High School | 5/17/2010 Toni | 4 |
| Allen High Color Guard | 5/20/2010 Toni | 4 |
| Desoto High School | 2010 Toni | 4 |
| Grapevine Varsity | 2010 Toni | 3.5 |
| Grapevine JV Belles | 2010 Toni | 6 |
| Mad Frog fittings - 23 teams | 2010 Toni | 5 |
| Mad Frog deliveries - 23 teams | 12/13/22/2010  Toni | 6 |
| Red Oak Middle School | 2010 Toni | 4 |
| GCDTA make up day | 2010 Toni | 2.5 |
| Sachse JV delivery | 2010 Toni | 2 |
| South Grand Prairie | 2010 Toni | 2 |
| Coppell delivery | 2010 Toni | 3.5 |
| McKinney Boyd High School | 2010 Toni | 2.5 |
| Allen   Hig school Color Guard | 2010 Toni | 3.5 |
| northwest high school | 2010 Toni | 3.5 |
| red oak high delivery | 2010 Toni | 3.5 |
| Canyon Ridge Ms Austin | 2010 Toni | 1 |
| Denton Ryan delivery | 2010 Toni | 3 |
| Gladewater | 2010 Toni | 4 |
| royse city delivery | 2010 Toni | 2 |
| | | 80 |
| | | |
| irving high Band | 2011 Toni | 3.5 |
| Desoto Freshman Aeires | 2011 Toni | 3 |
| McKinney Boyd High School | 2011 Toni | 5 |
| Centenial High School | 2011 Toni | 0 |
| coppell ISD | 2011 Toni | 4 |
| Creekview HS Drill | 2011 Toni | 2.5 |
| Horn HS Drill Team | 2011 Toni | 4 |
| Williams High School | 2011 Toni | 2 |
| Hays High School | 2011 Toni | 6 |
| round rock HS | 2011 Toni | 6 |
| Hutto cheer | 2011 Toni | 6 |
| Azle | 2011 Toni | 2.5 |
| red oak middle school | 2011 Toni | 3 |
| Sachse high School | 2011 Toni | 4.5 |

Plaintiffs' Brief in Opposition Appendix 167

| | | |
|---|---|---|
| Rowlett high School/JV | 2011 Toni | 3 |
| Mesquite high school | 2011 Toni | 2 |
| Rockwall Heath High JV | 2011 Toni | 3 |
| Grand Prairie HS | 2011 Toni | 2.5 |
| South Grand Praire | 2011 Toni | 1.5 |
| Frisco HS | 2011 Toni | 3.5 |
| Frisco HS | 2011 Toni | 4 |
| GCDTA | 2011 Toni | 4 |
| GCDTA | 2011 Toni | 7.5 |
| Mckinney Boyd | 2011 Toni | 2.5 |
| south oak cliff | 2011 Toni | 2 |
| Bryan Adams | 2/10/2011 Toni | 0 |
| Irving High Drill | 3/29/2011 Toni | 3.5 |
| Community Middle School | 4/5/2011 Toni | 3 |
| Cedar Hill High School | 4/6/2011 Toni | 3 |
| North Mesquite High | 4/12/2011 Toni | 3 |
| Berkner High School | 4/12/2011 Toni | 2 |
| North Mesquite High | 4/13/2011 Toni | 2.5 |
| Red Oak High | 4/13/2011   Toni | 0 |
| Plano Sr. High | 4/18/2011   Toni | 0 |
| Trinity High School | 4/19/2011 Toni | 3.5 |
| Bishop Lynch Highschool | 4/20/2011 Toni | 0 |
| Northwest High School | 4/21/2011 Toni | 3.5 |
| Mansfield High | 4/26/2011 Toni | 3 |
| Hillcrest High School | 5/2/2011   Toni | 0 |
| Rockwall Heath High | 5/10/2011 Toni | 3 |
| Colleyville Middle School | 5/18/2011 Toni | 3 |
| Allen High Color Guard | 5/24/2011   Toni | 3 |
| Irving MacArthur | 2011 Toni | 3.5 |
| irving Band | 2011 Toni | 3.5 |
| GCDTA make up | 2011 Toni | 5.5 |
| Lone Star | 2011 Toni | 4 |
| Lone Star HS | 2011 delivery   Toni | 1.5 |
| The Colony fitting | 2011 Toni | 3 |
| Canyon Ridge Ms Austin | 2011 Toni | 6 |
| Canyon Ridge Ms Austin | 2011 on way to 1 Toni | 1 |
| The Colony delivery | 2011 Toni | 3 |
| Dobie cheer | 2011   Toni | 2.5 |
| Denton Ryan | 2011 Toni | 3 |
| Denton Ryan Delivery | 2011 Toni | 3 |
| Denton Ryan delivery | 2011 Toni | 2 |
| Red Oak High School | 2011 Toni | 2 |
| Desoto Freshman Aeires | 2011 Toni | 3.5 |

| | | | |
|---|---|---|---|
| Frisco hs delivery to camp | 2011 | Toni | 2 |
| Evans middle school mckinney | 2011 | Toni | 2.5 |
| Evans middle school delivery | 2011 delivery | Toni | 2 |
| smithson valley fitting | 2011 fitting | Toni | 2 |
| Roosevelt Cheer | 2011 | Toni | 5.5 |
| Sachse Officers | 2011 | toni | 1 |
| Sachse JV delivery | 2011 | toni | 2 |
| Rowlett JV – officers | 2011 | Toni | 1.5 |
| West Mesquite JV | 2011 | Toni | 2 |
| West Mesquite V | 2011 | Toni | 2 |
| | | | 193 |
| | | | |
| fierce cheer - | 2012 | Toni | 5 |
| Rowlett high School Varsity | 2012 | Toni | 3 |
| Crowley High School | 3/19/2012 | Toni | 3 |
| Adamson High | 3/26/2012 | Toni | 1.5 |
| Lone Star High School | 2012 | Toni | 3.5 |
| Plano Sr. High School | 3/29/2012 | Toni | 3 |
| Allen High School | 4/2/2012 | Toni | 3 |
| Sachse High | 2012 | Toni | 3 |
| Samuels HS | 4/11/2012 | Toni | 1 |
| Westside | 4/17/2012 | Toni | 2 |
| Trinity Hish School | 4/18/2012 | Toni | 3 |
| Prosper High School | 4/19/2012 | Toni | 3 |
| Northwest Varsity | 4/30/2012 | Toni | 3 |
| Coppel High School | 2012 | Toni | 4 |
| Irving MacArthur High | 5/7/2012 | Toni | 3.5 |
| R.L. Turner High School | 5/11/2012 | Toni | 2 |
| Rowlett High | 5/14/2012 | Toni | 3 |
| Sachse JV | 5/29/2012 | Toni | 1.5 |
| Fierce Cheer | 9/4/2012 | Toni | 2 |
| A W Brown | 9/19/2012 | Toni | 1.5 |
| Bishop Lynch | 2012 | Toni | 3 |
| McKinney Boyd High School | 2012 | Toni | 4 |
| Liberty High School | 2012 | Toni | 3 |
| Rockwall-Heath High | 2012 | Toni | 3 |
| Dobie High School | 2012 | Toni | 8 |
| Williams MS | 2012 | Toni | 2.5 |
| irving Band/CG | 2012 | Toni | 3.5 |
| GCDTA | 2012 | Toni | 8 |
| AAA Academy Dance | 2012 | Toni | 1.5 |
| Ann Richards MS | 2012 | Toni | 1.5 |
| Hayes | 2012 | Toni | 5 |

Plaintiffs' Brief in Opposition Appendix 169

| | | |
|---|---|---|
| Caddo Mills | 2012 Toni | 2 |
| Chisolm Trail | 2012 Toni | 3 |
| Dobie JV | 2012 Toni | 8 |
| Frisco H.S. | 2012 Toni | 3.5 |
| Kaufman | 2012 Toni | 2.5 |
| Lakeridge | 2012 Toni | 5 |
| Madison Drill | 2012 Toni | 2.5 |
| Madison Twirlers | 2012 Toni | 2.5 |
| Madison Color Guard | 2012 Toni | 2.5 |
| McAdams D | 2012 Toni | 2.5 |
| McAdams MS | 2012 Toni | 2.5 |
| McBoyd JV | 2012 Toni | 4 |
| McBoyd V | 2012 Toni | 4 |
| MVMS Dance | 2012 Toni | 5 |
| N. Crowley | 2012 Toni | 3 |
| Williams | 2012 Toni | 2.5 |
| | | 152.5 |

**Exhibit "J"**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TONI MILLER, SUSAN ELLIOTT,<br>ARIEL KLEINSMITH<br>AND ANTWAN LEE | §<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 3:13-cv-1509<br>JURY |
| TEAM GO FIGURE, L.L.P., TEAM GO<br>FIGURE, and SCOTT ESKRIDGE | §<br>§<br>§ | |
| Defendants | §<br>§ | |

### DECLARATION OF SUSAN ELLIOTT

1.     My name is Susan Elliott. I am over the age of 21, of sound mind, have never been convicted of a felony, and am competent to make this declaration. Every statement herein is within my personal knowledge and is true and correct.

2.     Prior to being hired by Team Go Figure, I was employed as a bookkeeper by The Jet Center of Dallas, LLC (hereinafter referred to as "The Jet Center"). While working for The Jet Center, I was paid on a salary basis, and was not paid overtime wages. I have personal knowledge that Barbara Lynch eventually filled the same position that I held at The Jet Center of Dallas, and performed the same duties that I had performed at the Jet Center of Dallas.

3.     I was hired by Team Go Figure on August 26, 2011 as a bookkeeper, performing the same duties that I had performed at The Jet Center. The Team Go Figure job posting that I responded to listed the job position as being an hourly position. The job posting, which included a list of job duties, is attached hereto.

4.     From August 26, 2011, through January 31, 2012, while working for Team Go Figure,

I was paid hourly wages, and did in fact receive some overtime pay. However, such overtime payments were insufficient to compensate me for all overtime hours worked. Shortly after beginning my employment, I was given the capability of logging into Team Go Figure's computer network from home, and I was encouraged to perform work from my house. When I attempted to get paid for work performed at home, I was told by Scott Eskridge that I was "nickel and diming him to death", and that whatever I needed to do to get the tasks assigned to me done was fine with him, but that he would not pay me overtime wages for work performed from my house. However, he made it very clear that he expected me to work from my house and would often text me and call me at my house, requesting certain numbers and reports.

5.    On January 31, 2012, I was switched to a salary. The switch from hourly pay to salary was made with no corresponding change in my job duties, position, or authority, and occurred just before the fitting season, when I would be required to work even more hours than normal. From January 31, 2012, until I quit my employment with Defendants on March 4, 2013, I was not paid for any overtime hours.

6.    As bookkeeper, I performed the same duties for Team Go Figure that I performed for The Jet Center. I input data for accounts receivable and accounts payable into the financial software program and reconciled the accounts. I entered invoices into the accounting software, and paid invoices as they became due. I merely input the payroll data into Quickbooks, and did not review the data for accuracy, prepare the formulas, and except for the formulaic calculation of commission pay, I did not calculate the figures. I distributed mail, and ordered office supplies. I took minutes at meetings, cleaned the front bathroom, and was required to attend fittings and deliveries. While I did occasionally make determinations as to vacation pay and whether or not to ship an item without a purchase order, such determinations were based on established company policies and practices.

The vast majority of my time, at least 90%, involved routine bookkeeping tasks such as data entry, matching invoices to orders, and filing.

7.   Around March of 2012, a former employee sued Team Go Figure and Scott Eskridge for sexual harassment. At that time, Scott Eskridge decided that based on the Plaintiff's counsel's allegations, the handbook needed to be changed. He asked that I find some language regarding the Family Medical Leave Act and present the language to him for inclusion in the handbook. I found some language on the internet and gave it to Scott Eskridge, however, that was the extent of my involvement in any changes to the handbook. I do not have any training in human resources and even when I requested training, Scott Eskridge said it wasn't necessary. At no time did human resource issues ever take more than 1% of my time, and it was never a primary duty for me.

8.   I worked overtime each and every workweek that I worked at Defendant Team Go Figure. I would arrive at work at 8:30 each morning, and would leave work at 6:30 PM. I would work from home approximately 3 hours each weekday. For the first 4-5 weeks, I worked 12-14 hours each Saturday and Sunday. After the first 4-5 weeks, I would work 8-10 hours total during the weekend. I estimate that I worked a total of 50-52 overtime hours each week for the first 4-5 weeks of employment, totaling a total of between 200 and 250 hours of overtime during the first 4-5 weeks that I worked at Team Go Figure. After the initial 4-5 week, I worked 30-35 hours of overtime hours each week that I worked at Team Go Figure.

9.   During the fitting season, I attended many fittings in addition to my usual book keeper duties. In 2012, to the best of my recollection at this time, I attended 36 fittings, working approximately 177 total overtime hours attending said 36 fittings. See the Fitting Chart attached hereto, which shows a list of the fittings for each year and the fittings that I attended. The Fitting Chart was generated by reviewing the Team Order Forms and other documents produced by Team

Go Figure and calendars produced by the Plaintiffs in this suit.

10.     My hours did not fluctuate below 40 hours per week, and there was never an agreement that I was working based on a fluctuating workweek schedule. I understood, and it was stated in the company handbook, that I was required to work a minimum of 40 hours per week, and if I did take a personal day off during the week, I was expected to make those hours up. I personally know, having worked as the book keeper for Team Go Figure, that Antwan Lee's pay fluctuated week to week, depending on the hours he worked, despite the fact that he was told he was being paid a salary.

11.     While employed by Team Go Figure, I was instructed to reduce the hours of hourly employees so that they would not be paid overtime hours if the hours were not authorized. When I told Mr. Eskridge that Team Go Figure's employee pay policies were illegal, his response was, "You don't see me in jail, do you?"

12.     Team Go Figure had a policy of automatically deducting 30 minutes from all hourly employee's time cards on a daily basis. The 30 minute deduction was for a lunch break, however, many employees, including myself, often worked through lunch.

13.     At all times that I worked at Team Go Figure, Team Go Figure employed more than two persons, and had annual sales in excess of $500,000.

I declare that under penalty of perjury that the foregoing is true and correct.

Susan Elliott

3/10/14
Date

**FITTING CHART FOR SUSAN ELLIOTT SHOWING OVERTIME HOURS WORKED**

| School | Fitting Date | Time | | OT Hours |
|---|---|---|---|---|
| IHS Toy Tigers | 3/22/2012 | 3:30 PM | Susan | 3.25 |
| Plano Sr. High School | 3/29/2012 | 5:30 PM | Susan | 5.25 |
| Allen High School | 4/2/2012 | 6:00 PM | Susan | 5.75 |
| Sachse High | 2012 | 6:00 PM | Susan | 5.75 |
| Prosper Drill | 4/3/2012 | 5:30 PM | Susan | 5.25 |
| Mesquite High School | 4/5/2012 | 4:30 PM | Susan | 4.25 |
| Red Oak Varsity | 4/18/2012 | 4:30 PM | Susan | 4.25 |
| Prosper High School | 4/19/2012 | | Susan | 5.25 |
| Red Oak High School | 2012 | 4:30 PM | Susan | 4.25 |
| Red Oak JR | 4/25/2012 | 6:30 PM | Susan | 6.25 |
| Northwest Varsity | 4/30/2012 | 4:00 pm fitting | Susan | 3.75 |
| Mansfield High School | 5/1/2012 | 6:00 PM | Susan | 5.75 |
| Centennial High School | 5/3/2012 | 16:30 | Susan | 4.25 |
| Coppel High School | 2012 | 17:00 | Susan | 4.75 |
| Irving MacArthur High | 5/7/2012 | 6:00 PM | Susan | 5.75 |
| Grapevine Middle School | 5/9/2012 | 5:00 PM | Susan | 4.75 |
| R.L. Turner High School | 5/11/2012 | | Susan | 5.25 |
| Grand Prairie High | 5/22/2012 | 2:30 PM | Susan | 2.25 |
| Sachse JV | 5/29/2012 | 4:30 PM | Susan | 4.25 |
| Arlington Lamar Highschool | 2012 | | Susan | 5.25 |
| Liberty High School | 2012 | | Susan | 5.25 |
| North Forney High School | 2012 | | Susan | 5.25 |
| Rockwall-Heath High | 2012 | | Susan | 5.25 |
| irving Band/CG | 2012 | 4 pm start | Susan | 3.75 |
| Northwest Varsity | 2012 | 5:00 pm delivery | Susan | 4.75 |
| Cleburne | 2012 | | susan | 3.75 |
| Frisco H.S. | 2012 | 6pm fitting | Susan | 5.75 |
| Kaufman | 2012 | | Susan | 5.25 |
| Lakeridge | 2012 | 6pm delivery | Susan | 5.75 |
| McBoyd JV | 2012 | | Susan | 5.25 |
| McBoyd V | 2012 | | Susan | 5.25 |
| N. Mesquite JV | 2012 | | Susan | 5.25 |
| N. Mesquite V | 2012 | | Susan | 5.25 |
| Prosper | 2012 | | Susan | 5.25 |
| South Oak Cliff | 2012 | | Susan | 5.25 |
| Royce City | 2012 | | Susan | 5.25 |

177

# Exhibit "K"

Case 3:13-cv-01509-O   Document 43-1   Filed 03/14/14   Page 181 of 200   PageID 2304
Job No. 18229
Miller, et al v. Team Go Figure, et al
Susan Elliott
January 16, 2014

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
 2                        DALLAS DIVISION

 3   TONI MILLER, SUSAN ELLIOT,    )
     ARIEL KLEINSMITH AND          )
 4   ANTWAN LEE,                   )
                                   )
 5                 Plaintiffs,     )  CIVIL ACTION
                                   )
 6   VS.                           )  NO.: 3:13-cv-1509
                                   )
 7   TEAM GO FIGURE, L.L.P.,       )
     TEAM GO FIGURE AND SCOTT      )
 8   ESKRIDGE,                     )
                                   )
 9                 Defendants.     )

10          ------------------------------------

11                  ORAL DEPOSITION OF

12                    SUSAN ELLIOTT

13                   JANUARY 16, 2014

14          ------------------------------------

15          ORAL DEPOSITION OF SUSAN ELLIOTT, produced as a

16   witness at the instance of the Defendants, and duly

17   sworn, was taken in the above-styled and numbered cause

18   on January 16, 2014, from 1:19 p.m. to 6:00 p.m., before

19   Julie G. Davault, CSR in and for the State of Texas,

20   reported by machine shorthand, at the Law Offices of

21   Brackett & Ellis, P.C., 100 Main Street, Fort Worth,

22   Texas, pursuant to the Federal Rules of Civil Procedure

23   and the provisions stated on the record or attached

24   hereto.

25   Job No. 18229
```

ORIGINAL

Plaintiffs' Brief In Opposition Appendix 178

Job No. 18229
Miller, et al v. Team Go Figure, et al

Susan Elliott
January 30, 2014

Page 2

1                        A P P E A R A N C E S

2

     FOR THE PLAINTIFFS:
3

         James Moulton, Esq.
4        939 Highway 80 East
         Suite 486
5        Mesquite, Texas 75150
         (903) 780-2540
6        jim.moulton@gmail.com

7    FOR THE DEFENDANTS:

8        Claudine Jackson, Esq.
         BRACKETT & ELLIS, P.C.
9        100 Main Street
         Fort Worth, Texas 76102
10       (817) 338-1700
         cjackson@belaw.com

11

12   ALSO PRESENT:   Toni Miller and Scott Eskridge

13

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiffs' Brief In Opposition Appendix 179

Job No. 18229
Miller, et al v. Team Go Figure, et al

Susan Elliott
January 10, 2014

Page 3

1                              INDEX

2                                                           PAGE

3     Appearances.........................................  2

4     Stipulations........................................  5

5     SUSAN ELLIOTT
             Examination by Ms. Jackson.....................5

6

      Signature and Changes.............................172

7

      Reporter's Certificate............................174

8

9

                              EXHIBITS

10

      NO.    DESCRIPTION                            PAGE
11    70     Elliott's Objections, Answers and
             Responses to Interrogs.                  72
12    71     Eskridge's 3-6-13 email to Martin      138
             72   Payroll Summary                    111
13    73     pay breakdown of Berumen               111
      74     Acknowledgement                        125
14    75     handwritten notes, Plfs. 221-223       125
      76     handwritten notes, Plfs. 186-197       128
15    77     texts, Plfs. 124-144                   131
      78     Elliott's 2-11-13 email to herself     142
16    79     Elliott's 9-26-12 email to April       143
      80     Elliott's 6-29-12 email to April       144
17    81     Elliott's 5-31-12 email to April       146
      82     Elliott's 5-17-12 email to Tabitha     146
18    83     Lloret's 3-8-12 email to Elliott       148
      84     Lloret's 3-5-12 email to Elliott       149
19    85     Eskridge's 3-21-12 email to Elliott    149
      86     Miller's 3-21-12 email to Elliott      152
20    87     Garland PD's Affidavit In Any Fact     156
      88     Elliott's 4-24-12 email to April       161
21

22                  REQUESTED DOCUMENTS/INFORMATION

23    NO.    DESCRIPTION                            PAGE

24

25

Plaintiffs' Brief In Opposition Appendix 180

Job No. 18229
Miller, et al v. Team Go Figure, et al

Susan Elliott
January 30, 2014

Page 4

INDEX CONTINUED:

CERTIFIED QUESTIONS

NO.                                                        PAGE/LINE

None

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Job No. 18229
Miller, et al v. Team Go Figure, et al

Susan Elliott
February 3, 2014

Page 5

1          THE REPORTER:  Same agreements?

2          MS. JACKSON:  Yes.

3          MR. MOULTON:  Yes.

4                    SUSAN ELLIOTT,

5    having been first duly sworn, testified as follows:

6                    EXAMINATION

7    BY MS. JACKSON:

8          Q.  Ms. Elliott, would you please state your full

9    legal name for the record?

10         A.  Susan Ann Elliott.

11         Q.  And what other names have you gone by?

12         A.  Susan Fails, was my maiden name, Susan Reed,

13   Susan Beers.

14         Q.  Are Reed and Beers other married names?

15         A.  Yes.

16         Q.  Okay.  And when did you and your husband that

17   you have -- Are you married today?

18         A.  Yes.

19         Q.  Okay.  When did you and your husband get

20   married, that you have today?

21         A.  Four years ago.

22         Q.  So you've been going by Susan Elliott for the

23   past four years?

24         A.  Yes.

25         Q.  You and I have met at some of the other

Plaintiffs' Brief In Opposition Appendix 182

Page 17

1     A.   The one I recorded would have been --

2     Q.   -- you just testified about?

3     A.   -- on the last -- it would have been busy

4  season because I was doing fittings and trying to keep

5  up with the day-to-day workload and fittings at the same

6  time, so that would have been somewhere in spring to

7  summer of 2012.

8     Q.   That's the time period that you were -- You

9  were present in Mr. Kenworthy's deposition yesterday,

10  were you not?

11     A.   I was.

12     Q.   And did you hear his testimony that Toni

13  handled most of the fittings during that busy season?

14     A.   She did, yes.

15     Q.   Okay.  And you agree with that testimony?

16     A.   Yes, she did.

17     Q.   Okay.  So do you even recall how many fittings

18  you handled during the 2012 busy season, to use your

19  words?

20     A.   I can tell you that I -- I can estimate.

21     Q.   Okay.  What's your best estimation?

22     A.   Two to three per week.

23     Q.   When I look at the calendars that have been

24  produced by the Plaintiffs in this lawsuit, I do not see

25  two to three fittings consistently per week for the

Page 27

```
 1        A.  Uh-huh.

 2        Q.  And you were -- you got upset during the

 3   conversation, according to you, and -- because you

 4   couldn't keep up with everything -- and these are your

 5   words --

 6        A.  Uh-huh.

 7        Q.  -- you were stretched too thin, you had too

 8   many things going on?

 9        A.  Uh-huh.

10        Q.  And you believe that that conversation was

11   recorded sometime during the busy season of 2012?

12        A.  Yes, ma'am.

13        Q.  Okay.  Besides the fittings, what else were you

14   doing that you had too many things going on?  What else

15   were you doing during that time frame?

16        A.  Mainly accounts payable.  It was a massive

17   amount of paperwork because he wanted to do a three-way

18   match, which is a purchase order that is created by

19   purchasing or by Ken, primarily.  When they ordered

20   materials or items they created a purchase order,

21   submitted it to our vendor and then when the items came

22   in through shipping, they received those items in on --

23   in QuickBooks, they went in and checked them off and

24   then when the bill came in, I would match it to the

25   purchase order and the receiving report to make sure
```

Plaintiffs' Brief In Opposition Appendix 184

Page 28

1    that all the items were received and the prices matched

2    up correctly.  If they did not, if there were any

3    variations, I would take those to Ken, because he was in

4    charge of the purchasing person or purchasing in

5    general, and ask him if they -- if he was aware of them,

6    if they were okay to pay, what the situation was, if it

7    was okay to pay that particular bill.  And he would sign

8    off on it or say, yes, or say, no, this is different,

9    the price is different.  He would have Julie call if the

10   price was different, find out what was going on and then

11   tell me when it was okay to pay a bill.

12       Q.  And besides asking Ken if it was okay to pay

13   the bill, were you the person that was involved in

14   basically doing this three-way reconciling of the

15   purchase order with the shipping with the -- with the

16   bill?

17       A.  It was actually a three-part job.  Purchasing

18   would do the purchase order.  Shipping and receiving

19   would do the receiving report.  And then when I got the

20   bill, I would compare it to the other two and check for

21   any variations.

22       Q.  Okay.  And that's what I'm asking, was anybody

23   else working with you when you were comparing the bill

24   with the purchase order and shipping to see if there

25   were any variations?

Plaintiffs' Brief In Opposition Appendix 185

Page 31

1    A.  Taking payments --

2    Q.  -- that you couldn't keep up with everything?

3    A.  -- taking payments, consistently, people were

4    calling in to take payment.

5    Q.  Payments from customers?

6    A.  Yes, ma'am, parents.

7    Q.  Were you still also handling all of your

8    payroll responsibilities?

9    A.  Yes, ma'am.

10   Q.  And that included entering, balancing, cutting

11   checks, making 941 deposits?

12   A.  I printed the time sheets.  I passed the time

13   sheets out to all of the employees.  They would make any

14   changes or corrections, submit those to their supervisor

15   or bring them back to me.  If they brought it back to me

16   I would take it to their supervisor and make sure that

17   their changes were accurate and enter that information

18   into the system, print the checks, until we started

19   doing direct deposit, printed the checks and had them

20   signed and give them out.

21   Q.  And what are some the changes that employees

22   would make on their time cards that would take time from

23   your day to have to go ask their supervisor if it was

24   appropriate?

25   A.  Sometimes they would forget to clock out and it

Job No 18238
Miller, et al v. Team Go Figure, et al

Susan Elliott
March 11, 2014

Page 43

1      A.   Yes, ma'am.

2      Q.   And just so a jury understands, I'm sure the

3   jurors will have balanced checkbooks and understand

4   that, but what is reconciling an account, if it's the

5   same for all four of these?

6      A.   It is go into QuickBooks.  You click on

7   reconcile account.  You select the account you want to

8   reconcile.  It brings up all the transactions that are

9   in the financial software system.  You go down the list

10  of paper transaction that you received in the mail and

11  you click off everything that matches, that's in the --

12  the software versus the paper and you hope that it comes

13  out with a zero discrepancy.  If it does not come out

14  with a zero discrepancy, usually if -- if you have

15  marked it off on both pages, you will have whatever the

16  difference is staring at you.

17          It would have usually been a transfer that

18  Scott may have made from one account to another that I

19  wasn't aware of, which is common in business.  And I

20  would go ask him if that was the case or if he knew, you

21  know, what this was because if it didn't go between the

22  two accounts, I had no idea where it went.  So he would

23  let me know and I would go key in whatever the

24  transaction was.

25      Q.   So that it could then reconcile the account?

Page 44

1    A.  Yes, ma'am.

2    Q.  Okay.  And did anyone assist you with that

3  process other than asking Scott if he did the transfer

4  that you were seeing pop up?

5    A.  No, I reconciled the accounts.  If I had a

6  question it would have been him.  And there weren't --

7  there was another time that I had to ask Belinda because

8  he did not know and then when I asked her, she did not

9  know and she made an a assumption and it was a little

10  back and forth, but it turned out that it was a transfer

11  that Scott did that Cheri rolled forward consecutively,

12  like -- she didn't reconcile the account, so it just

13  kept rolling forward every time they closed the year out

14  because she didn't know where -- you know, where to put

15  it.

16    Q.  So that issue was something that probably

17  occurred like pretty soon in your employment with Team

18  Go Figure?

19    A.  Yes, ma'am.

20    Q.  And you were able to work with Belinda to get

21  it figured out?

22    A.  Yes, ma'am.

23    Q.  And did you ever have another occasion in which

24  you felt it was necessary to get Belinda involved to

25  assist you in reconciling the bank account, savings

Plaintiffs' Brief In Opposition Appendix 188

Page 47

1    A. Yes, ma'am.

2    Q. And transferring the funds, I take it, as the

3    bookkeeper for Team Go Figure that you were looking at

4    those accounts and make suring -- making sure -- make

5    suring -- Pardon my English.  Let me back up.

6              I take it as the bookkeeper for Team Go

7    Figure, if you were going to transfer funds from the

8    account, you would take a look at the balance and decide

9    if it was okay to move those funds from the account?

10   A. When it was time to pay bills, which was

11   typically every two weeks --

12   Q. Okay.

13   A. -- and payroll, yes, if there was not enough

14   money in the operating account, I would transfer it from

15   the money market account, because he would get a higher

16   interest rate on the money market account, so he

17   preferred to keep most of the money there.

18   Q. And you knew that and so you would keep it

19   there until you felt you needed to plug it into the

20   operating account to pay payroll?

21   A. Yes.

22   Q. Okay.  And you made that decision?

23   A. Yes.

24   Q. Okay.  And would you -- What else did you do in

25   managing these bank accounts, besides reconciling them,

Plaintiffs' Brief In Opposition Appendix 189

Page 88

1    be done, yes.

2        Q.   Okay.  And you mentioned that your daughter --

3    Is that Taylor?

4        A.   Yes.

5        Q.   That she was helping you?

6        A.   She started.

7        Q.   She started with the sorting process?

8        A.   She started with the -- some alphabetizing.

9    She didn't last long.

10       Q.   Okay.  Well, how -- how long did you have any

11   help where you had somebody assisting you?

12       A.   She probably did it for about 45 minutes and

13   lost interest.

14       Q.   And then you -- and then you as the bookkeeper,

15   in charge of accounts receivable and paying the bills,

16   you then completed the job of sorting through these

17   stacks that were in your office when you started your

18   employment with Team Go Figure, correct?

19       A.   Well, this is all stuff I've just recently gone

20   through and -- I worked at a place called the Jet

21   Center.  And I'd just gone back to them recently and

22   helped them clean up their -- a similar situation, so

23   Scott and I talked about that, and he still wanted to

24   oversee the project, but because I'd done it at the Jet

25   Center and organized all their paperwork, he felt that

Page 89

1    it was okay for me to take it home and do it.  And, I

2    mean, it was -- it was filing --

3         Q.  Well --

4         A.  I don't understand what -- I mean, there's no

5    dis -- no decision making in --

6         Q.  Well, it wasn't just filing.  You've just

7    testified it was sorting through them --

8         A.  Sorting through.

9         Q.  -- it was comparing -- putting purchase orders

10   with bills from vendors or suppliers?

11        A.  Okay.

12        Q.  And it was determining if it had been paid and

13   if it hadn't been paid, it was talking to whether it be

14   Scott or Ken or whoever and figuring out, because you

15   were new to the company, why it hadn't been paid and

16   then it was paying the bill; is that correct?

17             MR. MOULTON:  Objection, misstates the

18   evidence.

19             THE WITNESS:  It -- I mean, yes -- yes, I

20   sorted.  I filed.  I matched.  Because I did it at Jet

21   Center two times in a row, he let me take it home and do

22   it.  I mean, I don't -- I don't understand what you're

23   asking me.

24        Q.  (BY MS. JACKSON)  I'm asking you, you sorted,

25   you filed, you matched, you determined if it was paid --

Plaintiffs' Brief In Opposition Appendix 191

Page 97

1      A.   She -- I trained her a couple times before

2   because Scott wanted us to do some cross training.

3   She's the only other person that he -- he trusted there

4   to do payroll, so I had her run it a couple times and

5   then I went over it again real quickly on the day I

6   left.

7      Q.   Well, what is the trust factor in being a

8   bookkeeper?

9      A.   I don't know.  He determines.

10      Q.   At any point during your employment did you go

11   to Scott and ask him for -- I understand that he paid

12   you overtime during the period that you were an hourly

13   employee, correct?

14      A.   Yes.

15      Q.   At any point in time did you go to Scott, other

16   than that, to get that overtime, and ask him for

17   overtime pay?

18      A.   I asked him if I could work on stuff at home.

19   And he said, I don't want you to nickel and dime me to

20   death, I can't afford to pay you for it.  And I said,

21   well, if I don't take it home, I can't get to done.  And

22   he said, well, I mean, you know the numbers, you know I

23   can't afford to pay for a bunch of overtime.  And I

24   agreed to do it.

25      Q.   But at some point in time you were a salaried

Job No. 18229

Case 3:13-cv-01509-O Document 43-1   Filed 03/14/14   Page 196 of 200   PageID 2319

Susan Elliott
January 16, 2014

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
 2                        DALLAS DIVISION

 3   TONI MILLER, SUSAN            )
     ELLIOTT, ARIEL KLEINSMITH     )
 4   AND ANTWAN LEE,               )
                                   )
 5              Plaintiffs,        )
                                   ) CIVIL ACTION
 6   VS.                           )
                                   ) NO.: 3:13-cv-1509
 7                                 )
                                   )
 8   TEAM GO FIGURE, L.L.P.,       )
     TEAM GO FIGURE AND SCOTT      )
 9   ESKRIDGE,                     )
                Defendants.        )

10

11              REPORTER'S CERTIFICATION

12           DEPOSITION OF SUSAN ELLIOTT

13                JANUARY 16, 2014

14

15        I, Julie G. Davault, Certified Shorthand Reporter

16   in and for the State of Texas, hereby certify to the

17   following:

18        That the witness, SUSAN ELLIOTT, was duly sworn by

19   the officer and that the transcript of the oral

20   deposition is a true record of the testimony given by

21   the witness;

22        That the deposition transcript was submitted on

23   January 21, 2014, to the attorney for the witness for

24   examination, signature and return to me by February 24,

25   2014;
```

Job No. 18229
Miller, et al v. Team Go Figure, et al

Susan Elliott
January 16, 2014

Page 175

1  That the amount of time used by each party at the

2  deposition is as follows:

3  James Moulton, Esq......00 HOUR(S):00 MINUTE(S)
   Claudine Jackson, Esq......03 HOUR(S):59 MINUTE(S)

4  That pursuant to information given to the

5  deposition officer at the time said testimony was taken,

6  the following includes counsel for all parties of

7  record:

8  FOR THE PLAINTIFFS:

9      James Moulton, Esq.
       939 Highway 80 East

10     Suite 486
       Mesquite, Texas 75150

11     (903) 780-2540
       jim.moulton@gmail.com

12

13 FOR THE DEFENDANTS:

14     Claudine Jackson, Esq.
       BRACKETT & ELLIS, P.C.
       100 Main Street

15     Fort Worth, Texas 76102
       (817) 338-1700

16     cjackson@belaw.com

17     That $ 1205.90 is the deposition officer's

18 charges to the Defendants for preparing the original

19 deposition transcript and any copies of exhibits;

20     I further certify that I am neither counsel for,

21 related to, nor employed by any of the parties or

22 attorneys in the action in which this proceeding was

23 taken, and further that I am not financially or

24 otherwise interested in the outcome of the action.

25

Page 176

1    Certified to by me this 21st day of January, 2014.

2

3

4    _____

5    Julie G. Davault, CSR, No. 2092
     Expiration Date:   12/31/14

5    Merit Court Reporters, LLC
     Firm Registration No. 133

6    307 W. 7th Street, Suite 1350
     Fort Worth, Texas 76102

7    (817) 336-3042

8

9    Job No. 18227

10

11              FURTHER CERTIFICATION

12       The original deposition was/was not returned to the

13   deposition officer on February 24, 2014;

14       If returned, the attached Changes and Signature

15   page contains any changes and the reasons therefor;

16       If returned, the original deposition was delivered

17   to Claudine Jackson, Esq., Custodial Attorney;

18       That $ 1205.90      is the deposition officer's

19   charges to the Defendants for preparing the original

20   deposition transcript and any copies of exhibits.

21       That a copy of this certificate was served on all

22   parties shown herein.

23

24

25

Case 3:13-cv-01509-O   Document 43-1   Filed 03/14/14   Page 199 of 200   PageID 3192
Susan Elliott
Miller, et al v. Team Go Figure, et al
January 31, 2014
Job No. 18229

Page 177

Certified to by me this 3rd day of March,

2014.

By: Diana Calvery
FOR: Julie G. Davault, CSR, No.2092
Expiration Date:  12/31/14
Merit Court Reporters, LLC
Firm Registration No. 133
307 W. 7th Street, Suite 1350
Fort Worth, Texas 76102
(817) 336-3042

Job No. 18227

# Exhibit "L"