# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **TONI MILLER et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:13-cv-1509-O** |
| | § | |
| **TEAM GO FIGURE, L.L.P. et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Toni Miller ("Miller"), Susan Elliott ("Elliott"), and Ariel Kleinsmith ("Kleinsmith") (collectively, "Plaintiffs") sue their former employer, Defendant Team Go Figure, LLP, and its general managing partner, Scott Eskridge ("Eskridge") (collectively, "TGF" or "Defendants"), alleging TGF failed to pay them overtime wages for hours they worked in excess of forty hours per week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* TGF denies the allegations, asserting that Plaintiffs' job duties rendered them exempt from overtime pay. Alternatively, TGF contends that Plaintiffs are unable to show they worked any overtime hours for which they were not paid. The parties have filed cross-motions for summary judgment. *See* Defendants' Motion for Summary Judgment, filed January 27, 2014 (ECF No. 26); Plaintiffs' Motion for Summary Judgment, filed March 14, 2014 (ECF No. 42). Having considered the motions, responses, replies, record and applicable law, the Court concludes that genuine issues of material fact preclude granting summary judgment, and therefore denies the summary judgment

motions.[1]

Also before the Court is Plaintiffs' Motion for Leave to Amend Complaint (ECF No. 49). Having considered the motion, response, reply and applicable law, and for the reasons stated below, the Court finds that Plaintiffs have failed to show good cause for the amendment, and therefore denies Plaintiffs' motion.

## I.      Factual and Procedural Background[2]

TGF manufactures and sells uniforms for cheerleading and scholastic-related dance teams in Texas.  *See* Def. Summ. Judg. App. Ex. K (Eskridge Decl.), App. at 408, ECF No. 27-11 (hereinafter "Def. SJ App.").   TGF's principal place of business is in Garland, Texas.  *Id.*  TGF is organized into four departments — design, manufacture and shipping, sales, and payroll/human

---

[1]Also pending are: Defendants' Amended Motion for Leave to Supplement Summary Judgment Appendix (ECF No. 51), as modified (*see* Notice, ECF No. 64), which the Court grants for the reasons stated below (*see* note 2); and Defendants' Motion to Strike Plaintiffs' Reply Appendix (ECF No. 72), which the Court denies for the reasons stated below (*see* note 2).

[2]In setting forth the facts, the Court applies the summary judgment standard set forth below in Section II.  The facts are undisputed except as otherwise noted.  The summary judgment record considered by the Court includes excerpts of depositions from the three named plaintiffs, affidavits of the three named plaintiffs, deposition excerpts and affidavits of several TGF former employees, excerpts of the deposition of Scott Eskridge, TGF's owner, as well as Eskridge's affidavit, interrogatory responses, responses to requests for admissions, payroll records, job descriptions, personnel records, TGF's personnel policy handbook, Team Order Forms, calculations of overtime hours worked by the three named plaintiffs, and email correspondence. In the interest of fairness, where a party has introduced heavily redacted deposition transcripts, the Court will allow the opposing party to introduce unredacted portions of the deposition transcript.  For this reason, the Court **denies** Defendants' Motion to Strike Plaintiffs' Reply Appendix (ECF No. 72), and permits Plaintiffs to submit with their Reply a portion of Ariel Kleinsmith's unredacted deposition testimony.  Further, the Court **grants** Defendants' Amended Motion for Leave to Supplement Summary Judgment Appendix (ECF No. 51), as modified (*see* Notice, ECF No. 64), and considers as part of the record a Declaration and Receipt from the Dallas County Justice of the Peace showing that TGF satisfied the judgment awarded in *Toni Miller v. Scott Eskridge aka Team Go Figure*, JC 13-006140, as well as Eskridge's affidavit concerning the judgment (*see* ECF Nos. 51-1 and 51-2). Defendants submit these documents in response to Miller's argument that TGF made improper deductions from her paychecks, rendering her non-exempt from the FLSA's overtime provisions.  While the merits of this argument will be addressed below, evidence pertaining to whether Miller was properly classified as exempt are relevant, and Plaintiffs' objections are therefore overruled.

resources.  *Id.*  Eskridge is the founder and owner of TGF, and oversees all four departments which are managed by others.  *Id.*  TGF employs approximately thirty-six full and part-time employees. *Id.*  During the relevant time period, TGF had various sales territories, including North Houston, South Houston, East Texas, Austin, San Antonio, and the Dallas-Fort Worth area.  *Id.* at 409-12. TGF has sales in excess of $500,000.00 per year.  *See* Pl. Summ. Judg. App. Ex. D (Def. Resp. No. 18 to Req. for Admiss.), App. at 78-79, ECF No. 43-1 (hereinafter "Pl. SJ App.").

Since TGF sells tight-fitting custom made uniforms to cheerleading and scholastic related dance teams, measuring and fitting the students that will be wearing the uniforms is a critical part of the process.  *Id.* Ex. I (Miller Decl.), App. at 163, ECF No. 43-1; *id.* Ex. B (Kleinsmith Dep.), App. at 37, ECF No. 43-1.  The process of measuring and fitting the students is referred to by TGF's employees as "fittings."  *Id.*  TGF's employees bring actual sized garments (generally sizes X-Small, Small, Medium, Large, or X-Large) to the fittings and allow school team members to try on the garments to select the proper size and select specific items for purchase.  Def. App. in Supp. of Resp. to Pl. MSJ Ex. Q (Eskridge Decl.), App. at 588, ECF No. 60.   The "fitting season" was usually the months of March, April and May, and fittings usually did not take place on Fridays.  *Id.*  Fittings usually took place after school hours, and could take up to four hours each or more, not including drive time.  Pl. SJ App. Ex. I (Miller Decl.), App. at 163, 167-70, ECF No. 43-1 (fittings usually take 2 to 4 hours); *Id.* Ex. E (Corker Dep.), App. at 85-89, ECF No. 43-1 (fittings usually take 1 to 4 hours).

Miller was employed by TGF from April 26, 2010 to March 4, 2013 as a Sales Manager and Creative Director.  Def. SJ App. Ex. K (Eskridge Decl.), App. at 409-12, ECF No. 27-11.  Miller's starting salary was $78,000.00 per year and she was paid bi-monthly.  *See id.* Ex. A (Miller Dep.),

App. at 4, 153, ECF No. 27-1.  Miller reported directly to Eskridge.  *Id.* at 3.  Miller's job duties involved customer relations and sales.  *See id.* at 39-44, ECF No. 27-1.  Miller was responsible for the various sales territories across Texas and outside sales representatives.  *Id.* at 34-35.  Miller's duties included traveling to schools to discuss potential orders and traveling with trainees to their outside sales presentations and meetings to give them feedback.  *Id.* Ex. D (Kleinsmith Dep.), App. at 29, ECF No. 27-5 (stating Miller was "out a lot . . . doing sales, doing her job"); *id.* Ex. K (Eskridge Decl.), App. at 2-5, ECF No. 27-11 (discussing Miller's job duties; noting her "primary duty was managing the sales team").  Miller supervised outside sales representatives when they were conducting outside sales.  *Id.* Ex. A (Miller Dep.), App. at 76, ECF No. 27-1.   A major part of Miller's day was spent performing manual work, including fittings, deliveries, cleaning the bathroom, cleaning the kitchen, picking up Eskridge's dry cleaning, and driving to and from schools to meet with existing clients.  Pl. SJ App. Ex. I (Miller Decl.), App. at 166, ECF No. 43-1; *see also* Def. SJ App. Ex. A (Miller Dep.), App. at 2.4, 2.7-2.8, 2.9-2.12, 26-27, ECF No. 27-1.

Miller worked overtime each and every week she worked at TGF.  Pl. SJ App. Ex. I (Miller Decl.), App. at 165-70, ECF No. 43-1; *id.* Ex. AB (Calculation of Overtime Premiums Owed to Miller), App. at 540-42, ECF No. 43-6.  Miller generally arrived at work at 8:00 a.m. and would leave work at 7:30 or 8:30 p.m.  *Id.*  Miller worked from home approximately two hours each weekday and ten to twelve hours each Saturday and Sunday.  *Id.*  Miller estimates she worked a total of forty-nine to fifty overtime hours each week she worked at TGF.  *Id.*  In 2010, Miller attended twenty-three fittings, working approximately eighty total overtime hours attending these fittings.  *Id.*  In 2011, Miller attended sixty-eight fittings, working approximately 193 overtime hours attending these fittings.  *Id.*  In 2012, Miller attended forty-seven fittings, working approximately

152.5 overtime hours attending these fittings.  *Id.*

TGF hired Elliott as a bookkeeper on or around August 21, 2011.  Def. SJ App. Ex. K (Eskridge Decl.), App. at 412-15, ECF No. 27-11.  Elliott reported directly to Eskridge.  *Id.*  The job posting advertising the position stated that it would be an hourly position, paying $18.00 per hour.  Pl. SJ App. Ex. J (Elliott Decl.), App. at 172-76, ECF No. 43-1.  TGF paid Elliott on an hourly basis from on or about August 21, 2011 to January 27, 2012, when TGF re-classified her as a salaried employee.  Def. SJ App. Ex. K (Eskridge Decl.), App. at 412-15, ECF No. 27-11.  Although TGF re-classified Elliott as a salaried employee just prior to the busier fitting season, she experienced no corresponding change in job duties, responsibility, title, position, or authority.  Pl. SJ App. Ex. J (Elliott Decl.), App. at 172-76, ECF No. 43-1.  In her salaried position, TGF paid Elliott $38,000 per year, which was gradually increased to $45,500.  Def. SJ App. Ex. K (Eskridge Decl.), App. at 412-15, ECF No. 27-11.  Elliott's job duties as bookkeeper included accounts payable, accounts receivable, payroll, bank accounts, tax and payroll reporting, and personnel records.  *Id.*  The vast majority of her time ("at least 90%") involved routine bookkeeping tasks such as "data entry, matching invoices to orders, and filing."  Pl. SJ App. Ex. J (Elliott Decl.), App. at 173-74, ECF No. 43-1.  The human resources aspect of her job duties took less than one percent of her time.  *Id.* at 172-75.  Elliott had no special training and is not an accountant.  *Id.*  In January 2013, Elliott assisted Eskridge in modifying TGF's personnel policy handbook.  Def. SJ App. Ex. K (Eskridge Decl.), App. at 412-14, ECF No. 27-11; *id.* Ex. K7 (email from Elliott to Eskridge).  In or around March 2012, using a format she found online, Elliott generated a new expense report to use for improved travel reimbursement.  *Id.* Ex. C (Elliott Dep.), App. at 257-59, 310, ECF No. 27-3.  Kleinsmith went to Elliott for answers to customer payment questions.  *Id.* Ex. D (Kleinsmith Dep.), App. at 334-35,

5

ECF No. 27-4.

Elliott worked overtime each and every week she worked at TGF. Pl. SJ App. Ex. J (Elliott Decl.), App. at 172-76, ECF No. 43-1; *id.* Ex. AB (Calculation of Overtime Premiums Owed to Elliott), App. at 543, ECF No. 43-6. Elliott generally arrived at work at 8:30 a.m. and would leave work at 6:30 p.m. *Id.* Elliott worked from home approximately three hours each weekday and twelve to fourteen hours each Saturday and Sunday during the first four to five weeks of her employment (when she was being paid hourly). *Id.* Elliott worked approximately fifty to fifty-two overtime hours for the first four to five weeks of her employment, and worked thirty to thirty-five overtime hours each week thereafter. *Id.* In addition to her bookkeeper duties, in 2011, Elliott attended three fittings, working approximately twelve total overtime hours attending the fittings. *Id.* In 2012, Elliott attended thirty-six fittings, working approximately 177 total overtime hours attending these fittings. *Id.*

TGF hired Kleinsmith on January 19, 2012 as an inside sales representative/customer service employee. Pl. SJ App. Ex. N (Kleinsmith hiring and payroll records), App. at 206-12, ECF No. 43-2. Payroll records show that TGF agreed to pay Kleinsmith hourly for the first ninety days, after which she would be switched to salaried employment. *Id.* The same records show that TGF did not switch Kleinsmith from hourly to salaried employment until the pay period ending May 15, 2012 (119 days after employment). *Id.* She was terminated two days later, on May 17, 2012. *Id.*

On a normal day, Kleinsmith spent fifty percent of her time on customer service work in the office, twenty-five percent on outside fittings, and twenty-five percent on making outside sales calls. *Id.* Ex. B (Kleinsmith Dep.), App. at 51, ECF No. 43-1. Eskridge testifies that Kleinsmith's "primary responsibility" was setting up appointments and meeting with customers and making sales.

6

Def. SJ App. Ex. K (Eskridge Decl.), App. at 415-16, ECF No. 27-11.

TGF paid Kleinsmith on an hourly basis for all but two days of her employment. Pl. SJ App. Ex. N (Kleinsmith hiring and payroll records), App. at 206-12, ECF No. 43-2. TGF has produced time cards for two pay periods of Kleinsmith's employment, and a few notes signed by Kleinsmith stating that she worked forty hours during those two pay periods. *Id.* Ex. P (time cards and handwritten notes), App. at 228-30, ECF No. 43-2. Kleinsmith testified at her deposition that because TGF told her she was being paid salary and would not be paid for overtime, she saw no reason to note she had actually worked in excess of forty hours for the two pay periods. *Id.* Ex. B (Kleinsmith Dep.), App. at 26-27, ECF No. 43-1.

On an average day, Kleinsmith arrived at work between 8:30 a.m. and 9:00 a.m. and left at approximately 6:15 p.m. *Id.* at 32. Two to four days per week, in the evenings after leaving the Garland office, she would attend fittings at various schools, which lasted from three to four hours, with at least a thirty-minute drive time to and from the school. *Id.* at 41-47; *id.* Ex. AB (Calculation of Overtime Premiums Owed to Kleinsmith), App. at 544, ECF No. 43-6. Kleinsmith was expected to, and did work, on weekends, and on one weekend she worked in excess of twenty hours at a trade show. *Id.* Ex. AA (Kleinsmith Dep.), App. at 533-34, ECF No. 43-6. Kleinsmith was never compensated for the hours she worked in excess of forty per week. *See id.* Ex. N (Kleinsmith hiring and payroll records), App. at 206-12, ECF No. 43-2.[3]

---

[3]Additional material facts from the summary judgment record pertaining to Plaintiffs' job duties and hours worked will be set forth below in the Court's analysis.

## II.     The Parties' Cross-Motions for Summary Judgment on FLSA Claims

On January 27, 2014, TGF filed a motion for summary judgment, asserting that the "undisputed facts conclusively establish that: (1) Miller's job duties rendered her exempt from overtime pay under both the executive and administrative exemptions; (2) Elliott's job duties rendered her exempt from overtime pay under the administrative exemption; and (3) Kleinsmith's job duties rendered her exempt from overtime pay under the outside sales exemption."  Def. Brief in Supp. of Mot. for Summ. Judg. at 1, ECF No. 28 ("Def. MSJ Brief").  TGF further argues that "[e]ven if Plaintiffs are not exempt, Plaintiffs cannot prove their claims for damages with definite and certain evidence."  *Id.*  TGF also moves for summary judgment on Miller's allegations that TGF improperly deducted certain amounts from several of her paychecks, arguing that her claim was tried to judgment in another proceeding and is barred by *res judicata*.  *Id.*  Alternatively, in the event the Court concludes that Plaintiffs' FLSA claims have merit, TGF seeks partial summary judgment that the applicable overtime compensation rate should be calculated pursuant to the fluctuating workweek ("FWW") method.  *Id.*

Plaintiffs oppose TGF's motion, contending that TGF has: (1) failed to meet its summary judgment burden of establishing its affirmative defense that Plaintiffs are exempt employees under the FLSA; (2) failed to raise a genuine issue of material fact to dispute that Elliott and Kleinsmith, prior to being converted to salaried employees, worked overtime hours for which they were not properly compensated; and (3) failed to establish that the FWW method should be used to calculate any overtime due in this case.  Pl. Resp. to Def. MSJ at 15-20, 40-46, ECF No. 41.

On March 14, 2014, Plaintiffs filed a cross-motion for summary judgment, contending: (1) TGF misclassified Plaintiffs as salaried exempt employees; (2) TGF willfully failed and refused to

8

pay overtime wages to Plaintiffs in violation of the FLSA, entitling Plaintiffs to liquidated damages; and (3) TGF is liable for overtime wages and liquidated damages to Plaintiff Miller in the amount of $387,068.30; to Plaintiff Elliott in the amount of $158,178.14; and to Plaintiff Kleinsmith in the amount of $34,560.00. *See* Pl. Brief in Supp. of Mot. for Summ. Judg., ECF No. 43 ("Pl. MSJ Brief"). TFG opposes the motion, making similar arguments to those raised in support of its summary judgment motion. *See* Def. Resp. to Pl. MSJ, ECF No. 59.

The parties' cross-motions have been fully briefed and are ripe for adjudication. After setting forth the controlling summary judgment standard under Federal Rule of Civil Procedure 56, the Court will address the parties' arguments and the summary judgment evidence.

### A.      Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

TGF's summary judgment burden depends on whether it is addressing a claim or defense for which it will have the burden of proof at trial. To be entitled to summary judgment on an affirmative defense for which it will have the burden of proof, TGF "must establish 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

When TGF will not have the burden of proof on a claim at trial, it need only direct the Court to the absence of evidence of an essential element of Plaintiffs' claim. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c). Once TGF does this, Plaintiffs must go beyond their pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324. An issue is genuine if the evidence is such that a reasonable jury could return a verdict for Plaintiffs. *Anderson*, 477 U.S. at 248. Plaintiffs' failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F. Supp. 2d 613, 623 (N.D. Tex. 2007). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little v. Liquid Air Corp.*, 37 F.3d 1609, 1075 (5th Cir. 1994) (en banc) (per curiam).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

### B.    Discussion

The Court first addresses the threshold issue of whether TGF has met its summary judgment burden of establishing its affirmative defense that Plaintiffs' job duties rendered them exempt from overtime pay.

### 1.    Exemptions from the FLSA's Overtime Provisions

The FLSA's overtime provision mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half

10

times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  Pursuant to 29 U.S.C. § 213(a), a covered employer need not provide overtime pay to "any employee employed in a bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman . . . ." 29 U.S.C. § 213(a); *see Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002) (employees who are classified as "exempt" are not entitled to overtime pay).  The burden of proving that the employee is exempt from coverage rests with the employer. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Tyler*, 304 F.3d at 402.  In light of the FLSA's broad remedial aims, "[t]hese exemptions are construed narrowly against the employer[.]" *Tyler*, 304 F.3d at 402.  Exempt status will be limited to those employees "plainly and unmistakably" falling within the "terms and spirit[]" of the exemptions. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).  Although the decision whether an employee is exempt from the FLSA's overtime compensation requirements is a question of fact, the ultimate decision is a question of law. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330-31 (5th Cir. 2000).

> ### *a.    Was Plaintiff Miller Exempt from Overtime Pay under the Executive Exemption?*

TGF argues that Miller was exempt under the FLSA as an executive employee, thus defeating her claim for overtime compensation.  In opposition, Plaintiffs argue that Miller was misclassified as a salaried exempt employee or, alternatively, that fact issues preclude entry of summary judgment in TGF's favor.

An employee is employed in an executive capacity if: (1) the employee is compensated at a rate of more than $455 per week; (2) the employee's primary duty is the management of the enterprise or a customarily recognized department thereof; (3) the employee customarily and

regularly directs the work of two or more employees; and (4) the employee has the authority to hire and fire other employees or her suggestions and recommendations with regard to hiring, firing or other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(1)-(4).

Miller challenges the application of the first and third components, which the Court will consider in turn.

### i.    *Salary Basis Test*

Miller argues that TGF has failed to meet its burden of proving she was paid on a "salary basis" since it improperly deducted amounts from her paychecks. For an employee to be considered paid on a "salary basis," an employee must "regularly receive[] each pay period on a weekly or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.602(a). Section 541.602(b) provides, generally, that deductions may be made for absentee-ism, sick leave (in certain circumstances), penalties imposed in good faith for infractions of safety rules, unpaid disciplinary suspensions, and . . . for mistaken overpayments." 29 C.F.R. § 541.602(b).

Miller provides undisputed evidence that from September 1, 2011 through October 15, 2011, and the pay periods ending on November 15, 2011 and April 16, 2012, TGF made deductions from her paychecks totaling $7,400.00. *See* Pl. SJ App. Ex. 1 (Miller Decl.), App. at 165, ECF No. 43-1; Def. SJ App. Ex. K-3 (TGF Payroll Summary), App. at 425, ECF No. 27-14. TGF labeled the deductions as "payroll advances," even though no payroll advance was made. *See id.* TGF deducted the amounts from Miller's paychecks for an alleged debt that Eskridge claimed Miller's husband's company owed TGF. *See* Pl. SJ App. Ex. 1 (Miller Decl.), App. at 165, ECF No. 43-1. When

Miller complained about the payroll deductions she was told words to the effect that "if she didn't like it, she could leave." *Id.*

TGF does not dispute that deductions were made from Miller's paychecks, but argues any deductions were "isolated," and that "TGF has reimbursed any alleged 'improper deductions' and, therefore, such deductions do not impact the salary-basis element of Miller's exempt status." Def. Resp. to Pl. MSJ at 19.  In support, TGF relies upon a Declaration and Receipt from the Dallas County Justice of the Peace showing that TGF satisfied a judgment in the amount of $1,200.00 awarded in *Toni Miller v. Scott Eskridge aka Team Go Figure*, JC 13-006140.  *See* ECF Nos. 51-1 and 51-2.  TGF also argues that Miller's improper deduction claim is barred by *res judicata*, as she has already litigated and adjudicated her claim for improper wage deductions.  Def. Resp. to Pl. MSJ at 19.  The Court disagrees.

TGF's own payroll summary reflects that TGF deducted the amount of $7,400.00 from Miller's paychecks.  *See* Def. SJ App. Ex. K-3 (TGF Payroll Summary), App. at 425, ECF No. 27-14.  Evidence shows that TGF deducted the amounts from Miller's paychecks, notwithstanding her protests, for an alleged debt that Eskridge claimed Miller's husband's company owed TGF.  *See* Pl. SJ App. Ex. 1 (Miller Decl.), App. at 165, ECF No. 43-1.  While the Court has allowed TGF to supplement its summary judgment evidence with the Declaration and Receipt from the Dallas County Justice of the Peace reflecting that TGF paid Miller $1,200.00 (*see supra* note 2), TGF has failed to show that Miller's improper deductions claim or FLSA claim was brought before the small claims court, or that the small claims court made any findings of fact or rulings of law on these issues.  Further, it is not clear how a payment of $1,200.00 would make Miller whole for payroll deductions totaling $7,400.00.  Finally, section 541.602(b), which lists the permissible exceptions

13

to the rule regarding deductions, does not list or contemplate a deduction to repay an alleged debt owed by the employee's spouse's corporation. *See* 29 C.F.R. § 541.602(b).

In a nutshell, TGF has failed to meet its burden of proving that Miller meets the salary basis test necessary for her exempt status. *See Tyler*, 304 F.3d at 402 (the burden of proving that the employee is exempt from coverage rests with the employer). As already stated, exemptions to overtime pay are affirmative defenses and "[t]hese exemptions are construed narrowly against the employer[.]" *See id*. Exempt status will be limited to those employees "plainly and unmistakably" falling within the "terms and spirit[]" of the exemptions. *Arnold*, 361 U.S. at 392 (1960). TGF has failed to provide evidence that its deductions were proper, or that it reimbursed Miller for the deducted amounts (assuming TGF would even be eligible for the "safe harbor" provision).[4] Further, *res judicata* does not apply as TGF has presented no evidence that Miller made claims for overtime wages before the small claims court, or that the small claims court even considered whether improper deductions had been made. *See generally Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (setting forth elements of *res judicata*).

In short, as to any and all pay periods where TGF took improper deductions from Miller's paycheck, the Court denies TGF's motion for summary judgment, as TGF has failed to meet its burden of proving Miller fell within the executive exemption.

### ii. *"Customarily and Regularly Directed Work of Two or More Employees"*

Miller contends that TGF has failed to meet its burden of "proving that Miller regularly and

---

[4]Under the so-called "safe harbor" provision, improper deductions that are either isolated or inadvertent will not result in loss of the exemptions for any employee subject to the deductions, if the employer reimburses the employee for such improper deductions. *See* 29 C.F.R. § 541.603.

customarily supervised two or more full-time employees, and therefore, based on the summary judgment evidence before this Court, Plaintiff Miller did not qualify for the executive exemption as a matter of law." Pl. Reply to Def. Resp. at 9, ECF No. 71.

The regulations clarify the "two or more employees" requirement as follows:

> To qualify as an exempt executive under § 541.100, the employee must customarily and regularly direct the work of two or more other employees. The phrase "two or more other employees" means two full-time employees or their equivalent. One full-time and two half-time employees, for example, are equivalent to two full-time employees. Four half-time employees are also equivalent.

29 C.F.R. § 541.104(a); *see also Perez v. Radioshack Corp.*, 386 F. Supp. 2d 979, 985 (N.D. Ill. 2005) ("Sensibly, the Department of Labor has interpreted the 'equivalent' to two full-time employees as any combination of part-time employees collectively working at least 80 hours per week.") (citation omitted). The regulations provide that "customarily and regularly" includes "work normally and recurrently performed every workweek[.] [I]t does not include isolated or one-time tasks." 29 C.F.R. § 541.701.

The parties dispute whether Miller "regularly and customarily" supervised two or more full time employees, and present conflicting evidence. TGF argues that during Miller's "147 weeks of employment with TGF, Miller supervised at least two outside sales representatives and assistants for 111 weeks of the 147 weeks of her employment." Def. Resp. to Pl. MSJ at 10. In support, TGF cites to Miller's deposition testimony (where she testified she supervised outside sales employees when they were conducting outside sales), Kleinsmith's deposition testimony (testifying Miller supervised her), Eskridge's Declaration (testifying that Miller supervised two or more outside sales representatives and assistants 111 of her 147 weeks of employment, and also supervised graphic designers Kristy Mraz and Deidre Buchanan), and a chart compiled by Eskridge summarizing outside

sales representatives supervised by Miller by month.  *See* Def. SJ App. at 14-15, 79-80, 81, 88, 109, 132-33, 138-40, 409-12, 469-72.[5]

Miller asserts in her Declaration that little of her time was actually spent supervising anyone. *See* Pl. SJ App. Ex. 1 (Miller Decl.), App. at 164, ECF No. 43-1.  She further states that during the summer months, she had no contact with the outside sales employees, as schools were closed and no sales activities took place.  *Id.*  She states that during the majority of the time she was employed by TGF, outside sales employees (Kirsten Kosack and Jennifer Connor) were located in Houston, and though she occasionally emailed or phoned them during the "busy season[,]" she only visited the Houston office once per year.  *Id.*  She further states that with regard to inside sales persons, such as Kleinsmith and Antwan Lee, she shared what little supervision was required with Office Manager April McDougald, who was also salaried.  *Id.*  Plaintiffs also provide the Declaration of Kirsten Kosack, who stated that she rarely worked a forty-hour week, and that during summer months, she did not work at all.  *Id.* Ex. T (Kosack Decl.), App. at 246-47, ECF No. 43-2.

The Court has closely examined the deposition excerpts cited by TGF in support of its assertion that Miller customarily and regularly supervised two or more full-time employees.  The deposition excerpts establish only that Miller supervised a number of different persons during unspecified periods of time.  They do not establish the number of persons Miller supervised at any given time.  Further, as Plaintiffs correctly note, TGF has provided no evidence of the hours actually worked by outside sales employees, and therefore cannot meet the bright-line rule of eighty hours of subordinate supervision.  In addition, in examining the summary chart prepared by Eskridge, it

---

[5]In its legal briefing, TGF asserts that Miller supervised Tabitha Corker.  As TGF provides no evidence in support, for purposes of summary judgment, the Court disregards this assertion.

16

is readily apparent that during several months of each year, there was no outside sales force to supervise. *See* Pl. SJ App. Ex. K-11 (Summary Chart), App. at 158-161, ECF No. 43-1. Also, contrary to Eskridge's testimony, Kristy Mraz testified that Scott Kenworthy, not Miller, primarily directed her day-to-day work activities. *Id.* Ex. R (Mraz Dep.), App. at 238, ECF No. 43-2; *id.* Ex A. (Kenworthy Dep.), App. at 114-15, ECF No. 43-1 (each year the number of outside salespersons drops below two employees for a period of months). Other than Eskridge's statement, TGF submits no summary judgment evidence regarding supervision of Deidra Buchanan.

On these disputed facts, the Court holds that a reasonable juror could conclude that Miller did not customarily and regularly direct the work of two or more full-time employees. Accordingly, as TGF has failed to meet its burden of establishing its affirmative defense, TGF's summary judgment motion on the basis of the executive exemption is denied.

> **b.    *Are Plaintiffs Miller or Elliott Exempt from Overtime Pay under the Administrative Exemption?***

TGF argues that it need not pay Miller and Elliott overtime pay since they were exempt as administrative employees under 29 C.F.R. § 541.200. Plaintiffs argue that TGF's motion should be denied since the summary judgment evidence shows that Miller and Elliott were misclassified as salaried exempt employees or, alternatively, that fact issues preclude entry of summary judgment in TGF's favor.

Under the FLSA, to qualify as an exempt administrative employee, the employee must: (1) be compensated on a salary or fee basis at a rate of not less than $455 per week; (2) have a primary duty of performing office or non-manual work directly related to the management or general business operations of the employer; and (3) have a primary duty that includes the exercise of discretion and

independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a)(1)-(3).

Miller contends that TGF has failed to meet its summary judgment burden of establishing the first and second components of the administrative employee exemption, and Elliott argues that TGF failed to meet its burden as to the third component.  The Court addresses these components in turn.

### i.      Salary Basis Test

Miller again argues that TGF has failed to meet its burden of proving she was paid on a "salary basis" since it improperly deducted amounts from her paychecks.  For the reasons stated directly above, the Court agrees, and denies TGF's motion for summary judgment on this grounds.  Elliott does not contest that, after she was re-classified from hourly to salaried at the end of January, 2012, her compensation arrangement met the salary prong for the administrative exemption.

### ii.      Primary Duty Test

### a.      Miller

Miller urges the Court to deny TGF's summary judgment motion, since the record creates fact issues as to whether her primary duty was "performing office or non-manual work directly related to the management or general business operations of the employer."  *See* Pl. Resp. to Def. MSJ at 29-30, ECF No. 41; *see also* Pl. MSJ Brief at 28-29, ECF No. 42; Pl. Reply to Def. Resp. to Pl. MSJ at 9-12, ECF No. 71.  In response, TGF argues that the summary judgment record eliminates any factual disputes as to Miller's primary duties, and the Court should therefore find as a matter of law that the administrative exemption applies to defeat Miller's FLSA claims.  *See* Def. Resp. to Pl. MSJ at 25-28, ECF No. 59; Def. Reply to Pl. Resp. to Def. MSJ at 5-8, ECF No. 54.

To qualify for an exemption under the FLSA, the employee's primary duty must be the

performance of exempt work. 29 C.F.R. § 541.700(a). "Primary duty" means "the principal, main, major, or most important duty that the employee performs[,]" considering all of the facts in the case and with a particular emphasis on the character of the employee's job as a whole. *Id.* The primary duty inquiry requires a court to "determine the employee's chief or principal duty . . . . [T]he employee's primary duty will usually be what she does that is of principal value to the employer, not the collateral tasks that she may also perform even if they consume more than half her time." *Dalheim v. KDFW-TV*, 918 F.2d 1220,1227 (5th Cir. 1990) (citation omitted). The regulations provide further guidance on relevant factors a court is to examine:

> Factors to consider in determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). Though not the only factor to consider, an employee spending more than fifty percent of her time performing exempt work will generally satisfy the primary duty requirement. *Aguirre v. SBC Commc'ns, Inc.*, 2007 WL 2900577, at *18 (S.D. Tex. Sept. 30, 2007); *see also* 29 C.F.R. § 541.700(b) ("Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion."); *Lott*, 203 F.3d at 332 (the fact that the majority of an employee's time was not spent on exempt tasks does not preclude finding that the primary duties were the "administration of the general business operations . . . such that the administrative and supervisory duties performed by [the employee] were of principal importance to [the employer], as opposed to those collateral tasks which may have taken more than fifty percent of [her] time"). "A job title alone is insufficient to establish

the exempt status of an employee." 29 C.F.R. § 541.2.

"Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . accounting; budgeting; auditing; . . . quality control; purchasing; procurement; . . . safety and health; personnel management; human resources; . . . government relations . . . legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b). "Thus, where an employee is primarily involved in producing the product of the company rather than 'servicing' the company, the administrative exemption does not apply." *Villegas v. Dependable Constr. Servs., Inc.*, 2008 WL 5137721, at *7 (S.D. Tex. Dec. 8, 2008). The Fifth Circuit has described the distinction between administrative and production work as "between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market." *Dalheim*, 918 F.2d at 1230.

While Miller concedes that there is evidence that she performed some administrative work, she argues that TGF, which has the burden of proving that the exemption is "plainly and unmistakably" applicable, has "failed to provide any evidence as to what percentage of [her] time was spent performing such administrative work, or even that such work was [her] primary duty." Pl. Resp. to Def. MSJ at 30, ECF No. 41. In support, Miller cites to her Declaration where she testified that "[a] major part of [her] daily activities, if not the majority, was spent performing manual work, including fittings, deliveries, cleaning the bathroom, cleaning the kitchen, picking up Scott Eskridge's dry cleaning, and driving to and from schools to meet with existing clients." Pl. SJ App. Ex. I (Miller Decl.), App. at 166, ECF No. 43-1. In her deposition testimony, Miller testified that she and Elliott were responsible for cleaning the bathroom, although TGF had a

cleaning lady who came on certain weekends.  Def. SJ App. Ex. A (Miller Dep.), App. at 2.7-2.8, 26-27, ECF No. 27-1.  Miller also testified that she was responsible for cleaning the kitchen.  *Id.* at 2.4, 2.9-2.12.  In addition, Miller contends the administrative exception does not apply since TGF has failed to adequately distinguish her primary duties from work necessary to produce TGF's products and services.  *See* Pl. Reply to Def. Resp. to Pl. MSJ at 10, ECF No. 71; *see generally Dalheim*, 918 F.2d at 1230 (describing difference between administrative and production work, the former exempt, the latter not exempt).

In response, TGF asserts that Miller's primary duty was marketing, which qualifies her for the administrative exemption.  *See* Def. Resp. to Pl. MSJ at 28, ECF No. 59 (citing 29 C.F.R. § 541.201(b)).  TGF also argues that Miller's statements in her Declaration regarding manual work performed is contrary to her deposition testimony, where she testified that outside fittings provided sales representatives an opportunity to promote TGF and establish or improve relationships with customers.  *See id.* at 25 (citing Def. SJ App. Ex. B (Miller Dep.), App. at 144, ECF No. 27-2).  According to TGF, Miller's claim that driving to customers was "manual labor" contradicts earlier deposition testimony that she traveled to customers to, among other things, promote the company, display new merchandise, and accompany outside sales representatives for training or to address an issue with a director.  *Id.* at 26.  TGF also disputes that fittings are an integral or necessary part of the manufacturing process since TGF brings actual sized garments to the fittings and allows the school team members to try on the garments and select and order the appropriate size.  *See id.* at 25-26 and n.13.

First, to the extent TGF suggests Miller's Declaration should be given no weight, as it contradicts her deposition testimony, the Court rejects this argument.  As the above-cited record

shows, at both her deposition and in her Declaration, she testified that she performed manual labor and cleaned the bathroom and kitchen.  Further, attending fittings and driving to and from customers can be classified as manual work, at the same time as it can serve to promote the employer's business.  These are not contradictory statements.

Having reviewed the summary judgment record, the Court concludes that evidence in the record raises a genuine issue of material fact regarding whether Miller's primary job duties for TGF involved performing office or non-manual work directly related to the management or general business operations of the employer.  *See* 29 C.F.R. § 541.200(a)(2).  Further, TGF has failed to conclusively establish that Miller's primary duties related to management or general business operations (as opposed to production), as evidence exists from which a reasonable juror could conclude that Miller's customer service work (including attending fittings for measurement purposes) was intertwined with the very service and product TGF provided (selling tight-fitting custom made uniforms to cheerleading and scholastic related dance teams).  *See generally Owens v. CEVA Logistics/TNT*, 2012 WL 6691115, at *9-10 (S.D. Tex. Dec. 21, 2012) (and cases cited therein) (rejecting argument that customer service work is exempt work, when such customer service work is intertwined with the service provided); *Villegas*, 2008 WL 5137721, at *7 (administrative exemption does not apply where an employee is primarily involved in producing the product of the company rather than servicing the company).

In short, as the summary judgment evidence does not eliminate fact disputes over Miller's primary duties, or allow the Court to find, as a matter of law, that she was, or was not, exempt, summary judgment is inappropriate.  *See, e.g., Owens*, 2012 WL 6691115, at *7 (denying summary judgment on administrative exemption where record did not eliminate fact disputes over employee's

primary duties); *Martinez v. Global Fin. Servs., LLC*, 2008 WL 65169, at *2 (S.D. Tex. Jan. 4, 2008) ("The parties describe Plaintiff's job responsibilities differently, and the conflicting evidence creates a fact dispute that precludes summary judgment.").   Accordingly, as fact disputes remain, TGF's motion for summary judgment on this basis is denied.

### *b.*    *Elliott*

Elliott argues that TGF has failed to meet its summary judgment burden of showing that she had a "primary duty that includes the exercise of discretion and independent judgment with respect to matters of significance."  *See* Pl. Resp. to Def. MSJ at 30-35, ECF No. 41; *see also* Pl. MSJ Brief at 29-34, ECF No. 42; Pl. Reply to Def. Resp. to Pl. MSJ at 12-17, ECF No. 71.  In opposition, TGF argues that the summary judgment record eliminates any factual disputes that Elliott's primary duty included "the exercise of discretion and independent judgment with respect to matters of significance."  *See* Def. Resp. to Pl. MSJ at 35-37, ECF No. 59; *see also* Def. Reply to Pl. Resp. to Def. MSJ at 9-12, ECF No. 54.

"In general, the exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.200(a)(3).  The term "matters of significance" refers to the level of importance or consequence of the work performed.  *Id.* § 541.202(a).  Further, the exercise of discretion and independent judgment "must be more than the use of skill in applying well-established techniques, procedures, or specific standards," and "does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive or routine work."  *Id.* § 541.202(e).

The parties have presented evidence describing Elliott's job duties differently, and the

conflicting evidence creates a factual dispute that precludes entry of summary judgment. *See, e.g., Owens*, 2012 WL 6691115, at *7; *Martinez*, 2008 WL 65169, at *2. Specifically, the evidence raises a genuine issue of material fact regarding whether Elliott's primary duties as a bookkeeper involved the level of discretion and independent judgment required for application of the administrative exemption. *See* Pl. SJ App. Ex. L (Job Posting for Bookkeeper Position listing primary duties), App. at 198-99, ECF No. 43-2; *Id.* Ex. J (Elliott Decl.), App. at 173-74, ECF No. 43-1(the vast majority of her time, "at least 90%," involved routine bookkeeping tasks such as "date entry, matching invoices to orders, and filing."); *id.* at 172-175 (the human resources aspect of her job duties took less than one percent of her time and she had no special training and is not an accountant); *but see* Def. SJ App. Ex. K (Eskridge Decl.), App. at 412-15, ECF No. 27-11 (Elliott's job duties included numerous areas beyond her job description, including filing certain tax forms, modifying TGF's personnel policy handbook, generating a new expense report to use for improved travel reimbursement, and answering customer payment questions). Further, a reasonable juror court infer that Elliott was misclassified as a salaried exempt employee based on the job posting stating that the position would be hourly, her status as an hourly employee for approximately five months, the timing of her reclassification to salaried – just before the busy fittings season, and the lack of any corresponding change in job duties, responsibility, title, position or authority. *See* Pl. SJ App. Ex. L (Job Posting for Bookkeeper Position), App. at 198-99, ECF No. 43-2; *Id.* Ex. J (Elliott Decl.), App. at 172-75.

   In short, as fact disputes remain, TGF's motion for summary judgment on this basis is denied.

### c.    Is Plaintiff Kleinsmith Exempt from Overtime Pay under the Outside Salesman Exemption?

Defendants argue that Kleinsmith was exempt under the FLSA as an outside sales employee under 29 C.F.R. § 541.500 for the two days she was salaried, thus defeating her claim for overtime compensation for these two days.   Plaintiffs argue that TGF's motion should be denied since the summary judgment evidence shows that Kleinsmith was misclassified as a salaried exempt employee for these two days or, alternatively, that fact issues preclude entry of summary judgment in TGF's favor.

To qualify for the outside sales employee exemption, the following elements must be met: (1) the employee's primary duty must be making sales, or obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) the employee must be customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.   29 C.F.R. § 541.500.

The parties have presented evidence describing Kleinsmith's job duties differently.   *See, e,g.,* Pl. SJ App. Ex. B (Kleinsmith Dep.), App. at 51, ECF No. 43-1; Def. SJ App. Ex. K (Eskridge Decl.), App. at 415-16, ECF No. 27–11.   The conflicting evidence creates a factual dispute that precludes entry of summary judgment.   *See, e.g., Owens,* 2012 WL 6691115, at *7; *Martinez,* 2008 WL 65169, at *2.   Specifically, the evidence raises a genuine issue of material fact regarding whether Elliott's primary duty was "making sales, or obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer[]," and whether she was "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty."   *See* 29 C.F.R. § 541.500.   As already stated, the burden of proving

25

that the employee is exempt from coverage rests with the employer.  *Corning*, 417 U.S. at 196-97;
*Tyler*, 304 F.3d at 402.   In light of the FLSA's broad remedial aims, "[t]hese exemptions are
construed narrowly against the employer[.]" *Tyler*, 304 F.3d at 402.   Exempt status will be limited
to those employees "plainly and unmistakably" falling within the "terms and spirit[]" of the
exemptions.  *Arnold*, 361 U.S. at 392.   Because TGF has not met this burden, the Court denies
TGF's motion for summary judgment on this issue.

### 2.    Overtime Hours

TGF and Plaintiffs also move for summary judgment on the issue of liability and damages
under the FLSA.   TGF argues that, even if the Court finds that Plaintiffs were misclassified as
exempt employees, summary judgment is still warranted because "Plaintiffs are unable to provide
definite and certain evidence that they performed work for which they have not been compensated—
in other words, definite and certain overtime hours."  Def. MSJ Brief at 44, ECF No. 28; *see also*
Def. Reply at 19, ECF No. 54.   TGF further argues it is entitled to summary judgment because
"Plaintiffs have no evidence that TGF was aware that Plaintiffs worked overtime hours they now
claim." Def. MSJ Brief at 45; *see also* Def. Reply at 22.   Plaintiffs contend that they have met their
burden of proving their damages, and note that TGF has not maintained accurate records and has
failed to produce documents which would allow Plaintiffs to prove their damages in a more definite
or certain matter.  Pl. MSJ Brief at 36-39, ECF No. 43; *see also* Pl. Resp. to Def. MSJ at 38-39, ECF
No. 41.   Plaintiffs also argue that TGF had constructive and/or actual knowledge of their overtime
hours, but failed to pay them in willful violation of the FLSA.  After setting forth the applicable law,
the Court will address the parties' arguments.

## a.    The FLSA's Overtime Provisions

To reiterate, the FLSA's overtime provision mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  Section 255(a) of the FLSA imposes a two-year statute of limitations for violations of the FLSA.  29 U.S.C. § 255(a).  The statute of limitations is extended to three years for a willful violation of the FLSA.  *Id.* To show a willful violation of the FLSA, the "plaintiff bears the burden of establishing that his former employers either knew or showed reckless disregard [as to] whether [their] conduct was prohibited by statute." *Karr v. City of Beaumont, Texas*, 950 F. Supp. 1317, 1324 (E.D. Tex. 1997) (internal punctuation and citation omitted).  "Willfulness is a fact issue for the jury." *Id.*

"Under the [FLSA], an employee who brings suit for unpaid overtime compensation bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated." *Reeves v. Int'l Tel. and Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980). "Work" means "physical or mental exertion . . . controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Karr*, 950 F. Supp. at 1321.  "Inaccurate wage and hour information, however, is not always fatal to a claim for minimum wage or overtime compensation under the FLSA.  Where the inaccuracy is due to the employer's failure to keep adequate records as required by statute, imprecise evidence on quantum can provide a 'sufficient basis' for damages." *Id.* (punctuation and citation omitted).[6]  Where an employer keeps

---

[6]The FLSA provides: "Every employer subject to any provision of this Act . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ."  29 U.S.C. § 211(c).

inaccurate or incomplete records, "an employee has carried out its burden if he proves that he has in fact performed work for which he was improperly compensated and he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *In re Williams*, 298 F.3d 458, 463 (5th Cir. 2002). The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 660, 687-88 (1946). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688; *see also Prince v. MND Hospitality, Inc.*, 2009 WL 2170042, at *7 (S.D. Tex. July 20, 2009 ("A plaintiff need not prove each hour of overtime with unerring accuracy or certainty.").

In addition to proving they worked overtime, Plaintiffs have the burden of showing they were "employed" by the defendants during the periods of time for which they claim unpaid overtime. *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995). "An employee is 'employed' during those hours that the employer had knowledge, actual or constructive, that the employee was working." *Karr*, 950 F. Supp. at 1323 (citing *Newton*, 47 F.3d at 748). "'An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for overtime compensation.'" *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 441 (5th Cir. 2005) (quoting *Newton*, 47 F.3d at 748) (alteration in original) (in turn quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)); *see also* 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time.").

28

**b.      Discussion**

It is undisputed that TGF has failed to produce documents which would have allowed Plaintiffs to prove their damages in a more definite and certain manner.  Following a four-hour hearing on a motion for sanctions filed by Plaintiffs pertaining to TGF's repeated failure to produce responsive documents, United States Magistrate Judge Horan recommended sanctions against TGF for its failure to produce relevant documents, namely, the universe of Team Order Forms.  *See* ECF No. 78,  May 1, 2014 Findings, Conclusions and Recommendation.  Specifically, he found that TGF had willfully failed to produce all Team Order Forms associated with sales made by Team Go Figure from 2010 until April 2013, in violation of his February 4, 2014 Order (*see* ECF No. 36).  TGF does not dispute the Magistrate Judge's finding that it failed to produce the universe of Team Order Forms from which Plaintiffs may gather more data to assist them in providing more definite evidence regarding overtime hours worked.  *See* ECF No. 79, Def. Resp. to Findings.  Further, it is undisputed that TGF has only provided time cards for two pay periods for the time period Kleinsmith was a TGF employee.

Plaintiffs offer their own affidavits, in addition to other evidence, in support of their claim that they worked overtime hours, and that Eskridge knew they were working overtime hours for which they were not paid.  *See, e.g.*, Pl. SJ App. Ex. I (Miller Decl.), App. at 165-70, ECF No. 43-1; *id.* Ex. AB (Calculation of Overtime Premiums Owed to Miller), App. at 540-42, ECF No. 43-6; *id.* Ex. J (Elliott Decl.), App. at 172-76, ECF No. 43-1; *id.* Ex. AB (Calculation of Overtime Premiums Owed to Elliott), App. at 543, ECF No. 43-6; *id.* at 41-47; *id.* Ex. AB (Calculation of Overtime Premiums Owed to Kleinsmith), App. at 544, ECF No. 43-6; *id.* Ex. AA (Kleinsmith Dep.), App. at 533-34, ECF No. 43-6.  Further, though it is undisputed that TGF paid Elliott some of the

overtime hours she worked as an hourly employee, it is disputed whether she was paid all of her overtime hours. *Contrast* Def. SJ App. Ex. K (Eskridge Decl.), App. at 412, ECF No. 27-11 (Eskridge was "unaware of any overtime hours worked by Elliott between August 2011 and January 2102 in which she was not paid time and a half") *with* Pl. SJ App. Ex. K (Elliott Dep.), App. at 192, ECF No. 43-1 (payments insufficient to compensate Elliott for all overtime hours worked, including overtime hours worked from home to accomplish her job, of which she informed Eskridge, who informed her she was "nickel-and-diming-him-to-death" and she would not be paid for this overtime.) and *id.* Ex. J (Elliott Decl.), App. at 173, ECF No. 43-1 ("I was encouraged to perform work from my house . . . I was told by Scott Eskridge that whatever I needed to do to get the tasks assigned to me done was fine with him, but that he would not pay me overtime wages for work performed from my house [even though] it was clear he expected me to work from my house[.]").

Plaintiffs' summary judgment evidence that they informed Eskridge of the overtime is sufficient to create a fact question on this issue. Further, the extent of the overtime allegedly worked, the testimony of Kathleen Craig, a former TGF bookkeeper, and evidence of altered time cards, also suggest that TGF was aware that Plaintiffs and its other employees were working unreported overtime, and that failure to pay them overtime was a willful violation of the FLSA. *See* Pl. SJ App. (Craig Decl.), App. at 92-93, ECF No. 43-1 (during Craig's short time employed at TGF, she observed that TGF was shaving hours from employees' time cards specifically to avoid paying any overtime for hours worked, and that after she resigned she reported TGF's various unlawful employment practices to the Texas Workforce Commission and copied Eskridge on all correspondence with the TWC); *id.* at 92-147 (copies of appeal and documentation Craig sent to TWC and to Eskridge); *id.* Ex. V (altered time cards), App. at 258-440, ECF No. 43-2 and 43-3.

30

Furthermore, a court may determine from summary judgment evidence that the Defendant had knowledge Plaintiff was working after her shift. *See Karr*, 950 F. Supp. at 1323 (Where a plaintiff is working after shift, the defendant "knew and had reason to believe that the work was being performed," even though the plaintiff did not submit overtime forms for the work.). A defendant is imputed to have knowledge of overtime work when it approves and requires that the work be done. *Id.* Here, there is evidence that TGF not only approved the work being done when Plaintiffs attended fittings at various schools after business hours, but also required Plaintiffs to perform these duties. In addition, the responses attributed to Eskridge by Elliott can be read to sanction Elliott's uncompensated work. TGF challenges the validity of these statements. The Court does not decide credibility issues at the summary judgment stage. *See Anderson*, 477 U.S. at 255. Nor may it resolve the factual dispute as to whether Plaintiffs were required to work off-the-clock. *Id.* at 250 (summary judgment must be denied where there is some support for the disputed allegation such that "reasonable minds could differ as to the import of the evidence[.]"). The Court concludes that Plaintiffs' summary judgment evidence is sufficient to create a fact question on whether Plaintiffs worked overtime hours for which they were not compensated and whether TGF had actual or constructive knowledge that Plaintiffs were working overtime. Summary judgment in favor of TGF on Plaintiffs' claim for overtime pay is therefore denied.

While the Court finds that Plaintiffs have met their burden of providing sufficient evidence of the amount of overtime as a matter of just and reasonable inference, *see Anderson*, 328 U.S. at 687, and that a genuine issue of fact exists as to whether TGF had knowledge of Plaintiffs' overtime hours, the Court makes no findings as to whether Plaintiffs actually worked the alleged overtime hours or as to the number of hours allegedly worked for which they were not compensated.

31

Further, the Court denies TGF's motion for summary judgment insofar as TGF seeks partial summary judgment that the applicable overtime compensation rate should be calculated pursuant to the fluctuating workweek method, as it is not ripe for adjudication. *See* Def. MSJ Brief at 1, ECF No. 28.

### C.      Summary of Court's Ruling on Parties' Cross-Motions for Summary Judgment

For the foregoing reasons, the Court determines that TGF is not entitled to summary judgment based on the executive, administrative and/or outside sales person exemptions to the FLSA's overtime pay requirement. Evidence in the record raises a genuine issue of material fact regarding whether Plaintiffs' job duties fall within the exemptions. Further, as TGF has failed to meet its burden to establish that the exemptions apply, and as the Court has determined that Plaintiffs have satisfied their initial burden of showing they worked in excess of forty hours during certain pay periods and that TGF had knowledge of these hours, TGF is not entitled to summary judgment on Plaintiffs' overtime claims under the FLSA.

Further, the Court concludes that Plaintiffs are not entitled to summary judgment on their claim for overtime compensation, liquidated damages or application of the three-year statute of limitations. In response to Plaintiffs' motion, TGF has submitted competent summary judgment evidence, including time records and affidavits, to raise a triable issue of fact as to whether a violation of the FLSA occurred, and if so, whether Plaintiffs worked the number of overtime hours they claim. TGF has also offered evidence that it did not know or have reason to know that Plaintiffs were working overtime hours, and that any violation was not willful or in reckless disregard of the FLSA's overtime provisions. Further, because fact issues remain with regard to the amount of damages, if any, to which Plaintiffs are entitled, the Court declines at this point to determine whether

an award of liquidated damages would be appropriate. If the jury determines that an FLSA violation

occurred, the jury may then make the requisite willfulness determination, at which point the Court

will consider liquidated damages and whether the statute of limitations should be extended to three

years.  Finally, with regard to exemptions from overtime pay, while TGF has not met its summary

judgment burden of establishing that Plaintiffs were properly classified as exempt employees, it has

raised fact issues sufficient to overcome Plaintiffs' motion.  Accordingly, Plaintiffs are not entitled

to judgment as a matter of law that they were misclassified as exempt.

### III.    Plaintiffs' Motion for Leave to Amend Complaint

On March 24, 2014, Plaintiffs filed a motion for leave to amend their complaint to assert a

claim for online retaliation against TGF under Section 15(a)(3) of the FLSA. Pl. Mot. for Leave to

Amend at 6, ECF No. 49.  In their motion, Plaintiffs detail online harassment of Elliott commencing

in the summer of 2013, including unwanted telephone calls and advertisements on Craigslist for

garage sales and garage sale items that Elliott did not post, and the forwarding of her personal

information to inmates without her knowledge or permission.  *Id.* at 1 and Ex. 1.  Plaintiffs assert

that, at the time, they had "no reason to suspect that the online harassment was being perpetrated by

Defendants' employees." *Id.*  Plaintiffs further assert that on February 26, 2014, shortly after a client

of Miller and Elliott erroneously forwarded an email to TGF, two false Craigslist advertisements

were posted relating to sales of vehicles and garage sales, and which contained Miller's and Elliott's

personal contact information.  *Id.* at 2 and Exs. 1-3.  Plaintiffs assert that in response to a subpoena,

on March 21, 2014, Craigslist provided Plaintiffs documentation that the advertisements in question

were posted by someone using the email address boatsandbounces@aol.com.  *Id.* at 3 and Exs. 2,

4.  Plaintiffs assert they have since learned that this email is associated with a Facebook page

authored by Mark Martin, who is the husband of April McDougald, TGF's office manager. *Id.* and Ex. 6. TGF opposes the motion for leave to amend, arguing it is untimely and unduly prejudicial. Def. Resp., ECF No. 57. Because Plaintiffs have not shown good cause for this amendment, the Court denies the motion.

When, as here, a deadline for seeking leave to amend pleadings has expired,[7] the scheduling order may only be modified, pursuant to Federal Rule of Civil Procedure 16, "'for good cause and with the judge's consent.'" *See Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (quoting Fed. R. Civ. P. 16(b)(4)). Under Rule 16, the party seeking to modify the scheduling order must show "'that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Id.* (quoting *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008)). If the movant satisfies the requirements of Rule 16(b)(4), the court must next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003).

The Court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters.,* 315 F.3d at 539 (internal quotation marks and brackets omitted). Applying these factors, the Court finds that Plaintiffs have not shown good cause. As set forth in more detail directly below, although the amendment may be important to Plaintiffs' case, the absence of a persuasive explanation for failing to timely move for

---

[7]The deadline for amendment of pleadings was August 17, 2013. *See* Sch. Ord., ECF No. 11.

leave to amend, coupled with the prejudice that Defendants would suffer if amendment were allowed, outweigh the other factors.

As to the first factor, Plaintiffs argue that they failed to timely move for leave to amend because they did not discover the latest online harassment and retaliation until February 26, 2014, and did not receive confirmation that Defendants were potentially responsible for the Craigslist advertisements until March 21, 2014, after Craigslist responded to a subpoena.  Pl. Mot. for Leave to Amend at 5. Plaintiffs filed their motion for leave to amend on March 25, 2014. In opposition, TGF notes that Plaintiffs admit that in the summer of 2013, Elliott began receiving calls regarding advertisements on Craigslist for garage sale items that she never posted.  Def. Resp. at 2 (citing Pl. Mot. at 1).  Further, TGF provides the Court with evidence suggesting that Plaintiffs, as early as September 2013, suspected TGF's employees were responsible for the alleged harassment. Specifically, attached to Scott Eskridge's Declaration filed in support of Defendants' response is a copy of Miller's Facebook page from September 2013.  *See* Def. Resp. at Ex. A, Declaration of Scott Eskridge at ¶ 3, ECF No. 57-1.[8]   The Facebook page states:

> PLEASE GO UNLIKE IT NOW
>
> As you may or may not know - Three of us left to start our own company and we are now being harassed by a few of the office staff - who actually wanted to come with us - but we couldn't immediately provide a matched salary. We suspect these people are behind the juvenile and harassing actions now being done to us and our families. You read about the garage sale incident yesterday - now another partner has been personally harassed.  Go unlike the Team Go Figure company page.  This is a

---

[8]Plaintiffs do not challenge the reliability or authenticity of the Facebook page attached as Exhibit A-1 to Scott Eskridge's Declaration, but merely argue that "[w]hether Miller suspected the retaliation and online harassment was being perpetrated by Defendants in September of 2013 is frankly irrelevant."  Pl. Reply at 1-2.  The Court disagrees.  That Plaintiffs suspected TGF employees in September 2013 is relevant to the Court's evaluation of Plaintiffs' explanation for waiting until less than three months before trial to seek leave to amend the pleadings.

personal request.  And I appreciate your support!

*Id.* and Ex. A-1 (the "Facebook Post").

Having considered the parties' arguments and submissions related to the first factor, the Court concludes that Plaintiffs have failed to adequately explain why they waited until March 25, 2014 (over seven (7) months after the deadline to amend pleadings) to seek leave to amend the complaint to add a retaliation claim.  Elliott's Facebook Post suggests that as early as September 2013, Plaintiffs suspected that certain of TGF's employees were involved in the alleged harassment. The Court agrees with Defendants that, given these suspicions, and in light of the Court's Scheduling Order, Plaintiffs could have followed up on the matter sooner, and sought to add a retaliation claim sooner.

As to the second factor, Plaintiffs contend that "the requested amendment is important because Defendants should not be allowed to retaliate against and harass Plaintiffs with impunity, and Plaintiffs cannot recover damages for Defendants' illegal and egregious acts without amending the pleadings."  Pl. Reply at 2-3, ECF No. 67.  While the Court certainly does not condone online harassment of this nature and recognizes the importance of the FLSA's anti-retaliation provisions, on the record before the Court, it is not clear to the Court that a retaliation claim could survive a Rule 12(b)(6) challenge, thereby diminishing its importance in this case.  First, given that boatsandbounces@aol.com is associated with Mark Martin's Facebook page, it is not immediately apparent that such posts could be attributed to Defendants.[9]  Second, Defendants present the Court

---

[9]In response to Plaintiffs' motion for leave to amend, Scott Eskridge has provided testimony, by way of his Declaration, that neither he nor Team Go Figure had anything to do with the online harassment of Miller or Elliott, and had no knowledge of, or any communications with, April McDougald or her husband, Mark Martin, about posting information about Elliott or Miller.  *See* Def. Resp. at Ex. A, Declaration of Scott Eskridge at ¶ 2, ECF No. 57-1.

with deposition testimony from Elliott regarding a text message she sent to McDougald in April 2013, stating that if McDougald testified in this case against Elliott, McDougald's husband, Mark Martin, would not want to hear about things McDougald had said or done while at Team Go Figure. *Id.* at 3 and Ex. B at 167:16-19 and 168:18-23.   As Defendants suggest, this text, and not any protected activity under the FLSA, may have been the catalyst for Mark Martin engaging in online harassment.   *See id.*   In short, while potentially important in an FLSA case, a retaliation claim on these facts is not readily made.   As to Plaintiffs's suggestion that the Court continue the trial of this matter pending police investigations by the Cities of Rockwall and Garland, *see* Pl. Reply at 3 n.3, in light of the ripe summary judgment motions and imminent trial setting, the Court concludes that the better course is to proceed to trial based on the current pleadings.   Plaintiffs may always take appropriate legal action (civil or criminal) at the conclusion of the investigations against the responsible person(s).

As to the third factor, Plaintiffs assert that the "complaint of prejudice is an equitable argument, and equitable arguments are not available to those with unclean hands."   *Id.* at 3. Plaintiffs further assert that "Defendants have entirely failed to explain how they would be prejudiced" by the amendment. *Id.*  In opposition, Defendants argue that allowing amendment at this time would be unduly prejudicial and only further delay adjudication of this case, as their motion for summary judgment has been fully briefed and is ripe, and the discovery deadline expired on February 18, 2014.  Def. Resp. at 4.

This case is set for trial on the Court's four-week docket beginning June 16, 2014.  Discovery is closed and the Court has issued its ruling on the parties' cross-motions for summary judgment. Allowing amendment at this late juncture would be unduly prejudicial to Defendants, and would

waste scarce judicial resources.  *See Overseas Inns S.A. P.A. v. U.S.*, 911 F.2d 1146, 1151 (5th Cir.

1990) ("'[t]o grant . . . leave to amend is potentially to undermine [a party's] right to prevail on a

motion that necessarily was prepared without reference to an unanticipated amended complaint . .

. . A party should not, without adequate grounds, be permitted to avoid summary judgment by the

expedient of amending its complaint.'") (*aff'g* and quoting 685 F. Supp. 968 (N.D. Tex. 1988)

(Fitzwater, J.)).  In short, this third factor weighs heavily against allowing leave to amend.

Finally, as to the fourth factor, Plaintiffs argue that a continuance would remedy any possible

prejudice.  Pl. Mot. to Amend at 5; Pl. Reply at 3.  At this late juncture, the prejudice of allowing

Plaintiffs to amend cannot be cured by a continuance.  The prejudice in this case would be

exacerbated as Defendants have expended time and resources not only on briefing their own

summary judgment motion, but also in responding to Plaintiffs' summary judgment motion.

In sum, after assessing the factors together, the Court concludes that Plaintiffs have failed

to show good cause to modify the scheduling order to allow them to file an amended pleading

asserting a new cause of action.  Accordingly, the Court denies Plaintiffs' motion for leave to amend

complaint.

## IV.    Conclusion

Based on the foregoing, the Court: **denies** Defendants' Motion for Summary Judgment (ECF

No. 26); **denies** Plaintiffs' Motion for Summary Judgment (ECF No. 42); **grants** Defendants'

Amended Motion for Leave to Supplement Summary Judgment Appendix (ECF No. 51), as

modified (*see* Notice, ECF No. 64); **denies** Defendants' Motion to Strike Plaintiffs' Reply Appendix

(ECF No. 72); and **denies** Plaintiffs' Motion for Leave to Amend Complaint (ECF No. 49).

This case remains on the Court's four-week docket call commencing June 16, 2014.

**SO ORDERED** on this **13th day** of **May, 2014**.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**